STATE OF MINNESOTA
DEPARTMENT OF CHILDREN, FAMILIES AND LEARNING
BEFORE THE HEARING REVIEW OFFICER

MDCFL CASE NUMBER 429-2

---

Kelly Sunderlin, on behalf of her minor child, Victor Grant,

vs.

Independent School District No. 11, Anoka-Hennepin

FINDINGS OF FACT, CONCLUSIONS, AND DECISION

---

## CASE AND PROCEDURAL HISTORY

The above entitled matter came on for hearing before Independent Hearing Officer Kenneth Udong Udoibok (hereinafter "IHO") pursuant to the provisions of Minn. Stat. §125A.09 on May 30, June 7, 8, and 15, and July 16, 17, and 23, 2001. Sonia Kerr, Esq., Kerr Law Offices, 5972 Cahill Avenue South, Suite 110, Inver Grove Heights, Minnesota 55076, appeared on behalf of the Parent. Michael Waldspurger, Esq., Ratwick, Roszak & Maloney, P.A., 730 Second Avenue South, Minneapolis, Minnesota 55402, appeared on behalf of the District.

On September 17, 2001 the IHO issued his Findings of Fact, Conclusions of Law, Memorandum and Opinion. On September 21, 2001 the Parent filed an appeal of the IHO's Decision. The undersigned Hearing Review Officer (hereinafter "HRO") was assigned on September 25, 2001. The Parent filed an Appeal Brief on October 15, 2001. On October 22, 2001 the District filed its Response. No Reply Brief was filed by the Parent.

At the due process hearing the IHO determined there were nine issues to be resolved:

1. Whether the District provided the Parent with a timely notice of her procedural safeguards between March 30, 2000 and March 30, 2001.

2. Whether the District "predetermined" the IEP team's decision at the March 20, 2001 meeting.

3. Whether the District provided the parent with sufficient notice of the IEP meeting held on May 1, 2001.

EXHIBIT 2

4. Whether the District provided the parent with prior written notice of its decision to deny her request for one-to-one reading instruction.

5. Whether the Student needs one-to-one reading instruction to receive FAPE.

6. Whether the Student needs a computer to receive FAPE.

7. Whether the Student is entitled to an assistive technology evaluation.

8. Whether the January 31, 2001 IEP is a draft IEP.

9. Whether the proposed IEP dated May 10, 2001 offered the Student FAPE in the least restrictive environment (LRE).

The IHO found for the District on all issues.

## ISSUES

The Student raised the following specific issues in this appeal:

1. Whether the IHO erred in extending his decision date and, if so, whether that extension compromised the Student's right to an appropriate education.

2. Whether the IHO erred in finding that the Parent did not oppose the District's motion in limine.

3. Whether the District provided the parent with prior written notice of its decision to deny the request for one-to-one reading instruction.

4. Whether the District provided Parent with timely notice of her procedural safeguards between March 30, 2000 and March 30, 2001.

5. Whether IHO erred in determining that Student does not need one-to-one reading instruction in order to receive FAPE.

6. Whether the IHO erred in determining that one-to-one instruction is not the LRE for Student.

7. Whether the IHO erred in finding that the Student is not entitled to assistive technology.

8. Whether the IHO erred in determining the January 31, 2001 IEP was merely a draft.

9. Whether the IHO erred in admitting the proposed IEP dated May 10, 2001.

10. Whether the IHO erred in assessing the credibility of the witnesses, weighing the evidence, and making the findings now challenged by Parent.

11. Whether the IHO failed to give the Student's testimony the proper weight.

12 Whether the IHO erred in deeming certain issues waived.

13. Whether the IHO erred in "preventing" the testimony of the Student's private tutor.

14. Whether the IHO erred in allowing the District's questioning of Parent's experts regarding their discussions with Parent's counsel.

15. Whether the IHO erred in allowing the testimony of Dr. Spicuzza, the District's expert.

16. Whether the IHO erred in determining the adequacy of the ISD's evaluation of the Student.

17 Whether the IHO erred in his Findings about ESY services, thereby denying the services.

Based upon an independent and impartial review of the entire record, the IHO's Findings of Fact, Conclusions of Law, Decision and Memorandum, and the parties' briefs submitted herein, the HRO makes the following:

## FINDINGS OF FACT

After a thorough review of the entire record, the HRO finds that the IHO's Findings of Fact 1 - 73[1] are supported by the preponderance of the evidence presented, and hereby adopts and incorporates those Findings herein by reference. Those Findings can be found in the IHO's Decision at pages 3 through 11 and will not be repeated here.

In addition, the HRO finds that various factual findings found within the Discussion section of the decision are also supported by the preponderance of the evidence presented, and hereby adopts and incorporates those facts herein by reference as well. Those facts can be found throughout the IHO's Discussion section on pages 13 through 18 and will not be repeated here.

