**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

Mahesh Reinholdson, a minor,
by his parent, Jan Simon,

Plaintiff

v.

School Board of Independent
School District No. 11,

Defendant.

Civil Action No. 02-4225 (ADM/AJB)
and Civil Action No. 02-795 (ADM/AJB)

**PLAINTIFF'S RESPONSE TO DEFENDANT ISD NO. 11'S MOTION IN SUPPORT OF JUDGMENT ON THE RECORD.**

---

## INTRODUCTION

Plaintiff Mahesh and his parent, Jan Simon (Plaintiffs Reinholdson) continue to reside within the residential boundaries of Defendant ISD 11. Plaintiffs case has been pending in this court, in one form or another since September of 2001. Without offering any motion to supplement the administrative record, Defendant ISD 11 has improperly added to the record, a document establishing that Plaintiff Mahesh is now attending school in a neighboring district. Defendant ISD 11, which argued for the matter to be stayed at various times, now seeks judgment on the record on the primary basis that the matter is "moot" or, in the alternative that the Defendant ISD 11 is entitled to judgment on the administrative record. For the reasons and analysis discussed below, the Court must reject judgment on the record in favor of the Defendant and, instead, find in favor of Plaintiffs who have also filed a motion for judgment on the record.

## PROCEDURAL HISTORY

During the 2000-2001 school year, Plaintiffs asserted that Mahesh had been denied a free appropriate public education. Ultimately, the parties proceeded to a due process hearing which

was not concluded until after the close of the school year, June 22, 2001. Plaintiffs appealed to a Level II Hearing Review Officer contending that the Level I Hearing Officer's Decision was not "final" and for other reasons.

Eventually, the matter was brought to this Court, initially as part of a requested class action. Class status was denied and the Court ordered refiling of individual plaintiff cases restricted solely to the Plaintiffs' claims against ISD 11. *Reinholdson v. State of Minnesota and ISD 11*, 37 IDELR 213, (D. MN 2002), reversed and remanded, 346 F. 3d 847 (8th Cir. 2003).

On November 1, 2002, the case was refiled pursuant to a denial of that requested class action. Doc. Entry No. 1, Complaint. The Court denied Plaintiffs' any opportunity to supplement the administrative record. Doc. Entry 15, Order of Magistrate Erickson, October 7, 2003.[1] In the same Order, Magistrate Erickson indicated that dispositive motion deadlines remained as ordered in the October 7, 2003. Nothwithstanding that order, a year later, at on

---

[1] Plaintiffs requested the Court to accept three items of supplementation. *Supplementation #1* was a more recent April 9, 2003 Evaluation Summary Report concerning Plaintiff Mahesh and correspondence from Plaintiff Simon concerning the delay of said re-evaluation and the status of his IEP services. Plaintiffs asked the Court to permit supplementation by Plaintiffs of an expert's report who had reviewed the April 9, 2003 evaluation, examined or observed Plaintiff Mahesh in his school setting, if needed, and reviewed the June 2001 IEP and any IEP proposed since the filing of this lawsuit. This expert would offer an opinion on the appropriateness of the April 9, 2003 evaluation and any proposed IEP, after having had an opportunity to visit and observe Plaintiff Mahesh this fall in his present educational placement. Representative vitaes were enclosed as *Supplementation #2* so that the Court could be assured that the type of evaluator Plaintiff is seeking is qualified to provide this information to the Court. Because Plaintiff Simon is a single parent and does not have unlimited financial resources, and to also save expenditures for the Defendant ISD #11, the parties stipulated that the Court would advise if it would accept supplementation before Plaintiff Simon engaged the services of the expert for this matter. Finally, Plaintiffs requested the Court to permit *Supplementation #3*, which would consist of Plaintiffs' Interrogatories and Defendants' responses to same. Plaintiffs preserves for appeal the Court's refusal of said documentation and discovery.

November 16, 2004, and at the request of Defendants, Magistrate Boylan finally permitted the parties to file additional dispositive motions. Doc. Entry No. 19, Order of Magistrate Boylan.

The administrative record, however, remains as it was when the case was initially filed in 2001 because the Court denied Plaintiffs' request to supplement the record with two exceptions. Defendants have offered Ex. E, proof that Plaintiff is enrolled in another district at this time .In response, Plaintiffs have offered the Affidavit of Jan Simon regarding Plaintiff Mahesh's enrollment in another district.

## STANDARD OF REVIEW

In an IDEA case, a hearing officer is free to reject the representations of the school district personnel and on review of a hearing process, the District Court must do more than simply accept all representations of school personnel. To do otherwise would completely defeat the purpose of conducting due process hearings and determining the facts about the child's education. *Henrico County v. Z.P.*, 285 F. Supp. 2d 701, reversed and remanded, 2005 WL 327026 (4th Cir. Feb. 11, 2005).

The District has the burden of proof of all matters in a due process hearing at the administrative level. The Eighth Circuit has held that "[a]t the administrative level, the [School] District clearly had the burden of proving that it had complied with the IDEA." *Stein v. Independ. School Dist. No. 196*, 135 F. 3d 566 (8th Cir. January 30, 1998). Defendant ISD 11 failed to meet its burden of proof at the administrative level. Since the hearing officers ruled for the Defendant ISD 11, except for the HRO, in part, the hearing officers failed to hold the Defendant ISD 11 to this exacting burden of proof.

