**KERR LAW OFFICES**
5972 Cahill Avenue S., Suite 110
Inver Grove Heights, MN 55076

Sonja D. Kerr *
Mary L. Josefson **

(651) 552-4900
Fax(651) 552-4942
www.kerrlaw.com

Cheri Harthaus, Assistant
Pat Howey, Assistant (IN)

*Also admitted in Indiana
** Direct: 612-232-3387

May 21, 2001

Via Fax & Mail

Mr. Kenneth Udoibok
Hearing Officer
The Strommen Building
2469 University Avenue
St. Paul, MN 55114

RE: Victor Grant and ISD No. 11; MDCFL Case File No. 429

Dear Hearing Officer Udoibok:

The purpose of this letter is to formally move that the IHO exclude the introduction into evidence or use at hearing of a Notice of Proposed Special Education Services dated May 10, 2001. My clients have objected to same by letter of May 14, 2001. The parents strenuously object to the IHO's review of any of these materials as part of this hearing which stems from a hearing request of March 30, 2001. If, however, the District is permitted to introduce an IEP dated May 10, 2001, then the parents contend that they should be able to introduce evidence from March 30, 2001 up to the five day deadline for submission of evidence.

**Motion**

The IHO should refuse to consider any IEP created after the parents request for due process as a deliberate attempt to: 1) deny the parents a fair and unimpaired decision on the appropriateness of the IEP originally rejected by the parents which caused their request for due process; 2) a failure of the District to comply with 34 CFR 300.503, prior written notice; and 3) as beyond the jurisdiction of this IHO to decide, given that the appointment of the IHO was for the original hearing request made by the parents prior to the May 10, 2001 IEP; and 4) change the focus of the hearing to different issues than those stated by the parents at the outset of their request for hearing.

**Basic Facts Related to this Matter**



EXHIBIT
A

The parents requested a due process hearing on Victor's behalf on March 30, 2001. At that time, the District had proposed an IEP that the parent refused. The parents refused the IEP after a meeting with school staff on March 20, 2001. At that meeting, the parents very clearly indicated that they wanted Victor to receive 1:1 tutoring for at least 2 hours a week. The District essentially refused that request stating that they did not have any program which provided 1:1 tutoring. The District refused to even consider payment for tutoring at The Learning Edge. In fact, the District staff at the meeting did not even have the opportunity to do so because the District administrator immediately indicated that the District would not pay for the private tutoring. Though the lawyer (Sara Ruff) later in the meeting suggested further meetings, the District at no time provided prior written notice to the parents of the reason for the District's refusal. Parents are entitled to an answer, not to further delay and consideration outside of the IEP team as the parents suspected. The IHO is encouraged to listen to the entire tapes of the March 20, 2001 meeting.

After another meeting was held, which the parent did not attend, the District sent a Notice of Proposed Services. The Notice is dated May 10, 2001. The IEP meeting was held on May 1, 2001 (over a month after the parents requested their hearing on March 30, 2001.) The IEP was then apparently drafted outside of the IEP team meeting on or about May 10, 2001. The District gives no explanation for this 9 day delay in writing up the IEP.

The parents received the IEP on May 12, 2001.

The IHO had previously set May 7 as a date for motions and May 10, 2001 as a date for responses. The parents could not file a motion about this IEP which they had not yet received as of the close of motions deadline. The IHO has agreed to hear this motion since the parents received the IEP after the motions deadline.

It is not clear but it appears that the District is contending that Victor does not need 1:1 instruction in reading/writing. It is not clear but it also appears that the District is claiming that it will utilize "The Sonday System" –a program that the District contends is "better" for Victor than the tutoring he is receiving at The Learning Edge. The parents believe that The Sonday System is not appropriate for Victor. They also contend that Victor needs 1:1 instruction. Further, the District's latest proposal includes ESY is rather amusing since the District knows Victor will be gone to visit his father most of the summer and the District has previously contended it has no responsibility to provide ESY services for a child who goes out of state under such circumstances. See, *McKinney v. ISD No. 11* (SEA MN 2000). It is unfortunate the District did not make such a proposal when Victor's IEP was initially proposed so that the parents could, perhaps, have made arrangements with each other such that Victor would not have to choose between visiting his father and learning to read and write. To the extent that the District will not implement the ESY program out-of-state, the parents do raise that objection and preserve it for appeal.

## ARGUMENT

## I. The IEP Should Be Excluded Because to Include it Denies Parents a Fair and Unimpaired Decision.

The IHO should not consider any portion of the May 10, 2001 IEP. This IEP was created after the parents' request for hearing and forwarded to the parents only after all motion deadlines had passed. This is "after created evidence" that will only serve the interests of the District and is highly prejudicial to the student.

