STATE OF MINNESOTA
MINNESOTA DEPARTMENT OF CHILDREN FAMILIES AND LEARNING
BEFORE THE INDEPENDENT HEARING OFFICER

In the Matter of Victor Grant

v.

Independent School District, No. 11, Anoka-Hennepin

**MDCFL Case No. 429**

**DISTRICT'S MEMORANDUM OF LAW IN OPPOSITION TO PARENT'S MOTION TO EXCLUDE THE PROPOSED IEP**

## INTRODUCTION

Independent School District No. 11, Anoka-Hennepin ("District") submits this Memorandum of Law in opposition to Parent's motion to "exclude" the Individual Education Program ("IEP") which the District proposed on May 10, 2001. Although not identified as such, Parent's motion appears to be in the nature of a motion in limine.

## STATEMENT OF FACTS[1]

Kelley Sunderlin ("Parent") is the mother of Victor Grant ("Student"), a thirteen year old boy who was born on February 29, 1988. He is currently enrolled in the District and attends the sixth grade at Northdale Middle School. Student, who previously lived out-of-state, first enrolled in the District in the fall of 1998. He was in fourth grade at the time.

In November 1998, the District evaluated Student and concluded that he did not qualify for special education services under State eligibility criteria. Parent did not object to either the

---

1 Parent has made several inaccurate allegations in her memorandum in support of her motion to compel. Rather than engage in a point-by-point rebuttal of such allegations, the District denies all allegations set forth in the Parent's memorandum and will simply set forth a chronological statement of the facts that are relevant to the Parent's motion. All factual assertions are supported by the Affidavit of Linda Gardner which is attached and incorporated as if fully set forth herein.

EXHIBIT
B

evaluation or the results of the evaluation until more than two years later when she requested a local due process hearing on March 30, 2001.

On or about August 31, 2000, Parent sent the District a letter requesting another evaluation of Student. On September 5, 2000, a teacher from the District contacted Parent to schedule a team meeting to discuss the development of an evaluation plan to address Parent's areas of concern. On September 28, 2000, the District proposed an Evaluation Plan for Student and sought to obtain Parent's consent to conduct the evaluation. This was considered an "initial evaluation" because Student had not previously qualified for special education services in the District. The written consent of a parent is required before a school district may proceed with an initial evaluation. See 34 C.F.R. § 300.505(a)(1) ("informed parent consent must be obtained before conducting an initial evaluation or reevaluation").

On October 3, 2000, Parent informed the District that she needed further information before she would consent to the evaluation, and that she would like Student to be evaluated in the area of speech/language. On the same day, Parent requested a copy of the Student's education records. The District promptly complied with Parent's request for records and informed Parent that the District was willing to evaluate Student in the area of speech/language.

On October 23, 2000, the District proposed another Evaluation Plan for Student. On October 27, 2000, the District received Parent's written consent to proceed with the evaluation. The District subsequently conducted the evaluation within thirty (30) school days as required by law. See Minn. R. 3525.2550, subp. 2(C) & Minn. R. 3525.0200, subp. 2. The evaluation report was completed on December 8, 2000.

The IEP team, including Parent, met on December 13, 2000 to discuss the results of the evaluation. The team concluded that Student met the state criteria for special education services

under the category of a specific learning disability ("SLD"). Specifically, Student met the criteria for a SLD in the areas of broad math and broad written language. Although he demonstrated some weaknesses in the area of broad reading, he did not meet the criteria in the area of broad reading.[2]

During the meeting held on December 8, 2000, Parent stated that she would like to consult with others before developing an IEP. The other members of the team accommodated Parent's request and agreed to meet again at a later date.

In January 2001, Parent had Student evaluated by Dr. Lawrence Charnas, a physician from the University of Minnesota. On January 18, 2001, Dr. Charnas wrote a report of his evaluation. The following day, Parent wrote the District a letter stating that Student would be undergoing further testing and that, meanwhile, she would like to attend an IEP meeting to develop an interim IEP. Pursuant to Parent's request, an IEP meeting was held on January 31, 2001.

The IEP manager brought a working draft of an interim IEP to the meeting on January 31, 2001. This preliminary draft was intended to serve as a starting point for discussion by the team, including Parent. It was not intended to be a formal proposal. During the meeting, Parent became upset because the draft IEP did not contain a reading goal. School staff on the team explained that they were willing to include a reading goal in the IEP. Parent abruptly stated that she needed to leave and that she wanted a copy of the draft IEP. The IEP manager reiterated that the IEP was merely a "draft" and not the final document. Parent again requested a copy of the

---

[2] It is not uncommon for a student to meet State eligibility criteria for a SLD in one year, but not meet criteria in prior years. A student can have a learning disability but not meet the State eligibility criteria for special education services. Because a student with a learning disability often learns at a slower rate than his or her peers, over time the gap between the student's general intellectual ability and academic achievement can widen to the point where the student meets State criteria to receive special education services under the category of a SLD.

IEP. The IEP manager honored Parent's request, but wrote "Draft" on the top of each and every page of the IEP to record the fact that it was merely a draft. A copy of the "draft" IEP is enclosed and incorporated herein as Exhibit A, and is also enclosed in the District's Exhibit Book as Exhibit 44.

Upon receiving a copy of the draft IEP, Parent stated that she wanted a "signature page," referring to the Notice of Proposed Special Education Services form. Because the IEP manager did not intend to propose the draft IEP she had brought to the meeting, the IEP manager had not brought a Notice of Proposed Special Education Services form to the meeting. In an attempt to accommodate Parent's request for such a form, the IEP manager left the meeting, accessed a computer, and printed a Notice of Proposed Special Education Services form for Parent.

