## STATE OF MINNESOTA

## DEPARTMENT OF CHILDREN, FAMILIES AND LEARNING

**In the matter of the Appeal of**

**Sarah Pachl** **[File No. 423-2]**

**v.** **FINDINGS OF FACT, CONCLUSIONS AND DECISION**

**I.S.D. # 11 (Anoka-Hennepin)**

---

## CASE AND PROCEDURAL HISTORY

A due process hearing in the above-entitled matter was held on June 4, 5, July 26, 27, and 30, 2001, before Independent Hearing Officer Roberta A. Kreb (hereafter "IHO") pursuant to the provisions of Minn. Stat. Sec. 125A.09.

Attorney Sonja D. Kerr, Kerr Law Offices, 5972 Cahill Avenue, Suite 110, Inver Grove Heights, MN 55076, appeared on behalf of Sarah Pachl (hereafter "Student") and her Parent. Attorney Nancy E. Blumstein, Ratwik, Roszak & Maloney, P.A., 300 U.S. Trust Building, 730 2nd Avenue South, Minneapolis, MN 55402, appeared on behalf of Independent School District No. 11, Anoka-Hennepin (hereafter "District").

The issues considered by the IHO at the due process hearing were:

1. Did the District properly determine a program of Extended School Year (hereafter "ESY") for the Student that was individually tailored and consistent with her unique needs and in a manner that was procedurally correct?

2. Does the District's proposed program of ESY for the Student fail to propose a program that is reasonably calculated to result in benefit to the Student? Is the District obligated to place the Student, at District expense, at Children's Care Hospital & School (hereafter "CCHS") for the summer of 2001 or alternatively, reimburse the Parents for costs expended to place the Student there if the hearing process (including appeals) is not concluded before the summer of 2001?

The IHO issued Findings of Fact, Conclusions of Law and Decision on August 28, 2001. The IHO determined that:



EXHIBIT
tabbies
J

1. The District properly proposed a program for ESY services that was individually tailored and consistent with Student's unique needs and in a manner that was procedurally correct.

2. The Student's educational program and placement within the District was appropriate and the Student's Individualized Education Program (hereafter "IEP") provided the Student with Free and Appropriate Public Education (hereafter "FAPE").

3. The Student's ESY IEP, as proposed, but not completed, was premised on the Student's current IEP; therefore, there is no need to determined the appropriateness of unilateral placement at CCHS by the Parent.

The IHO issued an order denying the Parents' request for reimbursement by the District for the expense of unilateral placement of the Student at CCHS for the summer of 2001.

The Parent, on behalf of Student, appealed the IHO's decision on September 4, 2001. The Notice of Appeal noted numerous parts of the IHO's decision being appealed. They included 11 parts of the IHO's procedural findings, 53 parts of the IHO's factual findings, 13 parts of the IHO's conclusions, and the IHO's order.

Pursuant to Minn. Stat. Sec. 125A.09, Subd. 9, and based upon the standards set forth in Minn. Stat. Sec. 125A.08 and Minnesota Rules Chapter 3525, the Hearing Review Officer (hereafter "HRO") has:

1. Examined the entire record of the proceeding;
2. Afforded the parties an opportunity for written argument;
3. Determined that the proceedings at the hearing level were in accordance with the requirements of due process;
4. Rendered a decision within the statutorily required time period; and
5. Served this Decision upon the Commissioner of Minnesota Department of Children, Families, and Learning (hereafter "MDCFL) and upon the parties.

Based upon an impartial review of the entire record including the IHO's decision and written arguments of counsel, the HRO makes the following independent:

## PROCEDURAL FINDINGS

By notice dated September 4, 2001, the Parents, on behalf of Student, appealed the IHO's decision to the MDCFL. The appeal was taken within the 30 calendar day time period set forth in Minn. Stat. Sec. 125A.09, Subd. 9 for appeals from impartial due process hearings. No cross appeal was made by the District.

Student filed an Appeal Brief on September 19, 2001. District filed a Response Brief on October 1, 2001. Student filed a Reply Brief on October 3, 2001.

## ISSUES

The issues on appeal are determined to be as follows:

1. Whether the District complied with the procedural requirements of the IDEA in determining a program of ESY for the Student for the summer of 2001?

2. Whether the District complied with the substantive requirements of IDEA and provided Free Appropriate Public Education (hereafter "FAPE") in determining a program of ESY for the Student for the summer of 2001?

3. Whether the Parent is entitled to reimbursement of costs expended to place the Student at CCHS during the summer of 2001?