[1] The IHO's Findings of Fact are misnumbered This Decision refers to the Findings as if they were consecutively numbered.

Based upon the entire record and the foregoing Findings of Fact, the HRO makes the following:

## CONCLUSIONS

### Jurisdiction

1. The Commissioner of the Department of Children, Families and Learning and the HRO have jurisdiction in this matter pursuant to 20 U.S.C. § 1415 (g), Minn. Stat. § 125A.09, subd. 9, and Minn. R. 3525.4600.

2. This matter is properly before the HRO pursuant to Minn. Stat. § 125A.09, subd. 9 and Minn. R. 3525.4600.

### Standard of Review

3. Pursuant to Minn. Stat. § 125A.09, subd. 9 and Minn. R. 3525.4600 the HRO has conducted an appellate review and now issues a final independent decision based on an impartial review of the record. In conducting this review, the HRO considered the Findings of Fact, Conclusions, and Decision of the IHO and gave due weight to the IHO's Findings, based as they are on his opportunity to observe witness demeanor and determine credibility. Independent Sch. Dist. No. 283 v. S.D., 948 F. Supp. 860, 870 (D. Minn. 1995), aff'd 88 F. 3d 556, 561 (8th Cir. 1996).

### FAPE

4. Federal law requires each state to adopt a plan to ensure that FAPE is available to all children with disabilities. 20 U.S.C. 1412(2). In Minnesota, this obligation is fulfilled by Minn. Stat. § 125A.03.

5 FAPE consists of special education and related services that:

a. have been provided at public expense, under public supervision and direction, and without charge;

b. meet the standards of the state educational agency;

c. include an appropriate preschool, elementary, or secondary school education in the state involved; and

d. are provided in conformity with the individualized education program (IEP) required under section 1414(d) of this title.

20 U.S.C. § 1401(8)

6 When FAPE has been provided is a two-fold inquiry: first it must be determined whether the school complied with the procedures noted in the Act, and second, it must be determined whether the educational program developed through those procedures was reasonably calculated to enable the child to receive educational benefits. Board of Education of the Hendrick-Hudson Central School Districts v. Rowley, 458 U.S. 176, 102 S. Ct. 3034 (1982).

7. Rowley does not require schools districts to provide the most elaborate or most extensive programs or provide services that maximize each student's potential; rather school districts are to develop educational programs that are reasonably calculated to permit the handicapped student to derive some educational benefit from the program. 102 S. Ct. at 3048.

8. Subsequent cases have clarified the Rowley standard of "some educational benefit" to mean "meaningful" educational benefit. (See e.g. Cedar Rapids Community School District v. Garret F., 1999 W.L. 104410 at 4 (U.S.)).

9. The IHO properly concluded that the District provided the Student with FAPE. The record shows that the Student made progress in and received meaningful benefit from his educational program.

Procedural Issues

10. Minn. Stat. § 125A.09, subd. 7 allows the 45 day period for issuing a decision to be extended by a hearing officer at the request of either party upon good cause shown. It is the hearing officer who determines what constitutes good cause. The record here reflects that significant extensions were granted over the objection of the District because of the limited availability of Parent's counsel due to a temporary disability and because of the availability of a witness for Parent. A short extension was granted due to the unavailability of the District's counsel. The IHO indicated additional time was needed for his decision because of the volume of the record and the District requested an extension to accommodate the IHO's request. At the point the IHO indicated an additional ten days were needed for his decision, over five months had passed since the request for hearing was filed. The additional ten days, when compared to the previous extensions, amount to a minimal delay. Moreover, there is no indication that the extension compromised the Student's right to an appropriate education, hampered Parent's opportunity to participate in the formulation process, or caused a deprivation of educational benefits. Under the facts here, the IHO did not err in extending the time for his decision.

11. The IHO issued a Pre-hearing Order on April 19, 2001 that required all motions to be filed by May 7, 2001 and all responses to the motions to be filed by May 10, 2001. The District served and filed a Motion in Limine on May 7, 2001 seeking to limit the Student's evidence to the one year period preceding his request for hearing. Parent filed no response by the May 10, 2001 deadline. When Parent did respond, by letter dated May 14, 2001, she indicated she "did not oppose the motion in limine per

se". Even if the letter could somehow be construed to oppose District's motion, it was not timely filed. The IHO did not err in finding that the Parent did not oppose the District's motion in limine.

12. The first prong of the Rowley test requires a determination that procedural requirements with regard to development of the IEP are met. IHO's are "to scrutinize IEP's to ensure the procedural integrity" and that parents have adequate input in the development of the child's IEP. Indep. Sch. Dist. No 283 v. S.D., 948 F. Supp. 860 (D. Minn. 1995), *aff'd.* 88 F. 3d 556 (8th Cir. 1996).