In a Motion for Judgment on the Record where the Court explicitly denied any additional evidence, as here, the Court reviews the administrative record for compliance with the legal tenants of the IDEA. Where the administrative hearing officers have erred, as a matter of law, the Court has the authority and responsibility to reverse the administrative hearing officers. *Fort Zumwalt v. Clynes*, 119 F. 3d 607 (8th Cir. 1997). While the Court may give the hearing officers' decisions "due weight," this does not mean that the Court abdicates all judicial function. *Nein v. Greater Clark County Sch. Corp.*, 95 F. Supp. 2d 961, 965 (S.D. Ind. 2000). In fact, the amount of deference given to a hearing officer's decision must be based in part on whether the hearing officers findings and legal conclusions were thorough and complete, and, of course, correct as a matter of law. *Adams v. State of Oregon*, 195 F. 3d 1141, 1145 (9th Cir. 1999). The Court must take an "independent and critical look" at the evidence and legal analysis. *Nein*, 95 F. Supp. 2d at 965; *Fort Zumwalt*, supra.

Defendant ISD 11 has failed to file any motion to supplement the record. *Independent School District No. 283 v. S.D.*, 88 F.3d 556, 560 (8th Cir. 1996). Thus, the Court should not consider Defendant ISD 11's affidavit and Ex. E., concerning Plaintiff's attendance in the neighboring district. However, if the Court does consider such information, then the Court must also take into account Plaintiff's affidavit of Ms. Jan Simon about Plaintiff Mahesh's attendance in the neighboring district.

**ESSENTIAL FACTS WITHIN THE RECORD**

The present lawsuit was filed on November 1, 2002. See, generally, Complaint. Defendant ISD 11 answered on November 21, 2002. See, generally, Answer. Since Plaintiffs' Motion to Supplement the Administrative Record was denied, the Court must decide the matter

entirely on the administrative record as it existed at the close of the due process hearing appeal.

Plaintiff Mahesh's last three year comprehensive evaluation was completed in late October, 1999. Complaint, ¶ 25. This dispute began in the spring and fall of 2000 when Plaintiff Mahesh was twelve years old and completing his fifth grade at Andover Elementary School. Complaint, ¶ 6, 7. Teacher Judy Trepanier had reported to the family in the spring of fifth grade that Plaintiff Mahesh had reading, writing and math skills between the second and third grade level. Complaint, ¶ 6.

As Plaintiff Mahesh moved to the Roosevelt Middle School for the 2000-2001 school year to begin sixth grade, Plaintiff Ms. Simon requested that he continue to receive the same amount of paraprofessional services, 1:1, and continue to work on academic tasks as he had in fifth grade. She did this because teacher Judy Trepanier had reported success with this approach. Complaint, ¶8; Answer, ¶ 9. Plaintiffs allege that, Plaintiff Mahesh was, instead, placed in a more restrictive environment, offered less paraprofessional time, and provided less of an academic program. Complaint, ¶ 8. As Plaintiff Mahesh was moved, his last agreed upon IEP was dated December, 1999. Complaint, ¶ 6. This IEP provided that Plaintiff Mahesh was to receive 1800 minutes a week of full-time paraprofessional assistance. Complaint, ¶ 6; Answer, ¶ 7.

The parties could not agree to an IEP for Plaintiff Mahesh at the start of his sixth grade year at Roosevelt Middle School. Special Education Director, Susan Butler, ordered a teacher to unilaterally write up an IEP for Plaintiff Mahesh and send it to his parents. Complaint, ¶ 10. This was created on or about December 1, 2000 and became known as the "December, 2000" IEP. This IEP reduced the amount of paraprofessional time for Plaintiff Mahesh and reduced Plaintiff

Mahesh's involvement in the mainstream setting. Complaint, ¶11; Answer, ¶ 12. Plaintiff Ms. Simon rejected the December 2000 IEP. Complaint, ¶11.

After the parent complained that ISD 11 was not following the December 1999 IEP, the Defendant ISD 11 requested a special education hearing to prove up the December, 2000 IEP. Complaint, ¶ 12. The Defendant ISD 11 requested a hearing on February 28, 2001 and Plaintiff Simon requested a hearing on March 23, 2001. The two hearings were consolidated and became known as MDCFL Case No. 420/427. Complaint, ¶ 12.

On June 4, 2001, IHO Kreb ruled on the combined hearings. Complaint, Ex. A (hereinafter referred to as IHO Dec.). IHO Kreb agreed that the December 2000 IEP was incomplete, and did not contain measurable goals and objectives. She also concluded that the IEP needed to be updated to reflect Plaintiff Mahesh's skill levels as of May, 2001. IHO Dec., pg. 26. Specifically, she found that:

> "The proposed IEP is incomplete and requires changes to reflect the Student's current levels of performance and the progress demonstrated since its development in November 2000 and much of it discussed during this hearing. Some information in the Math Present Level of Performance (PLP) section does not reflect the Student's current abilities in math. For example, the quote regarding the Student's academic skills references methods of instruction. The short term objectives for both math and reading/written language contain percentages of performance which can be measured, documented and recorded. The levels of verbal and physical prompting are not, however, included in the objectives to depict the learning hierarchy to reflect the Student's stages of functional progress which should be appropriately reported. Progress on any objective can be measured by teacher observation. However, objectives or benchmarks should specify a level of completion at each stage of projected performance. Objective 2 of Reading and Language does not specify a reading level. Goal 4 does not contain data regarding the Student's ability to complete sequenced tasks. The PLP's do not reflect the Student's current level of performance. Objectives defined in Goal 5 do not contain specificity with regard to measuring performance."