In *DeVries v. Spillane*, 441: 175, 853 F.2d 264 (4th Cir. 1988), the Court considered a similar situation. The parent requested a due process hearing in objection to a proposed IEP. The District subsequently proposed a new IEP before the federal district court and argued that the prior proposed IEP was, effectively, "moot." The parents disagreed. In reviewing the matter, the Fourth Circuit concluded that the District Court could hear additional evidence concerning the newly proposed IEP. In doing so, however, the Fourth Circuit explained that if a new IEP is proposed during the course of administrative proceedings, that second IEP must proceed through the usual administrative process. Thus, this IHO lacks jurisdiction to consider the second IEP which the parent has the right to take through a second due process hearing and to exclude from this hearing which is not about the second proposed IEP, but the first. The District's actions have then, effectively, placed the parents in the position of further exhaustion of administrative remedies and thus precludes the IHO from simply taking this IEP into account as additional evidence.

Moreover, the District has specifically sought to limit the time frame of the hearing from March 30, 2000 to March 30, 2001. The second IEP proposed by the District was not even created until May 10, 2001 and forwarded May 12, 2001 after all motion deadlines had passed. This is not the IEP that the parents sought to go to a due process hearing on when they requested their hearing on March 30, 2001. Indeed, they could not have requested a hearing on it at that time because the May 10, 2001 IEP did not exist on March 30, 2001. To require the parents to now prove their case in a due process hearing against an IEP that has been proposed a month and ½ after they requested a hearing is highly unfair and completely contrary to fundamental fairness.

First, the second IEP proposed by the District is not the IEP complained of or the reason the parents asked for the hearing. Parents are entitled to a hearing decision on the IEP complained of. 20 U.S.C. Sec. 1415(b)(6) provides that parents are to be provided with " an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Parents must be given a due process hearing on any such complaint. 20 U.S.C. 1415(f)(1) To the extent that the May 10, 2001 IEP attempts to "fix" any deficiencies "after the fact" or to beef up the District's case for hearing, the parents right to a fair due process hearing on the originally deficient IEP is being denied and impacted.

Second, the newly created IEP proposed by the District is an attempt to require the parents to re-exhaust their administrative remedies. The parents received an IEP, they rejected and after

meeting with the school on March 20, 2001 they requested a due processs hearing. To now require the parents to go back and defend a second IEP–created through the administrative IEP process while this hearing was pending, is unfair because it requires the parents to "re-exhaust." The Third Circuit has recognized that such a remand is inconsistent with that statutory scheme. *Muth v. Smith*, 646 F.Supp. 280 (E.D. Pa. 1986), *aff'd in part remanded in part* (solely for calculation of attorney's fees) *sub nom. Muth v. Central Bucks School District*, 839 F.2d 113 (3d Cir. 1988). The District knows this and simply seeks to get around the strict rules regarding the admission of evidence at any potential appeal of this matter into district court, by offering a newly proposed IEP at this stage of the game. This is wholly unfair for several reasons.

The District may rely upon *Glazier v. ISD 876*, 25 IDELR 425 (MN Ct. Appls. 1997). That case is factually and legally distinguishable. In *Glazier*, the student objected to the IHO's review of an IEP created four days after the student's request on a previously proposed IEP. However, the parents requested a second due process hearing on the newly proposed IEP during the course of the hearing on the first IEP. The Court was careful to point out that it deemed the student to have requested a hearing on the second IEP and thus, the Court concluded the IHO simply combined the two hearing requests. Here, the student is vigorously contesting any review by the IHO of the May 10, 2001 IEP created months after the student's request for hearing of March 30, 2001. The cases are factually different and the IHO should not be swayed by this decision.

Finally, the IHO has been requested to determine that the time frame for this hearing is March 30, 2000 to March 30, 2001. The IHO should not permit the District to have an "except" clause meaning "except" for evidence and information that the District created after March 30th, namely the May 10, 2001 IEP. The IHO must recognize that the parents requested their hearing based on the information and the proposed IEP that was provided to them before March 30, 2001. The parents planned their case before this IHO accordingly. To now permit the District, literally on the eve of hearing, to thrust into evidence a newly proposed IEP that was created after the motion time lines for this hearing had already passed is wholly unfair.

## II. The IEP Should be Excluded Because it is an Attempt to Avoid the Requirements of Prior Written Notice.

34 CFR 300.503 requires that parents be provide prior written notice whenever the District seeks to initiate or change the identification, evaluation or educational placement of the child or the provision of a free appropriate public education to the child. The complete regulation at 34 CFR 300.503 reads:

Sec. 300.503 Prior notice by the public agency; content of notice
(a) Notice
(1) Written notice that meets the requirements of paragraph (b) of this section must be given to the parents of a child with a disability **a reasonable time** before the public agency–