On February 6, 2001, Parent returned the Notice of Proposed Special Education Services form. On the form, she wrote in bold letters, "I do not agree."[3]

The District subsequently called Parent to discuss her concerns. The District offered Parent the opportunity to participate in a conciliation conference or mediation in an attempt to resolve any misunderstanding or conflict. Parent declined the offer. Parent, who has prior experience in requesting due process hearings, explained that she was not interested in participating in conciliation or mediation.

On or about March 2, 2001, Parent sent the District a letter requesting an IEP meeting. Pursuant to that request, the District attempted to contact Parent on March 7, 8, and 9, 2001.

---

[3] In her statement of objections, Parent states that she is challenging a "proposed IEP dated January 31, 2001." However, the District did not propose an IEP for Student on that date. District staff simply acceded to Parent's demands and provided her with a copy of the working draft that was brought to the meeting to serve as a catalyst for discussion. In doing so, however, the staff never intended the draft IEP to be a final or proposed IEP. In fact, the staff did everything possible to make it clear that the document was merely a draft.

Parent returned the District's telephone call on or about March 9, 2001, and an IEP meeting was then scheduled for March 20, 2001.

Meanwhile, on March 9, 2001, Parent sent the District a letter stating that "since the IEP that was proposed on January 31, 2001, did not address the area of Reading . . . I have had no other choice but to seek services privately. I am requesting that District 11 provide for these services which will be needed two (2) times weekly." Parent concluded the letter by noting that her attorney, Sonja Kerr, would be attending the next IEP meeting via telephone conference call.

At the IEP meeting on March 20, 2001, the team discussed and considered a range of alternatives and options in regard to reading instruction. The team asked Parent to explain what she wanted, but Parent's counsel, Sonja Kerr, objected. Ms. Kerr specifically stated: "Now if we're going to quiz the Parent about what the Parent wants, I think the Parent needs to know what all the options are before the Parents can make any knowledgeable or informed decisions." Accordingly, the team proceeded to discuss, at varying lengths, several options for providing specially designed reading instruction (i.e. special education services in reading). The options discussed included the following: (1) a mainstream class with support; (2) an Assurance of Mastery ("AOM") class; (3) a resource room with higher level reading; (4) a resource room with lower level reading; (5) the computer based Fast ForWord program; (6) the computer based earobics program; (7) the targeted services program, which is an after school program with one-to-one support available; and (8) one-to-one instruction. The District clarified that within each of these options, the instruction would be individualized to meet Student's needs.

During the meeting, Parent, through her attorney, indicated that the options raised by the District were unacceptable, and she reiterated her request that Student receive two hours per

week of one-to-one instruction.[4] The District explained that Parent's request for two hours per week of one-to-one instruction was not out of the question, but the team wanted to consider "all the different options." Unfortunately, the team did not have sufficient time to fully consider all the options and reach a decision on which option to propose for Student. Parent abruptly explained that the meeting had taken longer than expected and that she needed to leave because Student was going to be arriving home soon.

In response to Parent's statement about needing to leave, Parent's counsel stated: "I guess if you need to go we probably don't want the meeting to proceed without you." This statement is recorded on the audio tape of the March 20, 2001 IEP meeting and in the transcript created from that audio tape, which will be introduced at hearing as District Exhibits 55 and 56.

At the conclusion of the meeting, the District invited Parent to a follow-up meeting to discuss the issue further. The District explained:

> I don't think this is a stalemate by any means. I think there are still options that are being discussed. I don't think the school district has ruled out the parent's proposal. I am just thinking that we perhaps need more time to resolve it. Would the parents be willing to come to another meeting? I know it's lengthy, but it's also very important. Or attend one by teleconference?

Thus, contrary to Parent's assertions, the IEP team did not refuse Parent's request or make a final decision on her request before the meeting ended on March 20, 2001. The team simply did not have sufficient time on March 20, 2001 to determine the type of specially designed reading instruction that would be proposed for Student.

After the meeting on March 20, 2001, the District made numerous attempts to schedule a follow-up meeting for the purpose of addressing Parent's requests, identifying the type of

---

4 The District understood that Parent was requesting that the District provide two hours of one-to-one reading instruction, but if the District lacked the staff to provide such instruction, only then was Parent requesting that it be provided through a private agency.

specially designed reading instruction that would be appropriate for Student, and completing an initial IEP for Student. On March 23, 2001, the IEP manager left a voice-mail message for Parent asking her to call to discuss the scheduling of an IEP meeting. Parent did not respond. Therefore, the IEP manager left Parent another message on March 27, 2001. Again Parent did not respond.

On March 30, 2001, Parent sent the IEP manager a letter requesting a special education due process hearing. In the letter, Parent thanked the IEP manager for the telephone message seeking to schedule a meeting.

Despite the request for a hearing, the District continued its efforts to schedule another IEP meeting. On April 3, 2001, the District again called Parent in an attempt to schedule an IEP meeting. Parent was unwilling to discuss the scheduling of a meeting, and she asked that all communications regarding the IEP meeting be directed to her attorney, Sonja Kerr. As a result, the School District asked its attorney, Michael Waldspurger, to contact Ms. Kerr and notify her that an IEP meeting was scheduled for 2:00 p.m. on Friday, April 6, 2001.