## FINDINGS OF FACT

After a thorough review of the entire record, the HRO finds that the IHO's Factual Findings 18-76 are supported by a preponderance of the evidence in the record and hereby adopts and incorporates those findings by reference. As they constitute 14 pages, they will not be repeated herein. In addition, the HRO makes the following Findings of Fact:

A. Dr. Frost testified that at no time subsequent to the November 20, 2000 IEP meeting did he provide the District information to indicated that the Student needed to be hospitalized on a full-time basis to receive educational benefit. (T. 1141)

B. At the hearing, when asked whether there was something very specific to ESY that he was expecting to receive, the Parent answered, "No, because there was nothing to do with ESY in the procedural safeguards." (T. 1274)

C. The Parent did not dispute receiving a copy of the procedural rights brochure with notice of the meeting on February 22, 2001. He understood his right to disagree with IEP team decisions . He agreed that he had filed MDCFL complaints and requested conciliation and local due process hearings on a number of occasions prior to the February 22, 2001 meeting. (T. 1119-23)

D. The Parent sought insurance coverage for the CCHS program before he met with the Student's IEP team on February 22, 2001 to discuss ESY options. (T. 1152-1153)

## CONCLUSIONS OF LAW

1. The hearing procedures in this case provided adequate due process. Pursuant to Minn. Stat. Sec. 125A.09, Subd. 6 and Minn. R. 3525.4000, an IHO was appointed by the Minnesota Department of Children, Families and Learning on March 30, 2001. A five day due process hearing was conducted on June 4, 5, July 26, 27 and 30, 2001. The requirement of Minn. Stat. Sec. 125A.09, Subd. 7 that the hearing decision be rendered no later than 45 days after a request for hearing unless the time for the decision was extended by motion for good cause shown was met. There were four extensions of time granted for good cause and a final decision was rendered within the period of extensions.

2. The Student properly perfected an appeal in this matter and the HRO has jurisdiction pursuant to Minn. Stat. Sec. 125A.09, Subd. 9 and Minn. R. 3525.4600.

3. The Individuals with Disabilities Act (hereafter "IDEA"), 20 U.S.C.1400 et seq.) requires that each state, in order to qualify for assistance under the Act, establish a policy and plan that assures all disabled children the right to a free, appropriate public education (hereafter "FAPE"). Minnesota has enacted such a plan in Minn. Stat. Chapter 125A and Minnesota Rules Chapter 3525.

4. The Student is a 10-year-old child with disabilities as defined by Minn. Stat. Sec. 125A.02 and is entitled to special education services appropriate to his needs pursuant to IDEA, 20 U.S.C. 1401(3) and regulations enacted thereunder and Minn. Stat. Sec. 125A.17 and rules enacted thereunder.

5. The District is the resident school district of the Student. No current dispute exists concerning the eligibility of the Student for special education services.

6. The burden of proof is on the District to show by a preponderance of the evidence that its actions and the proposed IEP were appropriate and provided the Student with FAPE. Minn. R. 3525.3900(D).

7. That upon appeal, the HRO has conducted an appellate review and issued a final independent decision based upon an impartial review of the local decision and the entire record. The HRO has considered the Findings of Fact, Conclusions of Law and Decision of the IHO giving due weight to the findings that are based upon the credibility of the witnesses who testified at the due process hearing. I.S.D. No. 283 v. S.D., 88 F.3d 556 (8th Cir. 1996); Carlisle Area Sch. Dist. v. Scott P. by Bess P., 23 IDELR 293 (3d Cir. 1995).

8. FAPE is defined as special education services and related services that: 1) have been provided at public expense, under public supervision and direction, and without charge; 2) meet the standards of the state educational agency; 3) include an appropriate preschool, elementary or secondary school education in the state involved; and 4) are provided in accordance with the individualized education program required under section 1414(d). 20 U.S.C. Sec. 1401(8).

9. The U.S. Supreme Court has determined that FAPE "consists of educational instruction specifically designed to meet the needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction. Board of Education of the Hendrik Hudson School District v. Rowley, 458 U.S. 175, 188-9 (1982).

10. FAPE must be tailored to meet the unique needs of the child by means of an IEP. For an IEP to provide FAPE, the educational program and related services must be reasonably calculated to provide more than trivial or de minimus educational benefit. Id.

11. Rowley does not contemplate the consideration of parental preferences in the determination of whether FAPE has been provided. The proper focus is whether the proposed personalized instruction is reasonably calculated to provide the student with an educational benefit.

12. An "appropriate" public education does not mean the best or potential-maximizing education for the individual child. Independent School Dist. No. 281 v. S.D., No. 952497 (8th Cir. 1996). It merely means that the child will receive an appropriate education, meaning one that will allow the student to benefit from his or her education. Heather S. by Kathy S. v. State of Wisconsin, 125 F.3d 1045, 1057 (7th Cir. 1997). A school district is not required to "cure the disabilities which impair a child's ability to learn." Independent School Dist. No. 283 v. S.D. by J.D., 948 F. Supp. 860, 885 (D. Minn. 1995), affirmed 88 F.3d 556 (8th Cir. 1996).