13. However, that scrutiny is not to be overly technical. Procedural flaws do not automatically render an IEP defective. Only those flaws that compromise the student's right to appropriate education, seriously hamper the parent's opportunity to participate in the IEP process, or cause deprivation of educational benefits are sufficient to set aside an IEP. Id at 881-82. A District is not liable for harmless, technical procedural violations. Minn. Stat. § 125A.09, Subd. 15.

14. The record shows that the District provided Student's parent with notice of her procedural rights in September, 2000 when the Notice of Educational Evaluation was sent, again at the IEP meeting on December 8, 2000, as well as each time an IEP meeting notice was subsequently sent. The IHO properly concluded that the District provided the Parent with proper notice of her procedural safeguards and that the parent had ample opportunity to provide input into the Student's IEP process even though she chose not to do so.

15. Prior written notice is required to be sent to the parent of a child with a disability before the initiation or significant change, or the refusal to initiate or significantly change a pupil's educational placement or special educational services. Minn. R. 3525.3600; 34 C.F.R. § 300.503(a) The Student argues that the District failed to provide such notice regarding the District's alleged refusal to provide one-to-one reading instruction. The record contains ample evidence that the District did not reject the Parent's request for one-to-one reading services until the IEP meeting on May 1, 2001. The IHO correctly found that the District provided proper prior written notice of its decision to deny the one-to-one reading instruction on May 16, 2001.

Substantive Issues

One-To-One Reading Instruction

16. A disabled child is entitled to receive one-to-one instruction only if such instruction is necessary for the child to receive FAPE. See E.S. v. Indep. Sch. Dist. No. 196, 135 F.3d 566, 569 (8th Cir. 1998). The record here is replete with evidence, including test results, grades, and teacher observations, that all indicate the Student made significant progress in reading without one-to-one instruction. The IHO properly concluded that the student does not need one-to-one reading instruction to receive FAPE.

LRE

17. To the maximum extent appropriate school districts must ensure that students with disabilities are educated with children who are not disabled, and that special classes, separate school, or other removal of children with disabilities from the regular environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of aids and services cannot be achieved satisfactorily. 20 U.S.C. § 1412(a)(5); 34 C.F.R. § 300.550; Minn. Stat. § 125A.08(a)(1); Minn. R. 3525.0400. Before removing a child from the regular environment, there must be some indication that the pupil will be better served outside the regular program. Minn. R. 3525.0400; Minn. R. 3525.3900(F), (G). IDEA creates a clear preference for public educational placement when that placement is not inconsistent with the mainstreaming provisions of the Act. Mark A. v. Grant Wood Area Ed. Agency, 795 F. 2d 52, 54 (8th Cir. 1986).

18. The one-to-one tutoring services requested by the Parent here were not necessary as discussed above. Even if they had been needed to achieve FAPE, as proposed they would have removed the Student from the regular education environment completely. The instruction would have been away from peers, outside the regular school day and regular school setting. The IHO did not err in concluding that the one-to-one tutoring services were not the LRE for Student.

Assistive Technology

19. Each public agency shall ensure that assistive technology devices or assistive technology services, or both, ... are made available to a child with a disability if required as a part of the child's

(1) Special education under § 300.26;
(2) Related services under § 300.24; or
(3) Supplementary aids and services under § 300.28 and 300.550(b)(2).

34 C.F.R §300.308.

20. The District's obligation to provide assistive technology is limited to that assistive technology which is necessary to provide FAPE. Letter to Hutchinson, 30 IDELR 708, 709 (OSEP 1998); Letter to Noan, 22 IDELR 888,889 (OSEP 1995); Zigich v. Independent Sch. Dist. No. 623, Civ. No. 99-1212 (D. Minn. 2000).

21. The requirement that a district evaluate a student's need for assistive technology is only applicable where the child's particular circumstances indicate that such technology might be necessary to acquire FAPE. Letter to Goodman, 16 EHLR 1317 (OSEP 1990); Zigich, 99-1212 at 12.

22. The evidence showed the Student was making excellent progress without assistive technology, and that the District was providing the Student FAPE The District was therefore not obligated to evaluate the Student for, or provide, assistive technology.

Draft IEP

23. Nothing in the IDEA or its regulations prohibits a school district from coming to an IEP meeting with tentative recommendations for the development of a proposed IEP. Blackmon v. Springfield R-XII Sch. Dist., 198 F3d 648, 657 (8th Cir. 1999). Indeed, federal regulations indicate personnel may bring drafts of some or all of the IEP content to the IEP meeting. See 34 C.F.R. Part 300, Appendix A, Q. 32.