IHO Dec., pg. 26. Despite these significant deficiencies, IHO Kreb erroneously concluded that Defendant ISD 11 had not denied Plaintiff Mahesh a free appropriate public education. She then

approved the December 2000 IEP with changes. IHO Kreb concluded that Plaintiff Mahesh did not need a 1:1 aide, although he needed a paraprofessional at times and that he should not have more than two paraprofessionals for consistency purposes. Complaint, ¶ 17. IHO Kreb also determined that Plaintiff Mahesh could, pursuant to the December 2000 IEP, be placed in a more restrictive setting and that he had been properly provided accommodations, modifications and supplementary services and aids in the regular education environment. Complaint, ¶ 17. In her June 4, 2001 order, IHO Kreb refused to rule on ESY 2001 contending that the issue, raised in March of 2001, was premature. Complaint, ¶ 17. IHO Kreb ordered revision of the December 2000 IEP outside of the team process, permitting the Defendant ISD 11 to make changes to the IEP, as she had ordered, and then to put that IEP in place for Plaintiff Mahesh. Complaint, ¶17. The IHO stated:

> "The IHO has determined that the proposed IEP of December 1, 2000 is incomplete and requires modification. Absent agreement by the Parent and District regarding the proposed IEP or a new IEP within the next seven calendar days, the IHO orders the District to modify the proposed IEP to reflect the following changes by June 11, 2001.

(a) Include in all objectives or benchmarks the anticipated performance level and number of trials required for success.
(b) Provide the types and levels for prompts that apply to each objective as outlined.
(c) Specify the level and number of trials used in data collection where the objective specifies the criteria "of the time."
(d) Delete information in the Present Level of Performance sections that does not reflect performance for the goal area. Include current progress data based on the Student's performance as of May 2001.

IHO Dec., pg. 29, (Emphasis added.) The IHO then ordered that the parent, upon receipt of the proposed IEP as modified, was to review the new draft IEP, object to any goals, objectives or changes and provide suggestions for changes, and if the parties remained in disagreement, the District was to convene an IEP team to discuss and resolve the IEP. She ordered the parties to

use a trained, “neutral” facilitator and to exchange solutions for issues before the meeting. IHO Dec. pg. 29-30.

The District forwarded this changed IEP to the IHO per her order and it became known as the June 2001 IEP. Answer, ¶ 19. Defendant asserts that Plaintiffs were required to request another due process hearing to challenge this hearing officer amended IEP. Answer, ¶ 19.

Plaintiff Simon appealed the decision of IHO Kreb to a Hearing Review Officer. The HRO affirmed the IHO, in part. Complaint, Ex. B (hereinafter, referenced as HRO Dec.) The HRO upheld the IHO, in part, but found that the IHO did not issue a final decision for Plaintiff Mahesh . HRO Dec., Par. 14 states:

> “14. A hearing officer presiding over a due process hearing is required to issue a final decision. 34 C.F.R. §300.511(a)(1). Here, the decision sets up a series of events that are to take place after the hearing ends and does not completely resolve the dispute between the parties or provide the finality contemplated by the regulations. The IHO’s decision shall be modified to delete that portion of paragraph 4 following 4D that set forth steps to be taken after the ordered changes are made.”

HRO Dec., pg. 6., Complaint, ¶ 17, 20.

On September 6, 2001, Plaintiff Simon filed suit in U.S. Federal District Court challenging the results of MDCFL Case No. 420/427 and as the lead representative plaintiff in a requested class action, *Reinholdson v. State of Minnesota, (Reinholdson I*) which was eventually dismissed without prejudiced. On April 15, 2002, the case was refiled as *Reinholdson v. State of Minnesota (Reinholdson II)*, 37 IDELR 213, (D. MN 2002).

Due to the failure of the administrative process to result in a final decision and an IEP for him, Plaintiff Mahesh continued to be educated without any legally constituted IEP as the 2001-2002 school year began. Complaint, ¶ 25. Plaintiff Simon repeatedly requested information about

Plaintiff Mahesh's present levels of performance and eventually requested an independent educational evaluation consistent with 34 CFR §300.502. Defendant ISD 11 initially suggested it would provide same but later stated it was not proposing an independent educational evaluation as that term is defined at 34 CFR §300.502.

On March 27, 2002, Defendant ISD 11 requested a special education hearing to force upon Plaintiff Mahesh a re-evaluation plan of its own choosing while claiming it was an independent educational evaluation. Complaint, Ex. D, E, (hereinafter referred to as MDCFL Case No. 474.) After the plan was determined to be faulty even before the hearing, the Defendant ISD revised the plan, and Plaintiff Simon gave consent reserving all rights to insist on its prompt completion and accurate results and demanded dismissal of the hearing. Complaint, ¶ 26. The hearing was dismissed on May 31, 2002. The dismissal order provides that the re-evaluation was to be completed "as soon as practically possible and in compliance with time lines established by law."

On or about June 7, 2002, and while the evaluation was pending, Timothy Palmatier, counsel for Defendant ISD 11 determined that the June 2001 IEP, (the December 2000 IEP revised after MDCFL Case No. 420/427), now a year old, constituted the "stay put" IEP for Plaintiff Mahesh. Defendant ISD 11 indicated its intent to utilize this June 2001 IEP for Plaintiff Mahesh for the 2002-2003 school year. Complaint, ¶28.