(i) Proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child; or
(ii) Refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child.
(2) If the notice described under paragraph (a)(1) of this section relates to an action proposed by the public agency that also requires parental consent under Sec. 300.505, the agency may give notice at the same time it requests parent consent.
(b) Content of notice
The notice required under paragraph (a) of this section must include--
(1) A description of the action proposed or refused by the agency;
(2) An explanation of why the agency proposes or refuses to take the action;
(3) A description of any other options that the agency considered and the reasons why those options were rejected;
(4) A description of each evaluation procedure, test, record, or report the agency used as a basis for the proposed or refused action;
(5) A description of any other factors that are relevant to the agency's proposal or refusal;
(6) A statement that the parents of a child with a disability have protection under the procedural safeguards of this part and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained; and
(7) Sources for parents to contact to obtain assistance in understanding the provisions of this part.
(c) Notice in understandable language
(1) The notice required under paragraph (a) of this section must be--
(i) Written in language understandable to the general public; and
(ii) Provided in the native language of the parent or other mode of communication used by the parent, unless it is clearly not feasible to do so.
(2) If the native language or other mode of communication of the parent is not a written language, the public agency shall take steps to ensure--
(i) That the notice is translated orally or by other means to the parent in his or her native language or other mode of communication;
(ii) That the parent understands the content of the notice; and
(iii) That there is written evidence that the requirements in paragraphs (c)(2) (i) and (ii) of this section have been met.
(Authority: 20 U.S.C. 1415(b)(3), (4) and (c), 1414(b)(1))

Prior written notice has not been provided by the District concerning this latest IEP proposal of May 10, 2001, received by the parents on May 12, 2001.

First, the regulation requires that the District provide prior written notice "a reasonable time" before such action would occur. The IEP dated May 10, 2001 was provided to the parents on May 12, 2001. This is not a "reasonable time" under the circumstances where a hearing was initially requested on March 30, 2001 and is set to begin on May 30, 2001. "Reasonableness" is judged by all the factors in a situation. Here, there is absolutely no reason why the District, if it

sought to provide a different IEP for the student could not have done so earlier so that the parents could have prepared their case for any such IEP. The District may argue that the delay in developing the IEP was because the parents would not attend an IEP meeting. That is an argument without merit. Parents are not required to attend IEP meetings and where, as here, a due process hearing was requested. This is especially true since the parents requested a hearing only after meeting with the District on March 20, 2001 to give the District an opportunity to correct the situation. (As explained in the parents' original statement of objections, the parents will show at hearing that the District's failure to properly follow IEP team procedures is the reason that they were reluctant to go to an additional IEP meeting after having requested this hearing.)

Second, prior written notice demands that the District provide all of the detailed information described in the regulation. The District may argue that the IEP itself provides the prior written notice. This is not sufficient. Prior written notice includes a description of the action proposed or refused, a description of any other options the district considered and why those options were rejected, a description of each evaluation procedure, test, record, or report the agency used for its proposed or refused action, and a description of any other factors relevant to the agency's decision. The District has not provided this information to the parents and we are now less than five calendar days from the beginning of the hearing. Without this information, the parents ability to contest the newly proposed IEP at the hearing. The parents would be forced to elicit that information at the hearing itself, which is not the purpose of the hearing. The District has a firm legal responsibility to state, in writing, all of the requirements of a prior written notice. Having failed to comply with same, the District should not be permitted to introduce the newly created IEP into evidence.

Where, as here, prior written notice has not been provided at all or, at best, ambiguously through this late IEP, the late IEP should not be admitted.

## III. The IHO Lacks Jurisdiction to Hearing the Proposed IEP.

This IHO was appointed because the parents requested a due process hearing on March 30, 2001. The IHO's appointment came at that time from the MDCFL based on a requested hearing. The parents have objected to the May 10, 2001 IEP by letter to the District. However, the parents have not requested a due process hearing on the IEP because they believe the IEP is deficient. Since this IEP is, according to the District, an initial IEP, the District cannot proceed with the IEP without the parents' consent. The only way that the District can put this issue before any hearing officer would be to request a new due process hearing and ask that the parents' consent be overridden by a newly appointed hearing officer. The District has not made such a request. Even if that request were made today, the District would then have to offer the parents a conciliation conference (see Minn. R. at 3525.3700) and such could not be held prior to the commencement of this hearing. See, *ISD No. 432 v. J.H.*, 28 IDELR 427 (D. Ct. MN 1997) (conciliation prerequisite to holding hearing on an IEP.)

## CONCLUSION

For all of the above reasons, the IHO must decline to review the May 10, 2001 IEP and any documents related to it. If, however, the IHO decides to review the May 10, 2001 IEP, the parents reserve the right to produce evidence about the IEP, contrary to the IEP and to refute same.

Respectfully submitted this 21st day of May, 2001.

Sonja D. Kerr (CH)

Sonja D. Kerr, #18777x
KERR LAW OFFICE
5972 Cahill Ave. S. #110
Inver Grove Hts. MN 55076
(651)552-4900

Counsel for Victor Grant and parents

c: Paul Ratwik/Mick Waldspurger for ISD 11
Parents of Victor Grant

**Protecting the Civil Rights of Persons with Disabilities Since 1989**