On April 4, 2001, District counsel faxed Ms. Kerr a letter inviting Parent to the scheduled meeting and enclosing a copy of the Notice of a Team Meeting for a meeting to be held on April 6, 2001. A copy of the meeting notice was also sent home with Student on April 4, 2001. District counsel's letter stated:

> The District hopes that you and the Parents will attend as well in order to increase the likelihood of resolving this matter without the necessity of a hearing. If you or the Parents are unable to attend in person, but would like to participate in the meeting via a telephone conference call, please contact me so that the appropriate arrangements can be made. Additionally, please contact me if you or the Parents are unable to attend at the scheduled time, but would be willing to attend at another time. Alternatively, the Parents may contact the District directly. Unless you or the Parents state that you are unavailable on the date and time specified above, the meeting will be held as scheduled.

A copy of the April 4, 2001 letter is enclosed and incorporated herein as Exhibit B, and is also enclosed in the District's Exhibit Book as Exhibit 63.

On April 5, 2001, the District received a letter from Parent stating that she had received the meeting notice sent home with Student and that she would be unable to attend the IEP meeting on April 6, 2001. Despite the fact that Parent had previously stated that she was unwilling to discuss the scheduling of a meeting, Parent stated that she had not received sufficient notice of the meeting and that she had previously committed herself to a personal family matter. Parent also reiterated in the letter that communications should be directed to Ms. Kerr. Parent did not state, however, whether she wanted the District to proceed with the meeting in her absence.

Later in the day on April 5, 2001, District counsel wrote Ms. Kerr a letter stating that the District was willing to reschedule the meeting for the early part of the week of April 16, 2001, but only if Parent were willing to attend the rescheduled meeting.[5] District counsel explained in the letter that the District was unclear on whether Parent would like the District to reschedule so that she could attend the meeting, or whether Parent would like the District to proceed with the meeting in her absence. A copy of District counsel's letter of April 5, 2001 is enclosed and incorporated herein as Exhibit C, and is also enclosed in the District's Exhibit Book as Exhibit 67. Ms. Kerr did not respond to that letter.

Shortly before noon on April 6, 2001, District counsel called Ms. Kerr and asked whether Parent would be willing to attend an IEP meeting if the District rescheduled a meeting for a later date, or whether Parent wanted the District to proceed with the meeting scheduled for that

[5] In the letter, District counsel disagreed that insufficient notice had been given, particularly in light of Parent's refusal to even discuss the scheduling of an IEP meeting.

afternoon. See Waldspurger Aff. Ms. Kerr essentially refused to respond. Id. District counsel explained that the District was still unclear on whether the Parent wanted the District to reschedule the meeting. Id. Ms. Kerr stated that she did not have time to call the Parent or to discuss the matter. Id. She subsequently hung up the phone. Id.

On April 6, 2001, the District responded to the Parent's statement of objections. A copy of the response, filed by District counsel, is enclosed and incorporated herein as Exhibit D, and is also enclosed in the District's Exhibit Book as Exhibit 68. Among other things, the District's response states:

> The District has attempted to schedule an IEP meeting with the Parent to continue developing the IEP, including the addition of a reading goal, but to date the Parent and her attorney have resisted the District's efforts to schedule a meeting.
>
> . . . .
>
> The District affirmatively alleges that the Parent has failed to engage in the cooperative process envisioned by IDEA. She demanded a copy of a preliminary draft of an IEP and is now claiming that the document represents the District's final proposal. The draft IEP does not represent the District's final proposal. As indicated in this letter and in the two IEP meetings held this year, the District is willing to accommodate many of the requests made by the Parent. However, since demanding a copy of the draft IEP, the Parent has resisted the District's efforts to continue developing the IEP. She appears to be unwilling to even meet with the IEP team to further discuss the development of an IEP.

On April 16, 2001, District counsel wrote Ms. Kerr yet another letter seeking to schedule an IEP meeting for Student. A copy of the April 16, 2001 letter is enclosed and incorporated herein as Exhibit E, and is also enclosed in the District's Exhibit Book as Exhibit 71. District counsel's letter stated that the District was still unclear on whether Parent wanted to attend the meeting. District counsel's letter further stated:

> Given the uncertainty regarding whether the Parent desired to attend the meeting, the District chose not to proceed with the IEP meeting that was scheduled for April 6, 2001. Unfortunately, the situation now appears to be one where the Parent refuses to discuss the scheduling of an IEP meeting with District staff, and you either refuse or are "do not have time" to discuss the same with me. I cannot understand why you and the Parent would resist the District's efforts to

> schedule an IEP meeting. The Parent has requested that the District add certain components to the Student's initial program of education, yet the Parent appears to be attempting to block the District from engaging in the process for continuing to develop the IEP and, in this case, accommodating many of her requests. The Parent's conduct appears inconsistent with her requests and with any claim that the District has delayed the provision of services to the Student. In addition, the Parent's conduct suggests that she is unwilling to engage in the cooperative process envisioned by IDEA.
>
> The District values the Parent's input and would like her to attend the next IEP meeting. <u>If the Parent is willing to attend a meeting, please let me know the earliest dates and times she is available to meet this week.</u> If the Parent does not want to participate in another meeting, please let me know that information as well. Alternatively, the Parent is encouraged to contact the District directly. <u>I want to reiterate that the District is interested in meeting as soon as possible.</u> If you are unavailable to attend a meeting this week, I suggest that the parties meet without their attorneys present.

(Emphasis added).