13. The IDEA does not require that a school district guarantee that an IEP will work or will confer educational benefit, but only that it be designed to permit the student to receive educational benefit. See, Bd. of Education of Downers Grove School Dist. v. Steven L., 898 F. Supp. 1252, 1261 (N.D. Ill. 1995).

14. Rowley prohibits the HRO and IHO from imposing educational methodology upon a school district. This HRO cannot substitute his judgment for that of the IEP team, but should limit his focus to the appropriateness of the program offered by the District. Rowley, 458 U.S. at 207, 208.

15. Every district must ensure [that] to the maximum extent appropriate, children with a disability, including those in public or private institutions or other care facilities, are educated with children who are not disabled, and that special classes, separate schooling, or other removal of children with a disability from the regular educational environment occurs only when and to the extent that the nature or severity of the disability is such that education in regular classes with the use of supplementary services cannot be achieved satisfactorily. Minn. Stat. Sec. 125A.08(a)(5) and 34 CFR 300.550.

16. Special education is defined as specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including instruction

conducted in the classroom, in the home, in hospitals and institutions, and in other settings. 20 U.S.C. 1401(a)(25).

17. Related services includes transportation, and such developmental, corrective, and other supportive services (including [among other things] psychological services, social work services and counseling) as may be required to assist a child with a disability to benefit from special education. 20 U.S.C. 1401(a)(22).

18. The United States Supreme Court has promulgated a two-part test to determine when a private school placement is the responsibility of the school district. Burlington v. Dept. of Educ., 471 U.S. 359, 105 S. Ct. 1996 (1985). First, it must be shown that the proposed district IEP is not appropriate. Second, it must further be shown that the proposed private placement is appropriate.

19. Federal regulations provide that:

> If placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including the non-medical care and room and board, must be at no cost to the parents of the child.

34 CFR 300.302.

**IHO's Procedural Errors**

20. The Student argues that the IHO made significant procedural errors in the case warranting reversal by the HRO. Specifically, the Student alleges the following errors:

21. Error 1: "It is not clear whether the IHO considers items included within the procedural record as evidence in her decision." The Student argues that, contrary to law, the IHO relied upon these "procedural determinations" in reaching a decision. There is credible evidence that the IHO did not consider the procedural record as evidence. The IHO explicitly stated on page 1 of the decision that "[t]he IHO's procedural record is used solely for the purpose of providing a chronology of the procedural posture in this matter and is not evidentiary in nature for determining the factual findings contained in this decision." The Student fails to identify any instance where the IHO relied on a procedural finding to support her factual findings or conclusions.

22. Error 2: "The IHO's PF 1 found, in part, that the parent on behalf of Sarah, requesting a due process hearing and claimed that the request was not a sufficient statement of the issues asserting that the parent was required to more explicitly identify issues under Minn. Stat. Sec. 125A.09, Subd. 6 than is required under 34 CFR 300.507(c)." The Student argues that she is not required to identify issues for a due process hearing with specificity because the Minnesota law requiring specificity is in

conflict with federal law. Minnesota law provides that "the party requesting the hearing shall plead with specificity as to what issues are in dispute and all issues not pleaded with specificity are deemed waived." Minn. Stat. Sec. 125A.09, Subd. 6. The regulation relied on by the Student, 34 CFR 300.507, is not in conflict with Minnesota law and does not support the assertion that specificity is not required. The regulation clearly provides that the notice must include a description of the issues, including facts relating to the issues, 34 CFR 300.507(c)(2)(iv). Federal courts as well as hearing review officers in Minnesota have held that issues must be identified with specificity. See, Independent Sch. Dist. No. 432 v. J.H., 8 F.Supp. 2d 1166 (D. Minn. 1988)(explaining that law requires the parties to precisely frame the issues). Moreover, the Student has not asserted that the IHO erred by not addressing any issue.

23. Error 3: "The IHO erred in waiting until the first day of the hearing to rule on stay put." The Student ignores the fact that the issue in this case was ESY services which would not have started before the first day of the hearing, June 4, 2001. The regular school year was still in session as of that date. Thus, there was no need for the IHO to determine the Student's stay-put placement for ESY services prior to the start of the hearing. There was no basis for the IHO to determine that CCHS was the stay-put placement because the District had never agreed to the Student's placement at CCHS. During the pendency of a due process hearing, the child involved in the hearing must remain in her current educational placement unless the school and the parent agree otherwise. 34 CFR 300.514(a). In this case, there was no agreement that the Student would attend CCHS; therefore, there is no basis for the Parent's argument that CCHS was the appropriate stay-put placement. The IHO correctly found that the stay-put placement was the January 3, 2001 IEP.