24. A parent cannot challenge a draft IEP, however. Parents have the right to request a hearing only if they continue to object to, among other things, the proposed placement of their child in, or transfer of their child to, a special education program, or the proposed provision or addition of special education services for their child. Minn. Stat. § 125A.09, subd. 6 (2), (4) (emphasis added).

25. The preponderance of the evidence here supports the IHO's determination that the January 31, 2001 IEP was a draft meant to facilitate discussion and was not a proposed IEP Accordingly, it was not subject to a request for hearing.

May 10 IEP

26. At least five days before the commencement of a due process hearing the IHO must receive a copy of the student's proposed and current IEP and make it part of the record Minn. R. 3525.4100, subp. 1(C) and (D). The IHO is required to review the IEP received to determine whether it complies with the law. Id. subp. 2(A).

27. The May 10, 2001 IEP was the only IEP proposed by the District and the IHO was therefore required to admit the document, review it, and determine whether it complied with the law. There was no error in admitting the document.

28. The Parent also alleges that the IHO erred in determining that the May 10, 2001 IEP was the primary subject of the proceeding. As it was the only IEP proposed, there could be no other subject. Had the IHO refused to focus on the May document, the hearing would have properly been dismissed since a right to request a hearing exists only when the parents object to a proposed action. Minn. Stat. § 125A.09, subd. 6.

29. The Parent stated that her objections to the May IEP were 1) it did not provide one-to-one reading instruction, and 2) the Sonday System reading methodology was inappropriate for the student. See Tr. 1401-02. However, the proposed IEP does not reference the Sonday System reading methodology. As discussed above, the IHO properly determined that one-to-one reading instruction was not necessary to provide

the Student FAPE. The IHO, having reviewed the May 10, 2001 IEP, determined that it did comply with the law and provided the Student FAPE in the LRE. The determination is amply supported by the record.

Evidentiary Issues

Weight of Evidence / Witness Credibility / Inclusion of Testimony

30. The Parent contends that the IHO erred in assessing the credibility of the witnesses, including the Student, erred in weighing the evidence, and made serious factual errors throughout the Findings. However, Parent fails to reference any portion of the transcript to support her assertions. The IHO heard the evidence and was in the best position to determine credibility and decide the proper weight to give the evidence. As addressed previously, the IHO's Findings as set forth in his decision are amply supported by the preponderance of the evidence presented and will not be disturbed.

31. Minnesota regulations require an IHO to rule on all procedural and evidentiary matters. Minn. R. 3525.4300. Parent asserts that the IHO erred by "preventing" the testimony of the Student's private tutor. This argument is not supported by the record. The IHO indicated he would entertain a request to have the witness appear by telephone to facilitate the testimony. No such request was made and the Parent rested without calling the witness.

32. Parent also asserts that the District's expert should not have been permitted to testify because he had not met or evaluated the Student. Nothing requires the exclusion of this testimony and IHO's have admitted opinions of experts based on a records review. See, e.g. [Student] v. Indep. Sch. Dist. No. 11, MDCFL Case No. 390 (LEA 2000). The IHO did not err in allowing the testimony.

33. Fundamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony. In re Pioneer Hi-Bred International, Inc., 283 F.3d 1370, 1375 (8th Cir. 2001). This rule allows opposing counsel and the trier of fact to know if a lawyer's opinion or theory of the case has influenced the expert's opinion. The IHO did not err in allowing the District to question Parent's expert to determine if her opinions had been influenced or affected by Parent's counsel.

Waiver of Issues

34. A party requesting a due process hearing is required to plead with specificity as to what issues are in dispute and all issues not pleaded with specificity are deemed waived. Minn. Stat. § 125A.09, subd. 6. Parent argues that enforcement of this provision by the IHO was error and that it violates her rights under 34 C.F.R. § 300.507 because the federal law does not require specificity. The argument fails, however, because the law plainly states that a parent's notice must include a description of issues and must include facts relating to the issues. 34 C.F.R. §

300.507(c)(2)(iv). The IHO did not err in deeming waived any issues not specifically pleaded.

35. The Parent claims ESY services were denied by the IHO because of an incorrect conclusion. Even if that was supported by the record, ESY was not an issue before the IHO and cannot now be raised here.

36. Parent also claims that the IHO erred in determining the adequacy of the District's evaluation of the Student. Parent does not specify what evaluation is at issue. The only evaluation completed after March 30, 2000 was an educational evaluation completed in December, 2000. The appropriateness or adequacy of that plan was not raised before the IHO and was, therefore waived.

Based on the foregoing Findings of Fact and Conclusions of Law, the HRO makes the following:

DECISION

1. The appeal of the Parent is DENIED in its entirety and the IHO's Decision is affirmed in all respects.

Dated: October 31, 2001

Patricia Marty-Villaume
Patricia Marty-Villaume
Hearing Review Officer