Plaintiff Mahesh underwent recommended surgery related to his cerebral palsy during the summer of 2002 but remained available for evaluation. Complaint, ¶27. In late August, 2002, Plaintiff Mahesh's treating physician ordered homebound services for him, but no such services were provided to him during September, 2002. Complaint, ¶29. He still remained available for

evaluation. From October 7, 2002 forward, Plaintiff Mahesh was in regular attendance at school for the 2002-2003 school year and continued to attend Defendant ISD 11 schools until the completion of the 2003-2004 school year.

**ADDITIONAL EVIDENCE ISSUE**

Defendant ISD 11 has offered an affidavit indicating that Plaintiff Mahesh enrolled within the White Bear Lake School District for the 2004-2005 school year. See, Defendant's Memo, pg. 9, Affidavit of Palmatier. Defendant ISD 11 has not provided any motion to supplement the record. Therefore, the extent to which the Court can consider this evidence is questionable. At a minimum, however, if the Court is going to consider this evidence, then the Court must accept the affidavit of Ms. Reinholdson. Ms. Reinholdson asserts that she and Plaintiff Mahesh continue to reside in Defendant ISD 11's district. Because Ms. Simon could not obtain this for Plaintiff Mahesh in Defendant ISD 11's district, she enrolled him in a neighboring district. Ms. Simon must transport Plaintiff Mahesh to obtain the free appropriate public education which he is entitled. Affidavit of Jan Simon.

**ARGUMENT**

**I. PLAINTIFF'S CLAIMS ARE CAPABLE OF REPETITION BUT EVADING REVIEW.**

Defendant ISD 11 argues that Plaintiffs' claims are moot in whole or in part, due to his enrollment in the White Bear Lake school district for this 2004-2005 school year. *See, Def. Memo, pg. 9-11*. The Defendant cites to *McCarthy v. Ozark School Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004).

The United States Supreme Court has recognized that special education cases, like others, are not moot, where the issue is 'capable of repetition but evading review.' *Honig v. Doe,* 484

U.S. 305 (1988). In a case involving a challenge to an illegal suspension policy in the state of California, the Court found that one plaintiff in *Honig* could proceed but another student who had "aged out" of school could not. Thus, as to the second student, the case was still a live controversy.

The Eighth Circuit has explained more than once that where there is a reasonable expectation that the same complaining party could be subjected to the same action again, the case cannot be dismissed for mootness. *Arkansas AFL-CIO v. F.C.C.*, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc), and see, *Van Bergen v. Minnesota*, 59 F.3d 1541, 1547 (8th Cir. 1995). The Eighth Circuit has previously addressed the question of mootness in the context of a special education case. The Eighth Circuit held that so long as a child requests a due process hearing before enrolling in a new school district, the child is entitled to continue to seek remedies for past violations from the initial district. *ISD No. 284 v. A.C.*, 258 F.3d 769 (8th Cir. 2001); see also, *M.P. v. ISD No. 721*, 326 F. 3d 975 (8th Cir. 2003), rehearing denied (2003). The Court distinguished this type of situation from one where the child enrolled in a different district BEFORE requesting a special education hearing to contest a denial of FAPE. The Defendant ISD 11 relies upon *Neshaminy School Dist. v. Karla B.*, 25 IDELR 725 (D. Penn. 1997) for the suggestion that a child who moves from the district effectively gives up all prospective relief. The Defendant ISD 11's argument is misplaced, however, because here Plaintiffs Reinholdson remain residents of Defendant ISD 11. Plaintiff Reinholdson remains the legal responsibility of Defendant ISD 11 as to his free appropriate public education at any time in the future and until he is age 21. The fact that he has temporarily enrolled in another district during the course of this dispute but has not physically moved or changed residences into another district to obtain the

free appropriate public education to which he is entitled, does not moot his claims.

Here, there is no question that Plaintiffs requested and completed a due process hearing during the 2000-2001 school year, and refuted an additional hearing during a subsequent year. There is no question either that the Plaintiffs continue to reside in the Defendant ISD 11 school district, and, as such, could demand special education services from Defendant ISD 11 at any time and thus be subject to the same practices and policies and failures of which they have already complained. The administrative proceedings preceded Plaintiffs move to the neighboring district, and, as such, the case is not moot.

## II. THE HRO'S DECISION DENIED MAHESH STAY PUT.

Defendant ISD 11 asserts that the hearing officers correctly determined that Plaintiff Mahesh received the paraprofessional services outlined in his 1999 "stay put" IEP. *Def. Memo, pg. 18-19.* Plaintiff Mahesh had a one-to-one paraprofessional dedicated and assigned to him during the 1999-2000 school year. This continued beginning in September 2000 and continuing until the winter school break. Defendants concede that Plaintiffs' IEP and special education program was changed. Thereafter, the assignment varied from a 1:1 paraprofessional to a 1:2 ratio of paraprofessional to a 1:3 ratio of paraprofessional. IHO FF 24; Def. Memo, pg. 18. Rather than deciding if the "stay put" was violated, what the hearing officers did was to decide if the program being utilized was "okay" or "appropriate." This is not the standard for a determination of "stay put."