Meanwhile, on April 16, 2001, the IEP manager called Parent and asked whether she would be available to attend an IEP meeting anytime during that week. Parent stated that she would call the IEP manager back in a few hours. Having not heard from Parent, the IEP manager called Parent again on April 17, 2001 and asked if she had come up with a time when she could attend an IEP meeting. Parent stated that she had not come up with a time but would try to call the IEP manager back later that day. On April 18, 2001, Parent called the IEP manager and stated that felt her question about one-to-one tutoring in reading had not been answered and did not want to attend an IEP meeting.

On April 18, 2001, District counsel received a letter from Ms. Kerr responding to his letter of April 16, 2001. A copy of Ms. Kerr's letter is enclosed and incorporated herein as Exhibit F, and is also enclosed in the District's Exhibit Book as part of Exhibit 77. Ms. Kerr's letter contains numerous derogatory statements and personal attacks. <u>Id.</u> Additionally, in the last paragraph of her letter, Ms. Kerr states that absent any change in the manner in which the

School District conducts IEP meetings, Parent did not intend to attend any IEP meetings and that matters would be decided at the due process hearing.

On April 20, 2001, District counsel wrote Ms. Kerr a letter denying the factual and legal allegations set forth in her letter of April 16, 2001. The letter from District counsel further stated: While the District and its counsel respect the right of an attorney to vigorously represent a client, the personal attacks and negative tone set forth in your letter serve no legitimate purpose. A copy of District counsel's April 20, 2001 letter is enclosed an incorporated herein as Exhibit G.

On April 27, 2001, the District sent Parent a letter stating that an IEP meeting for Student had been scheduled for 11:00 a.m. on May 1, 2001. Along with the letter, the District enclosed a copy of the Notice of a Team Meeting. Additionally, in the letter of April 27, 2001, the District stated:

> Because the District believes that it has properly conducted IEP meetings for Victor, the District concludes that through your attorney you are saying that you do not intend to attend any meetings until after the due process hearing. The District further concludes that you do not want to be contacted about the scheduling of any IEP meetings before the hearing, but you would like to continue receiving notice of any IEP meetings and a copy of any records from the meeting. If these conclusions are incorrect in any respect, please let me know. Also, please know that if you change your mind, you are always welcome to attend any IEP meetings that are held for Victor.

A copy of the April 27, 2001 letter is enclosed and incorporated herein, along with all attachments to that letter, as Exhibit H, and is also enclosed in the District's Exhibit Book as Exhibit 77.

The IEP meeting was held as scheduled on May 1, 2001. Consistent with her earlier statements, Parent did not attend the meeting. During the meeting, the members of the team who were present continued the prior discussion of the options for providing specialized reading

instruction to Student. As a result of that meeting, the District proposed an initial IEP for Student on May 10, 2001. This is the only IEP the District has ever proposed for Student.

Among other things, the proposed IEP contains two reading goals and six reading objectives. Under the proposed IEP, Student would receive 235 minutes per week of individually tailored reading instruction through the AOM classroom for the remainder of this school year, and 235 minutes per week of individually tailored reading instruction in a resource room during the following school year. This would be substantially more instruction and would be provided in an indisputably less restrictive environment than the two hours per week of one-to-one reading instruction requested by Parent.

On May 16, 2001, the District provided the Parent with written notice that it was refusing her request for one-to-one reading instruction. The written notice included a description of the action refused by the District; an explanation of why the District refused Parent's request; a description of the other options the District considered and the reasons why those options were rejected; a description of the evaluations, tests, records, and reports used as a basis for the refused action; a description of other relevant factors; a statement that parents of a child with a disability have protection under the procedural safeguards of the Individuals with Disabilities Education Act ("IDEA"); and sources for parents to contact to obtain assistance in understanding the provisions of IDEA. A copy of this written notice is enclosed and incorporated herein as Exhibit I, and is also enclosed in the District's Exhibit Book as Exhibit 87. Along with the written notice, the District provided the Parent with a copy of the procedural safeguards brochure.

## STANDARD OF REVIEW

Parent's first argument is that jurisdiction does not exist. Where a party brings a motion arguing that jurisdiction does not exist, the nonmoving party's factual assertions concerning jurisdiction are presumed to be true, and the motion will succeed only if the moving party clearly demonstrates the absence of an element necessary for jurisdiction. See Moubry v. Independent Sch. Dist. No. 696, 951 F. Supp. 867, 883 (D. Minn. 1996) ("we accept, as true, all of the Plaintiff's allegations of jurisdictional fact"); see also [Student] v. Independent Sch. Dist. No. 281, MDCFL Case H337-1M, at 3-4 (LEA MN 1999) (Sheehy, ALJ).

In regard to Parent's other arguments, Parent has an obligation to demonstrate the absence of an issue for hearing. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. Board of Education v. Pico, 457 U.S. 853, 863 (1982).

In the instant case, Parent has not submitted any affidavits or other evidence in support of her motion. Rather, Parent's motion is premised entirely on the unsupported assertions of her attorney. The unsupported assertions of a party's attorney do not constitute competent "evidence." See E.N. v. Special Sch. Dist. No. 1, 603 N.W.2d 344, 348 (Minn. Ct. App. 1999) (holding that attorney Kerr's assertions to a hearing officer did not constitute evidence). In contrast to Parent's motion, the District's Memorandum of Law in Opposition to Parent's Motion is supported by sworn affidavits. Accordingly, for purposes of Parent's motion, the uncontested evidence set forth in the District's sworn affidavits must be accepted as true.