24. Error 4: "The IHO erred in chiding Student's counsel for not agreeing to adopt indefinite dates sometime in the future, since the parents' were calling medical professionals.(IHO Dec. at pg. 3, Item 7)" IHO's Procedural Finding 7 speaks for itself. Neither the language used nor the "tone" can be characterized as "chiding". The finding simply states procedural facts in a matter-of-fact manner.

25. Error 5: "The IHO erred in finding that Students' Counsel 'waived' any procedural issues pertaining to ESY 200 where the ISD 11, after the hearing was requested, attempted to assert the ESY 2000 IEP as a defense in the litigation of ESY 2001." The IHO's finding is supported by the fact that Student's counsel did not raise any issues in regard to ESY 2000 in the Statement of Objections. It is well established that "all issues not pleaded with specificity are deemed waived." Minn. Stat. Sec. 125A.09, Subd. 6.

26. Error 6: "The IHO erred in excluding documents and witnesses offered by the parents more than five business days before a continuation date of the hearing." Both IDEA and state law explicitly provide that any party to a hearing can prohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five business days before the hearing. 34 CFR 300.509(a)(3); Minn. R. 3525.4200. The fact that there was a continuation in the hearing does not permit Student's counsel to

evade the law. Excluding documents and witnesses which were not disclosed five business days before the hearing started was well within the IHO's discretion.

27. Error 7: "The IHO exceeded her authority in determining the impact of prior cases regarding Sarah on Sarah's ESY case." The IHO properly reviewed the previous decisions and appeals and concluded that the only component of the 2000 ESY program addressed was the lack of trials of an augmentative communication device. The IHO was well within her discretion in admitting evidence regarding the 2000 ESY program that was relevant to this matter. The District's defense was that it provided the Student with appropriate ESY services during the summer of 2000 and, thus, it was clear that the proposed 2001 ESY program, which was similar to the 2000 ESY program was appropriate. Information regarding the 2000 ESY program was clearly relevant to the issues in the hearing, and the IHO did not error by allowing evidence into the record for the narrow purpose for which it was admitted.

28. Error 8: "The IHO erred in accepting exhibits into the record that included information not pertinent to hearing issues and which contained information prior to the 2000-2001 school year was inconsistent with her other rulings." The IHO clearly stated that the exhibits, which contained some information which was not pertinent to the hearing issues, were introduced because parts of the exhibits were pertinent to the hearing issues. The IHO clearly stated on the record that information included an exhibit that was not pertinent to the issues or time period were deemed irrelevant to the hearing. It may have been better to have had the exhibits which contained some non-pertinent information redacted prior to admitting them into evidence. However, the IHO was still well within her discretion in admitting them.

29. Error 9: "The IHO erred in contending that the tape recording of the ESY meeting of February 22, 2001 was not always clearly audible, and that there were discrepancies in the transcription." A review of the tape recording and the transcription will confirm that the tape is not always clearly audible and that there are discrepancies in the transcription.

30. Error 10: "The IHO erred in determining that issues pertaining to medical insurance or Minnesota Medicaid coverage for Sarah's placement at CCHS were not relevant to the due process hearing." The IHO correctly ruled that such issues were not relevant to whether the District proposed an appropriate ESY program or whether the Parent is entitled to reimbursement.

31. Error 11: "The IHO has no authority to arbitrarily and *sua sponte* 'correct' the original transcript without notice to either party, especially since words were omitted from witness statements that changed the meaning of their response and since the IHO also apparently corrected references to evidentiary matters." The Student argues that because of the IHO's actions, the decision should be deemed void in its entirety. The IHO corrected a few mistakes in the transcript. The correction of "accumulative" to "cumulative" cannot be argued to affect the hearing decision. The correction of "faith" to "FAPE" can also not be argued to affect the decision. The IHO, citing page 457, stated

that words were omitted from witness statements that changed the meaning of their responses. Page 457 is only cited in Findings 51 and 59, both of which are supported by the witness's statements on page 457 as they are written in the transcript. Therefore, the IHO did not rely on any corrections to page 457 of the original transcript, and any corrections cannot be the basis for voiding the decision.

**Student's Medical Disabilities**

32. The Student argues that the IHO failed to understand the importance of the Student's medical disabilities and the impact of those disabilities on her educational needs. There is credible evidence in the record that the IHO thoroughly considered the Student's medical disabilities and each of her findings and conclusions in that regard are supported by a preponderance of the evidence.