The Eighth Circuit has addressed the analysis of a "stay put" situation. In *Hale v. Poplar Bluff*, 36 IDELR 61, 280 F.3d 831 (8th Cir. 2002), the Court explained that determination of "stay put" is a three step process. First, a hearing officer or reviewing court must decide as a

factual matter whether there was a "change" to the child's program. Next, a hearing officer or reviewing court must consider whether the change, if made, violated the child's "stay put" IEP. Finally, the hearing officer or reviewing court must determine if the violation denied the child a free appropriate public education. Here, the Defendants concede there was a change from a personal 1:1 aide to sharing of an aide with one other student and then with two other students. No analysis was made of whether this constituted a violation of the stay-put IEP. Rather, the facts were recounted and then the standard was completely ignored by the hearing officers who, instead, acknowledged a change and then simply concluded that the change was acceptable. Having failed to analyze the case correctly, the hearing officers missed the point and must be reversed.

## III. THE HRO'S DECISION DENIED MAHESH ADJUDICATION OF ESY.

Plaintiffs requested their due process hearing on March 23, 2001. Defendants contend that Plaintiffs did not "exhaust" the issue of extended school year for summer 2001 and so, therefore, it was proper for the hearing officer to refuse the claim as "premature." *Def. Memo, pg. 19-21.* Defendants argue that Plaintiffs did not address the matter of ESY at IEP meetings and therefore, they could not bring the issue to the hearing officer. That is not, however, what the IHO ruled. Rather, the IHO's reasoning for refusing to decide or to adjudicate the ESY issue was that to do so was "premature." Plaintiffs asserted that the Defendants had an illegal ESY policy and had not addressed ESY in a timely or appropriate manner for Plaintiff Mahesh. See, P. Ex. No. 37.

Extended School Year services means special education and related services that are provided to a child with a disability beyond the normal school year of a public agency. These

services are generally provided during the summer months, June, July and August. The hearing in this case concluded in May of 2001, having begun in mid-winter. ESY services are to be provided:

> "In accordance with the child's IEP."

34 CFR 300.309(b)(1)(ii). And ESY services are to:

> "Meet the standards of the SEA."

34 CFR 300.309 requires that

> "Each public agency shall ensure that extended school year services are available as necessary to provide FAPE, consistent with paragraph (a)(2) of this section.

Defendant ISD 11 apparently conceded at the due process hearing that the December 2000 IEP did not include ESY services. Its argument is simply that the issue of ESY was premature for hearing because somehow the parents were to have prescient knowledge of what the district intended to provide Plaintiff Mahesh for summer 2001.

Notably, nothing in the IDEA subrogates a decision about ESY to a later time or a separate process than the traditional IEP team as the team is writing up the IEP for the school year. In fact, the intent of the rule seems to be the opposite for it states that ESY is to be "in accordance with the child's IEP" which can hardly be done outside of the IEP team process where the IEP is reviewed, written and discussed.

The District produced no evidence at hearing to show that it had specifically discussed ESY at an IEP meeting prior to the parents' request for hearing. The December 2000 IEP was not even developed at a meeting with the parents but was written up by teacher Brenda Erickson at the direction of Special Education Director Susan Butler. No evidence was adduced by the

District at the hearing to establish that ESY was discussed at the November meeting or that a decision was made or consensus reached about ESY. The December proposed IEP does not include ESY eligibility –it states, "to be determined later." This checkmark was made solely by Ms. Erickson. Unfortunately, no "later" date was ever identified.

Defendant ISD 11 seeks to foist responsibility for this failure on the parents. The Defendant ISD 11 claims that because the parent did not TELL the Defendant ISD 11 about a desire for ESY services or attend meetings about same, the parent had no right to a hearing on that issue. This analysis is inconsistent with the IDEA's hearing provision which requires that a parent has the right to a due process hearing on "any issue" related to the child's receipt of a free appropriate public education. 34 CFR 300.507(a). Services for a child in the summer must be determined by his IEP team and consistent with that program of education and the IDEA.

The Defendant ISD 11's ESY policy was restrictive. First, the policy directed teachers to consider only two basis for ESY - "regression/recoupment "or "loss of self-sufficiency." ESY cannot be limited to just two reasons. *Alamo Heights Ind. Sch. Dist. v. State Board of Education*, 790 F.2d 1153 (5th Cir. 1986); *Johnson v. ISD No. 4 of Bixby*, 921 F.2d 1022 (10th Cir. 1990).

The Defendant ISD 11's ESY policy recommended determination of ESY services by April 1, 2001. P. Ex. No. 37. Determination of such services by April 1, 2001 effectively eliminate Plaintiffs ability to seek procedural redress of any contested ESY services before summer. At the time of the case, Minnesota had a two tier process that required some 105 days to complete (45 days for the initial hearing decision, 30 days for either party to appeal and 30 days for the second tier decision). Even if Plaintiffs received ESY services notification right on April 1, if they disagreed with it, a final hearing decision at the second tier could not be

completed before summer began. This unreasonable delay in the determination of ESY by Defendant ISD 11 essentially eliminated Plaintiffs ability to complain about the ESY services. *Reusch v. Fountain*, 21 IDELR 1107, 872 F. Supp. 1421 (D. Md. 1994). In fact, even though Plaintiffs hearing was requested on March 23rd, the hearing decision was not issued until June, 2001.

This case is not at all like *ISD No. 432 v. J.H.*, 28 IDELR 427 (D. Minn .1998) cited by Defendants. In that case ,the parties had actually reached an agreement and accord on an IEP and yet the plaintiffs wanted to proceed to hearing. Here, Plaintiffs had no answer as to ESY even by the time the case proceeded to hearing and thus, determination of ESY was not premature but rather, clearly overdue. The Court must reverse the hearing officers on the issue of ESY.