## ARGUMENT

Parent essentially makes four baseless arguments to "exclude" the District's proposed IEP. First, Parent argues that the Hearing Officer lacks jurisdiction to consider the proposed IEP.

Second, Parent argues that accepting the proposed IEP into evidence would be unfair because it would deny them the opportunity to challenge the appropriateness of a draft IEP. Third, Parent argues that consideration of the proposed IEP will change the focus of the hearing. Fourth and finally, Parent argues that the proposed IEP is an attempt to avoid the requirements of "prior written notice." The District will address each of these arguments in turn.

## I. THE HEARING OFFICER CLEARLY HAS JURISDICTION TO CONSIDER THE PROPOSED IEP.

The Parent's assertion that the Hearing Officer does not have jurisdiction to consider the District's proposed IEP is directly contrary to the Minnesota Rules. Specifically, Minnesota Rule 3525.4100 states that five days before the commencement of a due process hearing, the Hearing Officer "shall receive . . . a copy of the pupil's current and proposed IEP." Minn. R. 3525.4100, subp. 1(C). Information received under this Rule must be "made a part of the hearing record." Id. subp. 1(D). Additionally, the Rule states that upon receiving a copy of the proposed IEP, the Hearing Officer shall review the proposed IEP to determine whether it complies with the law. Id. subp. 2(A). Thus, the Hearing Officer not only has jurisdiction to consider the District's proposed IEP, the Hearing Officer is required to consider the proposed IEP, make it part of the hearing record, and determine whether it complies with the law.

The District proposed an IEP for Student on May 10, 2001. This is the only IEP the District has ever proposed for Student—a fact which is uncontested and must be accepted as true for purposes of this motion. Thus, pursuant to Minnesota Rule 3525.4100, the Hearing Officer has an obligation to consider the District's proposed IEP, to make it part of the hearing record, and to determine whether it complies with the law.

Additionally, Minnesota Rule 3525.4100, subpart 2(E), states that upon receiving a copy of a school district's proposed IEP, the hearing officer "may require the district to propose an

alternative IEP." Given that hearing officers have jurisdiction to require school districts to propose an alternative IEP after a parent requests a hearing, common sense dictates that hearing officers must have jurisdiction to review an IEP proposed after a parent requests a hearing.

Finally, the Minnesota Court of Appeals has held that once a parent establishes jurisdiction before an administrative hearing officer, the school district is not required to establish "separate jurisdiction." See E.N. v. Special Sch. Dist. No. 1, 603 N.W.2d 344, 349 (Minn. Ct. App. 1999) (addressing jurisdiction in the context of an appeal to a HRO). The court further held that a requirement of separate jurisdiction would have "no basis in statutory or case law." Id. Thus, any argument by Parent that the District was required to separately establish jurisdiction for review of the proposed IEP is without merit.[6]

## II. THE PROPOSED IEP MUST BE OFFERED AND ACCEPTED ADMITTED INTO EVIDENCE.

### A. Parent Erroneously Seeks to Challenge a Draft IEP Rather than the Proposed IEP

The Eighth Circuit Court of Appeals has specifically held that a school district may develop a draft of an IEP before a meeting, as nothing in IDEA or its regulations prohibits a school district from coming to an IEP meeting with tentative recommendations for the development of a proposed IEP. Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 657 (8th Cir. 1999). On January 31, 2001, the District exercised its right to bring a preliminary draft of an IEP to the meeting. The uncontested evidence shows that school staff on the IEP team repeatedly informed Parent that the document was only a "draft" and not the final document.

---

6 Parent's assertion that jurisdiction is lacking because the District allegedly did not offer a conciliation conference is unfounded. The uncontested evidence shows that the District has offered Parent conciliation and mediation, and that Parent declined that offer. "If a parent or guardian refuses efforts by the district to conciliate the dispute with the district, the requirement of an opportunity for conciliation or other alternative dispute resolution must be deemed to be satisfied." Minn. Stat. § 125A.09, subd. 4.

When Parent demanded a copy of the document, the IEP manager even wrote "Draft" on the top of each and every page of the IEP to record the fact that it was merely a draft. Only then did the IEP manager give the Parent a copy.

Despite the overwhelming and uncontested evidence to the contrary, Parent seeks to deliberately mischaracterize the draft IEP as a final proposed IEP. The District did not "propose" the draft IEP. The draft IEP is not a final proposal.

Parent does not have a right to challenge a draft IEP. And the District certainly is not required to defend a draft IEP that embodies nothing more than tentative recommendations for the development of a proposed IEP. "The law limits the matters on which a due process hearing can be requested." Independent Sch. Dist. No. 432 v. J.H., 8 F. Supp.2d 1166, 1172 (D. Minn. 1998). Minnesota law clearly states that parents have the right to request a hearing only if they continue to object to one of the following:

> (1) a proposed formal educational assessment or proposed denial of a formal educational assessment of their child;
> (2) the proposed placement of their child in, or transfer of their child to a special education program;
> (3) the proposed denial of placement of their child in a special education program or the transfer of their child from a special education program;
> (4) the proposed provision or addition of special education services for their child; or
> (5) the proposed denial or removal of special education services for their child.

Minn. Stat. § 125A.09, subd. 6 (emphasis added). In short, parents may only obtain an impartial due process hearing only if the parent continues to object to the proposals by the school district. Independent Sch. Dist. No. 432 v. J.H., 8 F. Supp.2d 1166, 1172 (D. Minn. 1998).