33. A disabled student should be placed in a residential, out-of-state facility only if such a placement is necessary to provide a student with FAPE. See, 34 CFR 300.302 ("if placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parents of the child"). The IDEA requires that a state pay for a disabled pupil's residential placement if the pupil, because of his or her disability, cannot reasonably be anticipated to benefit from instruction without such a placement. Independent Sch. Dist. No. 284 v. A.C., 258 F. 3d 769 (8th Cir. 2001). The issue is whether a full-time placement may be considered necessary for educational purposes, or whether the residential placement is a response to a medical, social or emotional problems that are segregable from the learning process. McKenzie v. Smith, 771 F.3d 1527, 1534 (D.C. Cir. 1985). In the instant case, a full-time residential ESY placement for the Student is not necessary for educational purposes. The Student's own medical expert, Dr. Frost, supports this position. [FF A]

34. The Student asserts that where the Student's medical and educational needs are intertwined , that fact must be addressed by the IEP team in determining services. This argument ignores Dr. Frost's testimony that the Student did not require full-time hospitalization or even a full-time nurse during the school day. He stated that he had no reason to conclude that the District was unable to provide the Student an appropriate educational placement. [FF 63]

35. Furthermore, Dr. Frost clarified during his testimony that, while he did not believe it was possible to distinguish between which of the Student's numerous disabling conditions caused the physical problems she presented, it was very possible to distinguish between the different kinds of services she required as a result of her medical and educational needs. [FF 63]

**Compliance with Procedural Requirements of IDEA**

36. The Student argues that the IHO failed to understand the District's specific duties to develop an individually determined ESY program for the Student. The Student argues that the District did not comply procedurally in the development of the Student's

ESY IEP in that it: a) failed to develop the Student's ESY program at the annual IEP meeting on November 20, 2000, b) failed to ensure that all members of the Student's IEP team were properly noticed and present at the February 22, 2001 ESY IEP meeting, c) failed to ensure that all the components of an IEP were addressed at the February 22, 2001 meeting, and d) failed to reconvene an IEP meeting after February 22, 2001 to complete the ESY IEP.

37. Regarding the District's responsibility to timely address ESY (November 20, 2000 IEP meeting), neither federal nor state law implementing IDEA require a Student's IEP team to determine a student's ESY services by any particular date. 34 CFR 300.309 and 300.343; Minn. R. 3525.2900. The lack of a time requirement for determining ESY services was confirmed by the Office of Special Education Programs (hereafter "OSEP") where it refused to specify a time requirement in the federal regulations requiring that ESY be considered by a student's IEP team. The OSEP explained that, in its view:

> There is no need to specify a timeline for determining whether a child should receive ESY services. Public agencies are expected to ensure that these determinations are made in a timely manner so that children with disabilities who require ESY services in order to receive FAPE can receive the necessary services.

64 Federal Register, pp. 12575, 12577 (March 12, 1999)

38. In the instant case, the District fully complied with its procedural requirements concerning ESY services. All the Student's service providers agreed at the November 20, 2000 IEP meeting that the Student needed ESY services. The Student's team deferred additional discussion regarding the Student's ESY services to later in the school year when more information concerning the Student's educational progress, medical status and available educational resources in the District would be available. Subsequently, on February 22, 2001, representatives of the Student's IEP team met to discuss and describe potential ESY services available for the Student. The meeting was held in ample time before summer and would have permitted the Parent sufficient time to challenge any ESY proposal through the IDEA's dispute resolution system had it not been for problems with scheduling presented by the Student's attorney. Therefore, the District's actions were in keeping with federal and state law. [FF 34, 35, 36, 38]

39. Regarding the District's responsibility to ensure that all members of the Student's IEP team were properly noticed and present at the February 22, 2001 ESY IEP meeting, the IHO found that the evidence clearly indicated that the persons present for that meeting did not create a legally constituted IEP team. But the IHO also found that the Parent played a pivotal role in determining who was present for that meeting. [FF 40, 42, 43]

40. The Parent requested the meeting and provided the dates of availability, which were standard methods used by TK, the case manager, and the Parent when

scheduling meetings. The District acknowledged at the meeting that IEP team members were missing, specifically the paraprofessional and motor team members. However, the evidence clearly indicates that it was the Parent who indicated to TK who he thought should attend the meeting. The Parent did not indicate that any one person should be excluded, but, nevertheless, made his desires known. TK made a determination, after consulting with the assistant director, to invite a limited number of the Student's IEP team to the meeting based on past experience with the length of the meetings. Prior to the meeting, TK consulted with those members of the Student's IEP team that would not be attending. [FF 40, 42, 43, 44, 45]