## IV. MAHESH WAS DENIED A FULL AND FAIR DUE PROCESS HEARING ON ALL ISSUES AND A FINAL DECISION.

20 U.S.C. 1415 (b) and 34 C.F.R. 300.507 guaranteed Plaintiff Mahesh a full and fair due process hearing on “any matters described in Sec. 300.503(a)(1) and (2) (relating to the identification, evaluation, or educational placement of a child with a disability or the provision of FAPE to the child.” Defendant ISD 11 claims that the IHO could eliminate issues for hearing, reject evidence or build up a record of evidence on her own accord, and fail to issue a final decision and that the IHO, despite all of this, provided Plaintiffs with a full and fair due process hearing. Def. Memo, pg. 21- 25.

### A. Denial of a Full Hearing.

The IHO restricted Plaintiff Mahesh’s right to a full hearing in reliance upon a now repealed Minnesota statute. Minn. Stat. 125A.09, Subd. 6 required that students plead “with

specificity" all issues in dispute. This statute, now repealed, was contrary to the clear language of the IDEA which permits a hearing on "any matters" related to identification, evaluation, educational placement or provision of FAPE. This contradication is most likely why the state repealed the statute. But Plaintiff Mahesh was adversely impacted by the statute before its repeal. Based on the statute, the IHO eliminated: 1) training issues related to the paraprofessionals (although Plaintiff asserted the need for a "trained paraprofessional); 2) development of Plaintiff's IEP outside of the IEP process; 3) failure to have regular education staff involved in developing Plaintiff's IEP; 4) failure to discuss reading curriculum of the IEP with the parent. It is important to recall that the burden of proof as to "all matters" at the hearing level is the school district's. *Stein v. Independ. School Dist. No. 196*, 135 F. 3d 566 (8th Cir. January 30, 1998). That being the case, the school district was on notice from the time the hearing was requested that it had the duty to "prove up" all requirements of the IDEA. It failed to have that proof and the IHO then eliminated those issues.

School districts have the responsibility to ensure adequately trained personnel. 20 U.S.C. 1453(c)(3)(D); 1413(a)(3)(A); 1413(a)(3)(B); 34 CFR 300.221. Since the Defendant ISD 11 had this statutory responsibility, it could hardly claim to be surprised that it would need to establish the adequateness of training of any paraprofessionals during the hearing process. The hearing officers erred in eliminating this as a part of the Defendant ISD 11's burden of proof.

School districts have the responsibility to develop an IEP within the IEP team process, and with the parents and with regular education staff. 20 U.S.C. 1414(d) requires a written statement developed, reviewed and revised with a team that includes the parents, and regular education staff. The IEP team means a group of individuals that includes the parents. 20 U.S.C.

1414(d)(1)(B)(I). The IEP team means a group of individuals that includes a regular education teacher. 20 U.S.C. 1414(d)(1)(B)(ii). Courts have held that the failure to have the proper individuals at the IEP table can and will invalidate an IEP, especially where the individual that is left out of the process is the parent. *Amanda J. v. Clark County*, 267 F. 3d 877 (9th Cir. 2001). In *Deal v. Hamilton*, 104 LRP 5944 (6th Cir. 2004), the Court examined a situation much like this one where the IEP was "predetermined." Finding that such predetermination undercuts the parents' role in the process, the Court held in favor of the student. Here, there is no dispute that an IEP was created outside of the process, ordered to be fixed by the hearing officer outside of the process and then "presented" to the parent. This is not involving the parent in the process envisioned and required by the IDEA.

The involvement of a regular education teacher is especially important when, as here, there were issues related to Plaintiff Mahesh's involvement in the regular education setting as his least restrictive environment (LRE). 34 C.F.R. 300.550-300.553. Indeed, the Defendant ISD 11 never even proferred evidence sufficient to meet the requirements to establish that Plaintiff Mahesh could not be educated in a more regular education environment with the supplemental services of a 1:1 aide. The IDEA has a preference for a more normal environment. *ISD 283 v. S.D.*, 88 F.3d 556 (8th Cir. 1996); *Sacremento v. Rachel H.*, 14 F.3d 1398 (9th Cir. 1994). A school district's failure to include a regular education teacher in the IEP process is fatal to the development of an IEP. *Shapiro v. Paradise Valley Unified*, 317 F. 3d 1072 (9th Cir. 2003) (failure to have regular education teacher at IEP meeting denied FAPE); *M.L. v. Federal Way School District*, 42 IDELR 57, 104 LRP 51114, (9th Cir. 2004) (failure to involve regular education teacher who knew child constituted denial of FAPE). Clearly, the hearing officers

erred as a matter of law on this point.

By eliminating certain issues which would have proved fatal to the districts' case, the IHO deprived Plaintiffs of a full and fair due process hearing on "any matters" relating to Plaintiff Mahesh's education. The hearing officers must be reversed in that regard.

**B. Evidentiary Concerns.**

Defendants assert that a hearing officer may override the traditional notions of evidentiary procedure in a due process here, to the extent of even interjecting evidence in a case. Def. Memo, pg. 23-25. That is not the law.

Here, IHO Kreb was not an attorney. On her own initiative, she requested the testimony of Dr. Wagner, an individual who had tested the student. While it is true that hearing officers could, under Minnesota law at the time, "question witnesses or request information." The intent of this language is to allow the hearing officer the ability to ask a witness called by a party a question or ask for certain information. It presumes that a party has already called a witness. That is not the case here. Here, IHO Kreb's order to call a witness goes far beyond what the rules anticipated.