In the instant case, Parent may object to the District's proposed IEP, but not to a preliminary draft of that document. Parent has acted prematurely if she is objecting only to the draft IEP. In the event that Parent objects only to the draft IEP, and does not intend to object to

the District's proposed IEP during this hearing, the District moves the Hearing Officer to dismiss the hearing altogether pursuant to Minn. Stat. § 125A.09., subd. 6 and Independent Sch. Dist. No. 432 v. J.H., 8 F. Supp.2d 1166, 1172-73 (D. Minn. 1998).

**B. The Only Time Limitations on the Submission of Evidence is the Statute of Limitations and the Five-Day Rule**

The Hearing Officer has ruled that a one-year statute of limitations applies. Parent requested a hearing on March 30, 2001. Therefore, any claims arising before March 20, 2000 are barred by the applicable statute of limitations. This does not mean, however, that evidence arising after March 30, 2001 is inadmissible. The only significance of March 30, 2001 is that it fixes the point in time for counting back one year to determine when claims will be time barred. In this case, counting back one year from March 30, 2001, the applicable statute of limitations cuts off any claims arising prior to March 30, 2000.

Parent's attempt to claim that the statute of limitation establishes an end date for accepting evidence is absurd. Even a lay person knows that the statute of limitations merely establishes the time period in which an action must be commenced. The statute of limitations has nothing to do with the admissibility of evidence of an event occurring after an action is commenced.

The only time limitation on the submission of evidence is the five-day rule which is set forth in federal and state law. See 20 U.S.C. § 1415(f)(2)(B); 34 C.F.R. § 300.509(b); Minn. Rules 3525.3900(E) & 3525.4200. These laws require that the parties disclose all evidence to be introduced at hearing at least five days before the hearing. Under Minnesota Rule 3525.4200, any part to a hearing "may prohibit the introduction of any evidence that has not been disclosed to that party at least five business days before the hearing." In the instant case, the Notice of Proposed Special Education Services form and the proposed IEP were provided to Parent on

May 10, 2001 and, in compliance with the Scheduling Order, these documents were again provided to Parent (through her attorney) and to the Hearing Officer on May 22, 2001, as Exhibit 84 in the District's Exhibit Book. Thus, the District has complied with the five-day rule.

The District does not object to Parent introducing evidence from March 30, 2000 up to the five day deadline for submission of evidence, provided the proffered evidence is otherwise admissible under the rules of evidence and privileges recognized by law.

### C. Parents Must Give a School District an Opportunity to Provide FAPE

"A parent who seeks educational services for a child must give the School District an opportunity to provide those services before administrative or judicial relief may be sought or provided." Independent Sch. Dist. No. 432 v. J.H., 8 F. Supp.2d 1166, 1175 (D. Minn. 1998) (citing Evans v. District No. 17, 841 F.2d 824, 831-32 (8th Cir. 1998)). Here, Parent has sought to deny the District that opportunity and has impermissibly sought to frustrate the District's significant efforts to provide FAPE. See Doe v. Defendant I, 898 F.2d 1186, 1191 (6th Cir. 1990) (school district was frustrated in its efforts to provide FAPE due to lack of parental cooperation). "[T]here can be no showing of inadequate services or the denial of FAPE where a school district is not afforded a sufficient opportunity to formulate or revise an IEP." Independent Sch. Dist. No. 432 v. J.H., 8 F. Supp.2d 1166, 1175 (D. Minn. 1998) (citing Schoenfeld v. Parkway Sch. Dist., 138 F.3d 379, 382 (8th Cir. 1998)).

Here, Parent and her attorney have repeatedly acted to frustrate the District's efforts to meet and complete the development of an IEP. Parent's counsel asserts that the District has delayed in developing an IEP, but the uncontested evidence submitted by the District shows otherwise. The evidence shows that Parent abruptly terminated the meeting on January 31, 2001, because the draft IEP did not contain the reading services she desired. The next time Parent was

available to meet was March 20, 2001. The District sought to discuss Parent's issue of concern at the meeting on March 20, 2001, but Parent had to leave early and, consequently, the team did not have sufficient time to reach a decision on reading services for Student. Thereafter, school staff and District counsel repeatedly sought to schedule another meeting. Parent and her counsel implied that Parent wanted to attend a meeting, but refused to clarify whether Parent wanted to attend or whether she wanted the District to proceed with a meeting in her absence. Finally, on April 18, 2001, Parent's counsel informed the District that Parent did not intend to attend any further meetings. The District then promptly scheduled an IEP meeting for May 1, 2001 and, based on the discussions at the meeting, developed and proposed an initial IEP for Student on May 10, 2001.

A meeting would have been held earlier and in Parent's absence, but neither Parent nor her attorney would clarify whether Parent was willing to attend a meeting, and the District wanted to make sure that it did not violate Parent's right to participate if she did want to attend. See 34 C.F.R. § 300.345(d) ("A meeting may be conducted without a parent in attendance if the public agency is unable to convince the parents that they should attend; 34 C.F.R. § 300.501(c)(4) (school district "must have a record of its attempt to ensure [parent] involvement"). The facts, as set forth more fully in the Statement of Facts, unequivocally demonstrate that Parent was the cause for delay in the District proposing an IEP for Student.

If the Hearing Officer grants the Parent's motion to exclude the proposed IEP from evidence, Parent and her counsel will be rewarded for their stall tactics and uncooperative conduct. Attempts to protract litigation should not be condoned, nor should conduct which is contrary to the cooperative process envisioned by IDEA.