41. The Parent testified that he did not receive a copy of procedural rights at the February 22, 2001 meeting but acknowledges he could have received it with a copy of the Notice of Team Meeting. There is credible evidence in the record that the Parent had a solid, working knowledge of procedural rights, the IDEA, and due process. He admitted that he understood his right to disagree with IEP team decisions. He agreed that he had filed MDCFL complaints and requested conciliation and local due process hearings on a number of occasions prior to the February 22, 2001 meeting. [FF 46, C] The Parent contends that while he was familiar with IDEA requirements and procedural safeguards, he was unaware of procedural rights pertaining to ESY services. However, at the hearing, when asked whether there was something very specific to ESY that he was expecting to receive, the Parent testified, "No, because there was nothing to do with ESY in the procedural safeguards." [FF C]

42. Regarding the District's responsibility to ensure that all the components of an IEP were addressed at the February 22, 2001 ESY IEP meeting, there is credible evidence in the record that District administrators and educators at the meeting attempted to ensure that all the components of an IEP were addressed even though some IEP team members were not present.

43. The District educators testified that the purpose of the meeting was to discuss possible ESY options and proposals. All District staff testified that the persons at the meeting reviewed the Student's current goals and objectives and determined those on which she might regress and used that information as a starting point in the development of an ESY proposal. The District staff and Parent recommended the continuation of all goals and objectives on the Student's current IEP for the ESY program. The District staff indicated that there were many types and options for ESY services available to the Student. These included home-based services, occupational and physical therapy, a community-based component, and a traditional ESY component. [FF 43, 47, 48]

44. The Parent was at the February 22, 2001 meeting, but chose not to participate in discussions regarding the Student's educational progress, IEP goals and objectives, or District ESY options. The evidence indicates that there was a copy of the Student's current IEP at the meeting where the District staff marked the goals and objectives they deemed appropriate to continue during the Student's ESY program. All goals and objectives were noted, except those pertaining to the motor staff who were not in attendance. [FF 47, 49, 54, 56]

45. There is credible evidence in the record to suggest that the Parent's focus at the February 22, 2001 ESY IEP meeting was entirely on getting the District to approve an ESY placement at CCHS. Rather than provide any input into ESY options, the Parent articulated his desire for the Student to be placed at CCHS. He did not offer any other ideas or components for the Student's ESY program beyond placement at CCHS. At the conclusion of the meeting, the Parent indicated that if he could not get an affirmative answer on placement of the Student at CCHS, the family would proceed with a unilateral placement. The District staff indicated that the District could meet the Student's IEP and ESY IEP needs with services available within the District and that a placement at CCHS would not be approved. [FF 49, 50, 51, 52, 54, 55, 56, 57, 58]

46. Regarding the District's responsibility to reconvene an IEP meeting after February 22, 2001 to complete an ESY IEP, there is credible evidence in the record to indicate that the District offered to reconvene an ESY IEP meeting to discuss ESY program options for the Student, but that the Parent was clearly not interested in any options involving District services. [FF 63, 64, 65, 66, 67, 68]

47. On February 28, 2001, the assistant director wrote to the Parent summarizing what occurred at the February 22, 2001 meeting and indicated that the District could provide appropriate ESY services. The letter noted that the District was willing to meet and discuss the Student's ESY needs and include all members of the Student's IEP team. The Parent faxed a request for a conciliation conference the same day. The District requested that the Parent identify the issues for conciliation. On March 2, 2001, the District wrote to the Parent requesting identification of the issues for conciliation. On March 6, 2001, the Parent wrote to the assistant director requesting that they proceed with a conciliation meeting. On March 21, 2001, the Parent sent correspondence to the District requesting a due process hearing. [FF 60, 62]

48. The IHO cited Cordrey v. Eukert, 17 EHLR 104, 917 F.2d 1460 (6th Cir. 1990) to support a suggestion that the Parent may have waived any right to challenge the procedural appropriateness of either the District's ESY proposal or the manner in which it was proposed. In that case, the parents initiated a local due process hearing based only on a program suggestion made at a preliminary meeting. The school district had convened a meeting without all of the necessary IEP team members. When this fact was pointed out to the district at the meeting, it immediately declared the meeting preliminary and stated its intention to later convene a proper meeting. However, before such a meeting could be called, the parents initiated a local due process hearing. The parents listed the district's failure to convene a properly constituted IEP meeting and its failure to make a timely ESY proposal among their issues for hearing.