In addition, IHO Kreb rejected the transcripts of IEP meetings prepared by the parent on the notion that there were some "errors" in her opinion in the transcript. IHO Kreb did not give any reason why transcripts of the meetings, even assuming purported errors she alleged, could no be admitted. Without the transcripts, the Court here does not have easy access to the facts of what occurred at the IEP meetings. The only evidentiary standard at the time permitted the introduction of evidence that a reasonably prudent person could rely upon. Minn. Stat. Sec. 125A.09.

Defendants cite no case law to support their theory that IHO Kreb, a nonlawyer, could make such evidentiary decisions. The Court must find that such evidentiary decisions are outside the role of a hearing officer and reverse for that reason.

**C. Lack of a Final Decision.**

Defendants admit and concede that IHO Kreb failed to issue a final decision but argue now that the HRO "cured" this deficiency. Def. Memo, pg. 25. The IDEA requires a final decision from the hearing officer. 34 CFR 300.510(a) provides that "a decision made in a hearing conducted pursuant to Secs. 300.507 ...is final..." 34 CFR 300.511 provides that in a two tier system both the initial decision and the HRO decision must be "final." *Muth v. Central Bucks School District*, 839 F.2d 113 (3rd 1988), reversed in part on other grounds, *Dellmuth v. Muth*, 109 S. Ct. 2397, 491 U.S. 223 (1989) held that finality is critical to the due process system and that remand is fundamentally inconsistent with the system. Here, the IHO effectively found the IEP deficient. The current level of performance did not reflect the student. The goals were not written in a manner consistent with the IDEA. Objectives were not defined. See, IHO Dec. Pg. 26. The IHO's solution was to tell the district to "rewrite" the IEP outside of the IEP team process or, in effect, to remand to the district without a finding of a denial of FAPE. The HRO countermanded this process but never resolved the issue of the deficient IEP. Thus, as a result, even after the HRO's decision, Plaintiff Mahesh remained without a final decision on his IEP as envisioned by the IDEA.

**V. PLAINTIFFS COULD NOT EXHAUST ADMINISTRATIVE REMEDIES OR IT WAS FUTILE TO DO SO.**

Defendant ISD 11 argues that Plaintiffs did not exhaust their administrative remedies in

this case as to issues arising after the original due process hearing. Def. Memo, pg. 25-27. In this unusual situation, Plaintiffs exhausted as best they could under the circumstances and believed it to be futile to further exhaust an administrative process that would not result in a final decision as had already been demonstrated by IHO Kreb.

A significant aspect of the situation was the Defendant ISD 11's failure to re-evaluate Plaintiff Mahesh in an adequate and timely manner. Pursuant to the IDEA, children are to be re-evaluated every three years or earlier upon request of a parent or teacher. 34 C.F.R. 300.536; 20 U.S.C. 1414(a)(2). Concerned about Plaintiff Mahesh's progress, Ms. Simon requested an update of his present levels of educational performance and an independent educational evaluation. 34 CFR 300.502. Ultimately, the parties could not agree on even evaluating Plaintiff Mahesh and the Defendant ISD 11 requested a hearing but its evaluation was faulty and Defendant ISD 11 withdrew it. See, Complaint, Ex. D. With no clear IEP in place due to the lack of finality of IHO Kreb's decision and no evaluation in place, Plaintiff Mahesh continued to be denied a current IEP based upon his needs. This was part of the first hearing process - lack of current levels of performance.

Exhaustion was not required because the issues that arose after the initial hearing were the same or similar to those that had been litigated in the initial hearing. The Federal District Court for the District of Minnesota had held that parents could not request another due process hearing on an issue that was the same as or similar to an issue that had already been litigated in a due process hearing. In *Moubry v. ISD 696*, 32 IDELR 90 (D. Ct. MN 2000), the District Court examined a multiple hearings case. The Court held that were the issues in a subsequent hearing were identical to issues brought in an earlier hearing, the parent was not entitled to a hearing.

Moreover, according to the Court, if the issues remained the same, the attorney and parent could even be sanctioned. It is understandable that Plaintiffs and their counsel were unwilling to take that risk in this situation. The same issues that faced Plaintiff Mahesh during the 2000-2001 school year remained at issue throughout - the lack of current levels of performance, an adequately written IEP, provision of a 1:1 aide, services in the least restrictive environment. Defendants cannot have it both ways. If parents cannot bring a new hearing when faced with similar issues in a subsequent year, they cannot be barred from federal court for failure to exhaust. The appropriate mechanism to address such situations of multiple IEPs is to have that information before the Court. The reason for this is that it is important for all parties that IDEA cases be resolved expeditiously and where several consecutive IEPs are similar, it has been held appropriate not to require the exhaustion of administrative remedies. *Johnson v. Lancaster-Lebanon Intermediate Unit 13*, 757 F. Supp. 606 (E.D. Pa. 1991); *Devries v. Spillane*, 853 F. 2d 264 (4th Cir. 1988); *Hawaii Dept. of Education v. Katherine D.*, 727 F.2d 113 (9th Cir. 1983); *Gill v. Columbia 93 School District*, 29 IDELR 955 (W.D. Mo. 1998). Defendants objected to this type of information and Magistrate Erickson refused this type of information when Plaintiffs offered it through a motion to supplement the record. Defendants cannot now claim a lack of exhaustion. Moreover, since Plaintiffs alleged a problem with the hearing system in Minnesota, one which did not even afford them a final decision, further exhaustion was futile. The Supreme Court, in *Honig v. Doe*, 484 U.S. 305, 108 S. Ct. 592, 606 (1988), has explained that judicial review is normally not available under Sec. 1415 until all administrative proceedings are completed, but parents can bypass the administrative process where exhaustion would be futile or inadequate. Exhaustion was futile here, because multiple hearings on same issue IEPs are not

allowed in Minnesota.