Moreover, excluding the proposed IEP would deny the District its right to introduce evidence required to meet its burden of proof. Minnesota Rule 3525.4300 states that the School District "shall bear the burden of proof as to all facts and as to grounds for the proposed action." The District's proposed action is the proposed IEP. The Hearing Officer must afford the District a fair opportunity to meet its burden of proof. A ruling prohibiting the District from entering the proposed IEP into evidence would prevent the District from satisfying its evidentiary burden. The proposed IEP—which in this case is the only IEP offered by the District—is the single most important document in the hearing, and it is the only document which provides the Hearing Officer with an accurate view the Student's proposed program of education. A ruling prohibiting the District from introducing the proposed IEP into evidence would constitute clear and reversible error.

Indeed, the cornerstone of any special education student's program of education is the IEP. Hearing officers have long recognized that an appropriate educational program begins with an IEP. To that end, Hearing Officers have held that an inability to introduce an IEP at a due process hearing precludes a school district from "meeting its burden of proof, and it preclude[s] a meaningful review by the hearing officer." Board of Educ. of the City Sch. Dist. Of the City of New York, 28 IDELR 263 (LEA NY 1998); see also Board of Educ. of the Pittsford Cent. Sch. Dist., 29 IDELR 653 (LEA NY 1998) (holding that district's failure to introduce a copy of the child proposed IEP, even though a previous draft copy had been introduced, compelled the hearing officer to conclude that the school district did not meet its burden of proving that it had offered a FAPE to the student).

**D. Excluding the IEP Would Frustrate the Purpose of the Hearing**

The ultimate purpose of a due process hearing is to determine whether the school district has met its obligation to offer the child a free appropriate public education. In this case, as in all cases, the District's offer is set forth in the proposed IEP, dated May 10, 2001. Without consideration of the proposed IEP, the ultimate purpose of the hearing would be frustrated. This is precisely why Minnesota Rule 3525.4100, subpart 1(C) mandates that the Hearing Officer receive a copy of the pupil's current and proposed IEP.

Similarly, Minnesota Rule 3525.4300 states that one purpose of every due process hearing is to "develop evidence of specific facts concerning educational needs, current educational performance, or apparent disabilities of the person as it relates to the need for the proposed action." Without consideration of the proposed IEP, the Hearing Officer will be unable to determine how the facts relate to the District's proposed action.

**E. School Districts Have a Continuing Obligation to Propose an IEP Even After a Hearing is Requested and Even When an Administrative Hearing is Being Appealed.**

Under IDEA, the School District has a continuing obligation to provide the Student with a free appropriate public education ("FAPE"). The School District has always recognized its statutory duty to provide FAPE. Contrary to the arguments made by Parent's counsel, this statutory duty is not suspended the day a parent requests a due process hearing. Rather, a school district's duty to provide a FAPE and its authority to alter a student's program of education to ensure the student's receipt of a FAPE, is continuous.

This issue was addressed by the United States Court of Appeals for the First Circuit in Town of Burlington v. Department of Education, Commonwealth of Massachusetts, 736 F.2d 773 (1st Cir. 1984). In Burlington, the First Circuit stated that because federal law omits

reference to whether IEPs are to be revised during the pendency of a due process hearing, the burden is on the courts to fashion a rule. Id. at 794. The Burlington court concluded that the authority of a school district to revise an IEP despite the pendency of review proceedings is consistent both with the goal of the IDEA and the aim of obtaining an educational placement which is agreeable to all parties. The court reasoned that "the continuation of the IEP process during the pendency of litigation may assist in promoting settlements" and "may still provide useful evidence for the district court in fashioning 'appropriate' relief." Id. The court suggested that IEPs and proposed placements would provide useful evidence when the court considered relief appropriate for later years.

This issue was also addressed in Norma P. v. Pelham School District, 19 IDELR 938, 939 (D.N.H. 1993). In Norma P., during the pendency of an appeal of the 1991-1992 IEP, the district proposed the student's 1992-93 IEP and initiated a due process hearing to have the IEP implemented. The parents sought to enjoin review of the 1992-93 IEP until resolution of the issues regarding the 1991-92 IEP. The Court citing Burlington stated that:

> a school district may continue developing and reviewing placement plans during the pendency of litigation involving a prior placement plan. To prohibit a school district from making continual efforts to fashion placement plans during the pendency of litigation would in effect require a school district to violate established statutory duties.

Id. The parents in Norma P. argued that allowing review of the subsequent IEP unfairly diverted their energies and resources from the original disputed IEP. The Court overruled this argument and found that the burden on the parents did not justify bringing the "entire process to a standstill" and allowed the IEP into evidence. Id.

The holding in the Burlington and Norma P. cases clearly show that the School District has the right to continue to develop an IEP for Victor even after a due process hearing is

initiated, and that such an IEP may be introduced into evidence in the due process hearing. These holdings embody the spirit behind the IDEA. The IDEA seeks to promote good communication and a cooperative working relationship between parents, students and school districts in order to amicably and collectively develop an appropriate program of education for students who qualify for special education services.