49. In explaining its refusal to find that the school district violated IDEA when it failed to convene another IEP meeting or to formally propose an ESY program, the Court of Appeals focused on actions leading up to and after the IEP meeting and affirmed the lower court's holding that the parents had waived their rights to make these procedural challenges. The Court stressed the underlying principles of IDEA and the

Act's commitment to ensuring parents' participation in the IEP process. However, it opined that the rights afforded parents under IDEA should not be used to undermine the IEP process. In so ruling, the Court stated:

> We emphasize today that the parents likewise are obligated to operate within the Act's procedural framework. . . [W]e are unwilling to hold the school district's initial failure to comply with its procedural obligations, followed promptly by an offer to remedy its default, was sufficient to entitle the [parents] to abort the IEP process.

Id. at 109. The Court of Appeals held that the parents acted knowingly and voluntarily in refusing the school district's offer to meet. It opined that the parents were not being shut out of the IEP process by the district as they claimed, but in truth, were attempting to use the administrative review process as an alternative route to obtain the ESY programming for their child. Id. The Court affirmed the lower court's refusal to provide the parents with such a right.

50. The Eukert decision is clearly applicable in the instant case. Here, the Parent told the case manager which staff he wanted at the Student's February 22, 2001 ESY meeting. [FF 63] The hearing record demonstrates that the case manager explained her actions to the Parent at the outset of the February 22, 2001 meeting and stated her intention to call another meeting with all of the Student's service providers present. [Ex. L] It was also repeated in a February 28, 2001 letter from the assistant director. [Ex. 64] There was no further IEP meeting in this case because the Parent, through his actions at and subsequent to the February 22, 2001 meeting, communicated his refusal to take part in the IEP process or to consider any ESY options the District could provide. For example, the February 22, 2001 meeting transcript confirms that the Parent did not provide the team any information about the characteristics he was seeking in an ESY program for the Student before he insisted that it provide him with some proposal for an ESY program. [Ex. L] The meeting transcript and the testimony at hearing make it clear that the Student's service providers believed, based on the Parent's conduct, that he had no intention of discussing or seriously considering any ESY option except sending the Student to the CCHS ESY program. [Ex. L] The Parent admitted he was in contact with CCHS before he even attended the Student's annual IEP meeting in November 2000. [FF 37] He agreed that he began to seek doctors' recommendations for the CCHS program in December 2000 and January 2001. [FF 41] By his own admission, he sought insurance coverage for the CCHS program by the time of the February meeting. [FF D] Then, only six days after the February 22, 2001 meeting, the Parent requested conciliation on the IEP team's decision not to place the Student in the CCHS ESY program and soon thereafter initiated a due process hearing. [FF 62] As in the Eukert case, the Parent here has waived any right to challenge the appropriateness of the February 22, 2001 meeting or the District's failure to convene another IEP meeting.

51. Procedural deficiencies in the development of a child's IEP warrant rejecting the IEP only if they "compromised the pupil's right to an appropriate education,

seriously hampered the parent's opportunity to participate in the formulation process, or caused a deprivation of educational benefits." Independent Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 560 (8th Cir. 1996) cited in Blackmon v. Springfield R-XII Sch. Dist., 31 IDELR 132 (8th Cir. 1999). The IHO rightly concluded that any procedural errors committed by the District did not result in an adverse effect on the Student. Therefore, the District complied with the procedural requirements of IDEA and the Student's IEP meets the first part of the Rowley standard.

**Appropriateness of the ESY IEP**

52. The IHO found, and credible evidence in the record supports, that the second part of the Rowley standard with respect to the ESY IEP was met by the District. The standard requires a determination of the appropriateness of the IEP and whether it was designed to provide the Student a FAPE. The IDEA standard of "appropriate", as defined in Rowley, specifies that the IEP must be "reasonably calculated" to provide the Student with educational benefit. The "appropriate" standard's primary focus for students with disabilities in amendments to IDEA in 1997 and subsequent regulations have emphasized education in the general education curriculum and progression with non-disabled peers. Board of Educ. of the Troy Sch. Dist., 34 IDELR 106 (SEA 1999). The IEP does not guarantee educational benefit. It does, however, require team members to use their best efforts to create an individualized plan for the Student. 34 CFR 300.344, 300.346, 300.347.

53. In this case, the Parent testified that the proposed program of services at CCHS mirrored the Student's IEP in effect on February 22, 2001. The Parent also testified that he believed the District could meet the Student's educational needs during the 2001-2002 school year. The Student has made educational progress and the agreed upon IEP implemented during the 2000-2001 school year did not deny the Student a FAPE. The Student's ESY IEP was appropriately premised on the Student's current IEP goals and objectives. [FF 50] The IEP for an ESY is not designed for educational progress but rather to maintain the child at a level minimizing the recoupment time. The purpose of ESY IEP is to bring the level of regression and time for recoupment nearer to that seen in nondisabled peers. ESY is an individualized extension of specific services beyond the school year. Howard County Pub. Schs., 24 IDELR 719 (SEA 1996).