## VI. DEFENDANT ISD 11 DENIED MAHESH A FAPE.

Defendants claim that the hearing officers found Plaintiff Mahesh had been provided a free appropriate public education and that therefore, this Court should simply adopt their reasoning and analysis. Def. Memo, pg. 14-16. Given the clearly questionable hearing process utilized, the Court cannot simply defer to the hearing officers as it might in other such cases. Where, as here, the initial hearing officer failed to even render a final decision and made other areas, the Court is not bound by the hearing officer's determinations. Defendants concede that the IHO ordered changes to the IEP so that it would conform with the IDEA. Def. Memo, n. 6. Defendants characterize these as "minor modifications."

"The proposed IEP is incomplete and requires changes to reflect the Student's current levels of performance and the progress demonstrated since its development in November 2000 and much of it discussed during this hearing. Some information in the Math Present Level of Performance (PLP) section does not reflect the Student's current abilities in math. For example, the quote regarding the Student's academic skills references methods of instruction. The short term objectives for both math and reading/written language contain percentages of performance which can be measured, documented and recorded. The levels of verbal and physical prompting are not, however, included in the objectives to depict the learning hierarchy to reflect the Student's stages of functional progress which should be appropriately reported. Progress on any objective can be measured by teacher observation. However, objectives or benchmarks should specify a level of completion at each stage of projected performance. Objective 2 of Reading and

Language does not specify a reading level. Goal 4 does not contain data regarding the Student's ability to complete sequenced tasks. The PLP's do not reflect the Student's current level of performance. Objectives defined in Goal 5 do not contain specificity with regard to measuring performance." IHO Dec., pg. 26. Instead of finding the Defendant ISD 11 out of compliance and determining that Plaintiff Mahesh had been denied a FAPE, the IHO then remanded, stating:

> "The IHO has determined that the proposed IEP of December 1, 2000 is incomplete and requires modification. Absent agreement by the Parent and District regarding the proposed IEP or a new IEP within the next seven calendar days, the IHO orders the District to modify the proposed IEP to reflect the following changes by June 11, 2001.

(e) Include in all objectives or benchmarks the anticipated performance level and number of trials required for success.

(f) Provide the types and levels for prompts that apply to each objective as outlined.

(g) Specify the level and number of trials used in data collection where the objective specifies the criteria "of the time."

(h) Delete information in the Present Level of Performance sections that does not reflect performance for the goal area. Include current progress data based on the Student's performance as of May 2001.

The IHO erred in finding that despite these deficiencies, the Defendant ISD 11's IEP provided Plaintiff Mahesh with an IEP consistent with the IDEA. The statutory requirements are clear.

An IEP must have a "statement of the child's present levels of educational performance." 20 U.S.C. 1414(d)(1)(A)(I). Defendant ISD 11's IEP did not have this for math or reading.

An IEP must contain a "statement of annual goals" that are objective and clear. 20 U.S.C. 1414(d)(1)(A)(ii). Defendant ISD 11's IEP for Plaintiff Mahesh did not have annual goals and objectives that were measurable and clear for reading and other areas.

An IEP must rely upon objective measurement. The IHO erroneously believed that subjective teacher observation was sufficient. Teacher observation is not sufficient because IEPs

must be specific enough to identify the child's needs and present levels with some specificity so that projections of the amount of progress the child is to make pursuant to the IEP are reasonably calculated to result in educational progress. In *Carter v. Florence County,* 950 F. 2d 156 (4th Cir. 1991), affirmed, 510 U.S. 7 (1994), the Court found that a school district had projected a 10th grader would have 4th or 5th grade reading skills. Concluding that this denied the child a free appropriate public education, the Court ordered private school tuition reimbursement for the student. In the present case, the Defendant ISD 11 failed to even make the projection in certain key areas because the Defendant did not have a present level of performance in certain areas. Therefore, the hearing officers should have concluded that the IEP was invalid and that Plaintiff Mahesh had been denied a free appropriate public education.

## CONCLUSION

It will be tempting for the Court to simply reapprove the decisions of the hearing officer and hearing review officer. Instead, the Court must carefully and fully reexamine the hearing record and exhibits and find that Plaintiff Mahesh has been denied a free appropriate public education in the least restrictive environment by Defendants ISD 11.

Dated this 15th day of March, 2005.

/s/ Sonja D. Kerr
Sonja D. Kerr, Bar Number 18777x
KERR LAW OFFICE
Disability Law Center of AK
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
Tel: 907-565-1002; fax: 565-1000

/s/Mary S. Josefson
Mary Josefson, Bar Number 0052772
1821 Rhode Island Ave. N.
Golden Valley, MN

/s/Judith Gran
Judith Gran, Bar Number 40134
Public Interest Law Ctr. of Phil.
125 S. 9th St., Suite 700

Tel: 763-544-5390

Philadelphia, PA 19107
Tel: (215)-627-7100

Counsel for Plaintiffs Reinholdson