Parent's attempt to exclude Student's proposed IEP from consideration by the Hearing Officer is an attempt to bring the "entire process to a standstill" and block the School District's attempts to collectively develop an appropriate program of education for Victor. Such a result would be directly contrary to the goals of the IDEA. It is in the best interests of the Student to allow the process of developing IEPs to freely proceed after a parent has requested a due process hearing.[7]

## III. JUDICIAL ECONOMY REQUIRES CONSIDERATION OF THE PROPOSED IEP, BECAUSE IT ARISES OUT OF THE SAME NUCLEUS OF OPERATIVE FACT AND INVOLVES THE SAME ULTIMATE ISSUE

Parent argues that considering the proposed IEP would change the focus of the hearing. The District disagrees. The ultimate issue for hearing is whether the District has offered Student FAPE. The District's offer of FAPE is embodied in the proposed IEP. Thus, the proposed IEP is an essential document for the Hearing Officer to consider in deciding the ultimate issue in this case.

If the Hearing Officer were to exclude the proposed IEP, the District would be required to request a separate hearing to address the appropriateness of the proposed IEP. Such a position would do violence to the concept of judicial economy, because the appropriateness of the

[7] The case cited by Parent, Devries v. Spillane, 853 F.2d 264 (4th Cir. 1988) is inapposite. In that case, the court held that it would not consider an IEP as additional evidence because it was proposed after the entire administrative hearing process had concluded.

proposed IEP and Parent's hearing request are based on the same evidence and, thus ,the same nucleus of operative fact. Factors to consider in determining whether the claims arise out of the same nucleus of operative fact include, among others, whether the witnesses and documents necessary at trial are the same (that is whether the same evidence would support both actions); and whether the material facts alleged are the same. See D.R. v. East Brunswick Bd. of Ed., 838 F. Supp. 184, 194-95 (D. N.J. 1993) (quoting United States v. Althone Indus. Inc., 746 F.2d 977, 984 (3d Cir. 1984)). Given that Parent's claims arise out of and are based on the same body of facts and evidence as the proposed IEP, judicial economy requires that the proposed IEP be considered as part of this hearing.

Parent cites Glazier v. Independent School Dist. No. 876, 25 IDELR 425 (Minn. Ct. App. 1997) for the proposition that an IEP proposed after a due process hearing is initiated may only be considered if a second due process hearing is initiated regarding the proposed IEP. Parent's reading of Glazier is inaccurate and deliberately narrow.

In Glazier, the Minnesota Court of Appeals allowed consideration of an IEP that was developed after the parent requested a due process hearing. In so doing, the court of appeals stressed the importance of expediting the resolution of disputes between parents and school districts. Contrary to Parent's assertion, Glazier stands for the proposition that it is appropriate for a hearing officer to consider an IEP proposed after a hearing is requested, because doing so expedites the resolution of disputes between the parties and is in the best interests of the student. Thus, rather than require the parties to proceed through two separate hearings to consider an IEP that is proposed after the first hearing requested, the appropriateness of the proposed IEP should be considered in the context of the first hearing. It is difficult to understand how any holding to the contrary would be in the best interest of the child. Parent's strong resistance to the

consideration of the proposed IEP should give the Hearing Officer pause as to Parent's true motive in keeping the Hearing Officer from considering the proposed IEP.[8]

## IV. THE DISTRICT HAS PROVIDED PARENT WITH PRIOR WRITTEN NOTICE

Parent argues that the proposed IEP is an attempt to avoid the requirements of "prior written notice" and, on that alleged basis, should be excluded from evidence. First, Parent fails to cite any law in support of a claim that the failure to give prior written notice means that a school district cannot submit a proposed IEP into evidence. Second, the uncontested facts show that the District provided Parent with prior written notice.

On May 16, 2001, the District provided the Parent with written notice that it was refusing her request for one-to-one reading instruction. The written notice included a description of the action refused by the District; an explanation of why the District refused Parent's request; a description of the other options the District considered and the reasons why those options were rejected; a description of the evaluations, tests, records, and reports used as a basis for the refused action; a description of other relevant factors; a statement that parents of a child with a disability have protection under the procedural safeguards of the Individuals with Disabilities Education Act ("IDEA"); and sources for parents to contact to obtain assistance in understanding the provisions of IDEA. See Exhibit I.

Even if the District had not submitted uncontested evidence on the issue of prior written notice, the question of whether the District provided prior written notice would be an issue of fact to be decided based on the evidence adduced at hearing. Parent's counsel has previously acknowledged this in a letter to the Hearing Officer. Ms. Kerr's May 2, 2001 letter to the

---

8 Parent's assertions about be required to "re-exhaust" claims is absurd. The issue of exhaustion arises only if an issue has not been considered by the Hearing Officer. The cases cited by Parent are inapposite as they address a situation in which a party seeks to introduce evidence before a district court and after administrative proceedings have concluded.

Hearing Officer states, "It may all well end up being a question of fact as well as a question of law concerning 'prior written notice.'" See Letter from Kerr to IHO Udoibok, dated May 2, 2001. Thus, Parent's counsel has acknowledged that whether the District provided "prior written notice" is an issue of fact for hearing.

## CONCLUSION

Based on the foregoing, the District respectfully requests that the Hearing Officer deny Parent's motion to exclude the proposed IEP.

Respectfully submitted,

**RATWIK, ROSZAK & MALONEY, P.A.**

Dated: May 25, 2001

By: [signature]

Paul C. Ratwik, No. 89795
Michael J. Waldspurger, No. 0261385
300 Peavey Building
730 Second Avenue South
Minneapolis, MN 55402
Telephone: (612) 339-0060

**Attorneys for Independent School District No. 11, Anoka-Hennepin**

RRM: 20916