54. The IHO found nothing in the evidence to support a conclusion that the Student's educational program during the 2000-2001 school year, on which the ESY IEP for summer 2001 was premised, had denied the Student a FAPE which would require placement of the Student in a residential, out-of-state facility. Credible evidence in the record supports the IHO's conclusion that the difference between the CCHS and District educational program was not the Student's IEP goals and objectives, but only the place of service and the residential component.

**Reimbursement**

55. The IHO determined that the District is not obligated to reimburse the Parent for costs expended to place the Student at CCHS during the summer of 2001.

56. The IDEA doesn't require school districts to pay the cost of education at a private school, including special education and related services, for a child with a disability, if FAPE was made available and the parent elected to unilaterally place the child in a private school. 34 CFR 300.302, 300.403. See Tucker by Tucker v. Calloway County Board of Educ., 27 IDELR 599 (6th Cir. 1998).

57. The laws pertaining to reimbursement for unilateral placement clearly state what is required for such a claim to succeed. If a parent unilaterally removes the student from the local public school system, they are eligible for reimbursement for the alternative placement only if they are able to demonstrate that the regular school placement was inappropriate, and the alternative placement was appropriate. Burlington School Committee v. Department of Education, 471 U.S. 359 (1985); Teague Independent School District v. Todd L., 999 F.2d 127 (5th Cir. 1993); El Paso Independent Sch. Dist., 31 IDELR 25 (SEA 1998). The U.S. Supreme Court held that "parents who unilaterally change their child's placement during the pendancy of IDEA review proceedings are entitled to reimbursement only if a federal court concludes both that the public school placement violated IDEA and the private placement was proper under the Act. Florence County Sch. Dist. Four v. Carter, 114 S. Ct. 361, 366 (1993).

58. The IHO determined, and credible evidence supports, that the Student's educational program and placement within the District was appropriate and the Student's IEP provided the Student with a FAPE. Since the Student's ESY IEP, as proposed, but not completed for the reasons given above, was premised on the Student's current IEP, it too was appropriate and would have provided the Student with a FAPE. Therefore, the Parent cannot satisfy the first prong of the Florence County test because the District was capable of providing the Student a FAPE.

**Appropriateness of Residential Placement**

59. Even if the Parent could satisfy the first prong of the Florence County test, he is not entitled to reimbursement because he has not shown that the residential placement at CCHS was appropriate for the Student.

60. The Parent has failed to carry his burden of proving that the ESY services provided by CCHS were educationally appropriate for the Student. Although school districts have the burden of showing that they provided FAPE, parents seeking reimbursement have the burden of showing that the private placement (or private service) was proper under IDEA. See, Brantley v. Independent Sch. Dist. No. 625, 936 F.Supp. 649, 655, 26 IDELR 839, 841 (D. Minn. 1996); [Student] v. Independent School District No. 15, MDCFL Case No. 135-1, at 26 (SEA MN 1995)(Reha, IHO)("The burden of

proving that the placement was appropriate rests upon the parents or the party who is seeking reimbursement.").

61. The Parent presented no evidence during the due process hearing to indicate that his daughter needed to be placed in the CCHS ESY program. The Student's own physician testified at hearing that the Student did not require full-time medical services and that he had no reason to believe that the District could not provide an appropriate education for the Student. [FF 63] Furthermore, the fact that the Parent testified that he intended to return the Student to the District for the 2001-2002 school year also argues against such a finding. [FF 65]

## Least Restrictive Environment

62. In addition, the Parent's request for reimbursement ignores the least restrictive environment (hereafter "LRE") requirement of IDEA. Placement at CCHS is inappropriate because it cannot be said to constitute the LRE. See e.g., DeLullo v. Jefferson County Bd. of Educ., 194 F.3d 1304 (4th Cir. 1999)(denying paent's request that school district pay for student's tuition a private residential school where parent failed to prove that private residential school would be LRE for student); Sylvie M. v. Bd. of Educ. of Dripping Springs Indep. Sch. Dist., 48 F.Supp.2d 681 (W.D. Tex. 1999)(denying parent's request that school district pay for student's placement at private residential out-of-state special education school, where school was not the LRE); In the Matter of Amanda S. v. Green Bay Area Sch. Dist., 33 IDELR 209 (E.D. Wis. 2000)(denying parent's request for reimbursement for private out-of-state residential placement because, in part, residential placement violated LRE requirements of IDEA).

Based upon the foregoing Findings of Fact and Conclusions, the HRO makes the following:

## DECISION

The IHO's Decision is AFFIRMED in all respects.

Dated: October 4, 2001

Gregory L. Wright
Hearing Review Officer