**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Victor Grant, by his parent,
Kelley Sunderlin,

Plaintiff,

v.

Independent School District No. 11,
Anoka-Hennepin,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 02-795 ADM/AJB

---

Sonja D. Kerr, Esq., Kerr Law Office, Anchorage, AK, and Judith A. Gran, Esq., Public Interest Law Center of Philadelphia, Philadelphia, PA, on behalf of Plaintiff.

Paul C. Ratwik, Esq. and Stacey L. Wilson, Esq., Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on cross motions for Judgment on the Administrative Record [Docket Nos. 143, 138] of Victor Grant ("Student"), by his parent, Kelley Sunderlin ("Sunderlin") (collectively, "Plaintiff") and Independent School District No. 11, Anoka-Hennepin ("District").[1] Plaintiff seeks review and reversal of a decision issued by a Hearing Review Officer ("HRO"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1487 (2000). For the reasons set forth below, Defendant's Motion for Judgment on the Administrative Record is granted.

---

[1] The parties briefed the instant case as Victor Grant, by his parent, Kelly Sunderlin v. State of Minnesota, et al.. Grant's claims were originally included in Reinholdson v. State of Minnesota, et al. Civ. No. 02-795 (ADM/AJB). Because claims against the other named Defendants were previously dismissed, the appropriate case caption is now Victor Grant, by his parent, Kelley Sunderlin v. Independent School District No. 11, Anoka-Hennepin.

## II. BACKGROUND

### A. The IDEA

The IDEA requires a school district that accepts federal funds to provide disabled children within its jurisdiction a "free appropriate public education" ("FAPE"). 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A). To provide a FAPE, a school must formulate an individualized education plan ("IEP") tailored to the disabled child's unique needs. See id. § 1400(d)(1)(A). The school district must also provide extended school year ("ESY") services if the child's IEP team determines, on an individual basis, the services are necessary to provide a FAPE to the child. Id. § 300.309(a)(2).

Parents who are dissatisfied with the substance or implementation of their child's IEP may request a state administrative due process hearing before an independent hearing officer ("IHO"). See 20 U.S.C. § 1415(f); Minn. Stat. § 125A.09 (2002). During the time period relevant to this matter, Minnesota employed a two-tier administrative process wherein the IHO's decision was first appealed to an HRO. See Minn. Stat. § 125A.09, subd. 6-7 (repealed May 2003). The HRO's decision could then be appealed to either federal district court or the state court of appeals. See id., subd. 9 (repealed May 2003).[2]

### B. Factual Background

Victor Grant began attending school in the Anoka-Hennepin School District in September 1998. During the 2000-2001 school year, he was a 13 year old, sixth grader at

---

[2] As of 2003, a party's appeal from an IHO's decision may be directly appealed to either federal district court or the state court of appeals. See Minn. Stat. § 125A.091, subd. 24 (Supp. 2004).

Northdale Middle School. S.D. Ex. 84 at 9.[3] The Student had repeated second grade. Tr. at 160, 286. The District evaluated the Student in December 1998 and concluded he did not meet eligibility criteria for special education services. S.D. Ex. 36. In December 2000, pursuant to Sunderlin's request, the District completed another educational evaluation of the Student. Id. The evaluation concluded the Student did not meet state eligibility criteria for a Specific Learning Disability ("SLD") in the area of broad reading but did meet the SLD criteria in the areas of broad math and broad written language. Id. at 1. Tr. at 89, 92, 301.

Based on the evaluation's findings, the Student's IEP team, including Sunderlin, met in December 2000 and January 2001 to develop an IEP that would provide the Student with a FAPE. S.D. Exs. 37, 38; Tr. at 102-03, 108-09. To facilitate discussion, the Student's case manager brought a draft IEP to the January 31, 2001 meeting. P. Ex. L; Tr. at 102. Sunderlin argues the District intended the January 2001 IEP to be the proposed IEP and only characterized it as a draft IEP once it was clear she would not agree to its implementation. Pl's. Mem. in Supp. of Mot. for J. on the Admin. R. at 29 [Docket No. 144]. At the meeting, Sunderlin and the other members of the IEP team disagreed as to what reading resources the Student required to achieve a FAPE. S.D. Exs. 45, 48, 50. Despite several District attempts to schedule a subsequent IEP meeting, Sunderlin was unable or unwilling to meet with the IEP team until she requested another meeting in March 2001. See S.D. Exs. 48, 50, 51; Tr. at 113-16, 855-57.

The IEP team held another meeting on March 20, 2001 to continue developing the Student's IEP. Tr. at 116; S.D. Ex. 52. At the meeting, Sunderlin and the IEP team disagreed as

[3] Exhibits submitted by the School District at the hearing will be referred to as S.D. Ex. _ while exhibits submitted by Plaintiff at the hearing will be referred to as P. Ex. _.

to whether the Student required one-to-one reading instruction. Tr. at 1372-73; S.D. Ex. 60. Although the District made numerous attempts to schedule additional IEP meetings with Sunderlin, Sunderlin refused to participate. Tr. at 137-38, 782-83, 1084-85; S.D. Exs. 66, 71, 73, 77; P. Ex. S. On May 10, 2001, the Student's IEP team met without Sunderlin and proposed an initial annual IEP. S.D. Exs. 83, 84.

**C. Procedural Background**

On behalf of the Student, Sunderlin requested a due process hearing on March 30, 2001 to contest the adequacy of the January 2001 draft IEP. S.D. Ex. 60. This was the third due process hearing Sunderlin had requested against the District during the 2000-2001 school year. The seven day hearing, known as MDCFL Case No. 429, took place on May 30, June 7, 8, 15, and July 16, 17, 23, 2001. See Findings of Fact, Conclusions of Law, Memorandum and Order ("IHO Decision") (Wilson Aff. [Docket No. 141] Ex. 1) at 2. During the hearing, the District called eight witnesses and the Student called five witnesses. Id. On September 17, 2001, the IHO issued his decision denying Sunderlin's requests and upholding the District IEP. See IHO Decision at 19. Sunderlin appealed myriad issues in the IHO Decision to an HRO. On October 31, 2001, the HRO denied Sunderlin's appeal in its entirety and affirmed the IHO Decision in all respects. Findings of Fact, Conclusions and Decisions ("HRO Decision") (Wilson Aff. Ex. 2) at 10.

Plaintiff initially brought the present claims as part of Reinholdson, et al. v. State of Minnesota, et al., Civil Case No. 02-795, which asserted various class-wide allegations under IDEA against the District. This Court denied the Reinholdson's plaintiffs' motion to certify a class and ruled that each plaintiff's individual case should be severed and refiled as separate

actions. See 2002 U.S. Dist LEXIS 17169 (D. Minn. Sept. 9, 2002). Unlike the other Plaintiffs included in Reinholdson, the Student never filed a separate federal court action appealing the HRO's decision in MDCFL Case No. 292. Consequently, the grounds for this action must be distilled from the briefs and from the April 15, 2002 Reinholdson Complaint [Docket No.1] requesting class certification. Plaintiff concedes claims under § 504 of the Rehabilitation Act of 1973 and § 1983 of the Civil Rights Act were resolved by the Eighth Circuit and are not currently before this Court. See Reinholdson, 346 F.3d 847 (8th Cir. 2003).

Plaintiff's claims can be divided into three general areas. First, Plaintiff argues the creation and approval of the IEP did not comply with IDEA's procedural safeguards. Second, Plaintiff asserts the IEP does not meet the substantive requirements set forth by the IDEA. Finally, Plaintiff claims the IHO committed several procedural errors in structuring the due process hearing that denied Plaintiff's right to a full and fair evidentiary hearing on the merits.

## III. DISCUSSION

### A. Standard of Review

In a motion for judgment on the record brought pursuant to the IDEA, a district court must review the state administrative record, hear additional evidence if requested, and grant such relief as it deems appropriate based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B); CJN ex rel. SKN v. Minneapolis Pub. Sch., 323 F.3d 630, 636 (8th Cir. 2003). "Although a district court should independently determine whether the child has received a FAPE, it must give 'due weight' to agency decision-making." CJN, 323 F.3d at 636. The "IDEA does not require that a school either maximize a student's potential or provide the best possible education at public expense." Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 612

(8th Cir. 1997). Rather, a school district satisfies its obligations under the IDEA if: (1) it complies with the Act's procedural requirements and (2) the IEP is "reasonably calculated to enable the child to receive educational benefits." Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206-07 (1982).

**B. Compliance with IDEA's Procedural Requirements**

Plaintiff claims the the District violated the procedural requirements of the IDEA by: (1) failing to provide Sunderlin with timely notice of her procedural safeguards between March 30, 2000 and March 30, 2001, and (2) failing to provide Sunderlin with prior written notice of its decision to deny the request for one-to-one reading instruction. Both the IHO and HRO found no actionable violation of the IDEA's procedural requirements.

Ensuring an IEP complies with the IDEA's procedural requirements is as essential to a student's FAPE as meeting the substantive requirements. See Rowley, 458 U.S. at 205-06. As a result, courts must evaluate an IEP's procedural integrity. See Indep. Sch. Dist. No. 283 v. S.D., 948 F. Supp. 860, 881-82 (D. Minn. 1995) aff'd, 88 F.3d 556 (8th Cir. 1996). However, an IEP will not be found deficient if merely de minimis procedural irregularities exist. See id. at 882. An IEP should be set aside only if "procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." Indep. Sch. Dist. No. 283, 88 F.3d at 562.

**1. Timely Notice of Procedural Safeguards**

Plaintiff argues the District violated the IDEA's procedural requirements by failing to provide her with adequate and timely notice of her procedural safeguards between March 30,

2000 and March 30, 2001. Specifically, Sunderlin claims she did not receive a copy of her procedural safeguards until March 31, 2001 and was therefore unable to assert the Student's rights more expeditiously. A parent of a child with a disability must be provided with a copy of the procedural safeguard brochure upon: (1) initial referral for evaluation; (2) each notification of an IEP meeting; (3) reevaluation of the child; and (4) receipt of a request for a due process hearing. 34 C.F.R. 504(a).

The evidence in the record as a whole indicates the District provided Sunderlin with adequate and timely notice of her procedural safeguards. At the administrative hearing, Sunderlin testified that she reads documents before she signs them and understands the importance of not signing her name to a document she has not read. Tr. at 1417. Sunderlin has admitted she signed a document on November 8, 1998, which bears a statement asking "Parents or students age 18 or older please sign here if you have received a copy of the parents rights and procedural safeguards brochure." Tr. at 1418; S.D. Ex. 8 at 3. Although Sunderlin later testified she signed her name without reading the document, the IHO and HRO were entitled to view the signed statement as evidence she received her procedural safeguards. See Tr. at 1419.

Michele Rydberg ("Rydberg"), the Student's case manager, testified she was "very" confident that, consistent with her usual practice, she sent Sunderlin a notice of procedural safeguards on September 28, 2000 with the Notice of Educational Evaluation/Reevaluation Plan. Tr. at 75-76, S.D. Ex. 20. She also testified she was "very confident" she gave Sunderlin a procedural safeguards brochure on December 8, 2000, at the commencement of the Student's first IEP meeting. Tr. at 95.

In addition, the written notice for each IEP meeting held between March 30, 2000 and

March 30, 2001 states in boldface type:

> **Enclosed is a NOTICE OF PROCEDURAL SAFEGUARDS brochure.** If for some reason the document has not been enclosed, please call me immediately. The brochure is provided for you (and your child) to review prior to your meeting.

See S.D. Exs. 37, 52, 62, 78 (emphasis in original). Sunderlin testified she never contacted the District to claim she did not receive the procedural safeguards brochure. Tr. at 1420, 1422. Coupled with Sunderlin's testimony that she recognizes the importance of reading each document carefully, this statement creates a strong inference that Sunderlin received a copy of the procedural safeguards brochure before each IEP meeting.

Even assuming Sunderlin was not provided with notice of her procedural safeguards at each required occasion, there is no indication such lack of notice "compromised the pupil's right to an appropriate education, seriously hampered the parent['s] opportunity to participate in the formulation process, or caused a deprivation of educational benefits." Indep. Sch. Dist. No. 283, 88 F.3d at 562. Sunderlin admitted she received the procedural safeguards brochure in December 2000, in connection with her youngest son, who is also a special education student. She demonstrated her awareness of her procedural rights in January 2001 by requesting a due process hearing for her youngest son. Tr. at 1347-48. She actively participated and advocated for the Student's rights, in the IEP meetings held on December 13, 2000, January 31, 2001 and March 20, 2001. See S.D. Ex. 54. Sunderlin's counsel also actively participated in the March 20, 2001 meeting via speaker phone. Id.; Tr. at 985-86. If failure by the District to provide Sunderlin with the procedural safeguard brochure on a required occasion occurred, it was, under the circumstances of this case, without legal significance.

**2. Prior Written Notice**

Plaintiff also argues the District failed to provide her with prior written notice of its denial of her request for two hours per week of one-to-one reading instruction. Sunderlin argues the District orally refused her request at the March 20, 2001 IEP meeting and did not provide written notice of the refusal until May 16, 2001. Prior written notice is required when the District proposes to initiate or change, or refuses to initiate or change, the identification, evaluation, educational placement or provision of FAPE for the Student. See 34 C.F.R. § 300.503(a).

The record as a whole demonstrates the District had not reached a final decision on the appropriateness of one-to-one reading instruction at the March 20, 2001 IEP meeting. At the meeting, the IEP team discussed several options for improving the Student's reading, including: (1) a mainstream class with support; (2) an Assurance of Mastery ("AOM") class; (3) a resource room with higher level reading; (4) a resource room with lower level reading; (5) the computer-based Fast ForWord program; (6) the computer-based earobics program; (7) the targeted services program ("TSP"); and (8) one-to-one instruction. S.D. Exs. 54, 87. The record indicates Sunderlin needed to leave the March 20, 2001 IEP meeting before a decision on the most appropriate resources for the Student was reached. Tr. at 136, 232, 369-70; S.D. Ex. 54 at 15.

On April 18, 2001, Sunderlin wrote a letter requesting "Prior Written Notice" of the District's refusal to provide one-to-one reading instruction. S.D. Ex. 75. Sunderlin testified she made this request because she "wanted to know if they weren't going to provide tutoring services at home for [the Student]." Tr. at 1094-95. As the IHO and HRO both concluded, such a request indicates, as of April 18, 2001, Sunderlin did not believe the District had conclusively

rejected her request.

On April 18, 2001, Sunderlin's counsel wrote a letter stating "[Student's] parents will . . . not participate in IEP which continue the ISD 11's reputation for . . . unlawful actions." See IHO Procedural Record: 4/18/01 Letter from Kerr to Waldspurger. The District subsequently noticed Sunderlin of an IEP meeting scheduled for May 1, 2001 but she refused to attend. Tr. at 784-85; S.D. Exs. 71, 73, 77, 78. At the May 1, 2001 meeting, the Student's IEP team concluded "[w]ith the exception of [Student's] mother, the IEP team believes that [Student] does not need one-on-one instruction to receive meaningful educational benefit and that one-on-one instruction would not be the least restrictive environment for [Student]." S.D. Ex. 84 at 3. All members of the IEP team, except Sunderlin, subsequently expressed their agreement with the statement. Tr. at 391, 828-29. In a May 16, 2001 letter, the District provided Sunderlin with prior written notice of its decision to deny her request for one-to-one reading instruction. S.D. Ex. 87, Tr. at 890.

The HRO found, and this Court agrees, that the District's May 16, 2001 letter contains all the required elements of prior written notice. See 34 C.F.R. § 300.503(b). Plaintiff claims several elements of prior written notice were incomplete or involved explanations that changed between January 2001 and May 2001. In support of this position, Plaintiff repeatedly references the District's alleged refusals at the January 31, 2001 and March 20, 2001 IEP meetings. The record demonstrates, however, the District did not reach a final decision on one-to-one reading services until the May 1, 2001 IEP meeting. The reasoning set forth in the May 16, 2001 letter is consistent with the information available and opinions set forth by the IEP team at that time. As a result, the District complied with the IDEA's prior written notice requirement.

**C. Compliance with IDEA's Substantive Requirements**

An IEP is substantively appropriate if it is individually tailored and consistent with the student's needs and "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. at 206-07. A student's IEP does not need to maximize a student's potential or provide the best possible education. Fort Zumwalt Sch. Dist., 119 F.3d at 612. It need only ensure the student receives "meaningful benefit" from his education. Ridgewood Bd. of Educ. v. NE, 30 IDELR 41 (3d Cir. 1999). It does require that a student's IEP team use their best efforts to create an individualized plan for the student. 34 C.F.R. §§ 300.344, 300.346, 300.347.

Plaintiff argues the District failed to comply with the IDEA's substantive requirements. Plaintiff asserts the following substantive violations: (1) the IEP discussed at the January 31, 2001 meeting, rather than the IEP from the May 1, 2001 meeting, should have been the primary document at issue in the due process hearing ; (2) the IEP fails to provide the Student with the one-to-one reading instruction necessary to obtain a FAPE and the District predetermined it would deny such instruction; (3) the District failed to conduct an assistive technology ("AT") assessment when requested; (4) the District did not provide the Student with the AT necessary to obtain a FAPE; and (5) the District did not assess the Student's need for reading instruction, Extended School Year ("ESY") Services or AT in a timely manner. Plaintiff also contests several of the IHO and HRO's findings of fact. After reviewing the Record, the Court is satisfied each of these findings is supported by the evidence as a whole. Although Plaintiff asserts the findings ignore or mischaracterize facts, the objections largely reflect Plaintiff's disagreement with the permissible conclusions the IHO reached, and the HRO sustained, based on the preponderance of the evidence in the record. Each of Plaintiff's other claims are

discussed below.

**1. IEP at Issue**

Plaintiff contends the IHO and the HRO erred by determining the IEP in question was the IEP created at the May 10, 2001 IEP meeting rather than the IEP discussed at the January 31, 2001 IEP meeting. Plaintiff requested a due process hearing on March 30, 2001 to contest the adequacy and appropriateness of the January 31, 2001 IEP. See S.D. Ex. 60. Plaintiff argues the May 10, 2001 IEP is an "after-the-fact" IEP that is irrelevant for purposes of Sunderlin's due process request. By hearing evidence on the May 10, 2001 IEP, Plaintiff claims the IHO violated 34 C.F.R. § 300.507, which provides that a hearing may be held on "any matter" related to the child's identification, evaluation, program or provision of a FAPE. Plaintiff contests the focus of the due process hearing shifted from a dispute about the Student's initial eligibility for special education services to a case about the appropriateness of his IEP after eligibility.

The crux of this dispute is the IHO's determination that the January 31, 2001 IEP was a "draft" IEP created by the IEP team to structure discussion while the May 10, 2001 IEP was the "proposed" IEP. Neither the IDEA nor its regulations prohibit a District from coming to an IEP meeting with suggestions to facilitate the development of a proposed IEP. Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 657 (8th Cir. 1999). Federal regulations indicate members of an IEP team can bring "drafts of some or all of the IEP content to the IEP meeting." See 34 C.F.R. Part 300, Appx. A, Q. 32. However, the IDEA only provides parents with the right to request a due process hearing if they object to, inter alia, the proposed placement of their child in, or transfer of their child to, a special education program, or the proposed provision or addition of special education services for their child. Minn. Stat. § 125A.09, subd. 6(2), (4)

(emphasis added). Nothing in the IDEA requires a district to defend a "draft" IEP. See Independent Sch. Dist. No. 432 v. J.H., 8 F. Supp.2d 1166, 1172 (D. Minn. 1998).

Plaintiff argues the District intended the document presented at the January 31, 2001 meeting to serve as the "proposed IEP" and only began characterizing it as a draft once the Parents stated they would oppose it. On February 1, 2001, the Parents signed the Notice of Proposed Special Education Services form and wrote "I DO NOT AGREE" on it. S.D. Ex. 45.

A preponderance of the evidence in the Record supports the IHO and HRO's conclusions that the January 31, 2001 IEP was a draft. Ryberg, the Student's case manager, testified that, consistent with the school's practice, she explained the document was a "draft" when she distributed it at the start of the meeting. Tr. 317-18, 547. During the meeting, Ryberg consistently referred to the document as a "draft." Tr. at 102-04, 211, 547. The Student's stepfather corroborated this testimony. Tr. at 979. District staff on the IEP team also testified the document was never intended to serve as the proposed IEP. Tr. at 102-04, 208. In Sunderlin's presence, Ryberg wrote "Draft" across the top corner of each page. S.D. Ex. 44; Tr. 103, 855, 979-80. Sunderlin's copy also includes the words "rough draft" on the second page, words which the Student's stepfather testified suggest the document was not the final IEP. P. Ex. L; Tr. at 983-84. The document also contains several handwritten notations and Ryberg testified that, consistent with District policy, she types all final IEPs. Tr. at 106. Ryberg also did not bring a signature page to the meeting, indicating she did not intend to propose the document. Tr. at 104. Based on this evidence, the Court concludes the IHO and HRO did not err in finding the January 31, 2001 document was a "draft" IEP.

Plaintiff argues the May 10, 2001 IEP was an "after-the-fact" IEP that should have been

excluded from the Record rather than serve as the primary IEP for the proceeding. However, under Minnesota law, the IHO must receive a copy of the student's proposed and current IEPs at least five days before the commencement of a due process hearing and make those IEPs part of the Record. Minn. R. 3535.4100, subp. 1(C) and (D). The IHO is also required to review the IEPs to determine whether they comply with the law. Id. subp. 2(A). At the time of the May 30th hearing, the Student had no current IEP and the May 10, 2001 IEP was the only one proposed by the District. Therefore, the IHO was required to admit the document, review it and determine whether it complied with the law. In the absence of the May 10, 2001 IEP, the due process hearing would have been dismissed because parents may only object to a proposed action. Minn. Stat. § 125A.09, subd. 6.

Plaintiff argues the District created the May 10, 2001 IEP to respond to the objections raised by Sunderlin when she filed her March 30, 2001 request for a due process hearing. As a result, Plaintiff claims using the May 10, 2001 document as the IEP allows the District to make "after-the-fact" corrections to the deficiencies alleged in the January 31, 2001 IEP. Plaintiff's argument fails for several reasons. First and foremost, a parent may only request a due process hearing to contest a proposed action and the District is not required to defend a "draft" IEP. Second, the goal of the IDEA's formulation process is for the Student's IEP team, composed of both the Parent and District staff, to use their best efforts to tailor a plan that provides the student with meaningful educational benefit. 34 C.F.R. §§ 300.344, 300.346, 300.347. Sunderlin frustrated this process when she refused the District's numerous attempts to schedule additional IEP meetings after March 2001, believing they were a "waste of time." See Tr. at 137-38, 1084-85, 1390; S.D. Ex. 54 at 15-16, S.D. Exs. 58, 66, 71, 73, 77. Like school districts, "parents

likewise are obligated to operate within the Act's procedural framework." See Cordrey v. Eukert, 917 F.2d 1460, 1466 (6th Cir. 1990). Finally, a district's obligation to provide a Student with a FAPE is not suspended when a parent requests a due process hearing. See Town of Burlington v. Dept. of Educ., Commonwealth of Massachusetts, 736 F.2d 773, 794 (1st Cir. 1984); Norma P. v. Pelham Sch. Dist., 19 IDELR 938, 939 (D.N.H. 1993). Sunderlin's conduct in withdrawing from, and then criticizing, the continuing process to address the deficiencies of the draft IEP and create a plan more closely tailored to provide the Student with a FAPE cause this Court to question whether there was good faith parental input into constructing an appropriate IEP.

Finally, Plaintiff claims the IHO and HRO erroneously shifted the focus of the hearing from the Student's initial eligibility for special education services to the adequacy of the proposed IEP once eligibility had been established. In the pleadings, Plaintiff did not raise any issues concerning the adequacy or the timeliness of the Student's December 2000 evaluation, or any other specific evaluation that took place from March 2000 to March 2001, the period at issue in the due process hearing. See S.D. Ex. 60; IHO Decision at 4, 11; Tr. at 1078. Plaintiff's objections focused on the adequacy of the January 31, 2001 draft IEP. Therefore, for the reasons set forth above, the IHO appropriately focused on whether the May 2001 proposed IEP provided the Student with a FAPE.

**2. Need for One-to-One Reading Instruction**

Plaintiff contends the IHO and HRO erroneously concluded the Student did not require one-to-one reading instruction to receive a FAPE. Plaintiff also asserts the District predetermined that it would not provide the Student with one-to-one reading instruction.

The Student qualifies for special education services in the area of reading. The parties disagree over what services the Student requires to obtain a FAPE. The IDEA does not require that a District maximize a student's potential or provide the best possible education; however a student's IEP must be "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. at 206-07; Fort Zumwalt Sch. Dist., 119 F.3d at 612. A student is entitled to one-to-one instruction only if it is necessary for the student to receive a FAPE. See E.S. v. Independent Sch. Dist. No. 196, 135 F.3d 566, 569 (8th Cir. 1998). Witnesses for Plaintiff testified the Student required one-to-one reading assistance and the Student claimed he performed better with one-to-one instruction. See Tr. at 990-92, 1114, 1120-23, 1126, 1136-39, 1165-72, 1538, 1665-66, 1670-71. However, the weight of the evidence supports the IHO and HRO's conclusion that a FAPE could be provided without one-to-one reading instruction.

Whether a child receives educational benefit is typically determined by looking at whether the student has made educational progress. See Board of Edu. v. Diamond, 808 F.2d 987, 991 (3d Cir. 1986). District staff testified the Student made significant progress during the 2000-2001 school year in the small group setting of his AOM class, a non-special education remedial reading program. Tr. at 147-48, 241, 392, 462-64, 495. His teachers reported the Student showed more interest in reading independently and improved in reading aloud. Tr. at 333, 453-60, 556-59. His teachers also scrutinized his reading comprehension by listening to him read, asking him questions about the contents of the material, and requiring the Student to summarize readings in a journal to confirm he comprehended them. Tr. at 461-62, 456-57. The Student earned three "As" and a "B" in reading during the 2000-2001 school year. Tr. at 382, 478-79, 485-86; S.D. Ex. 72, 89.

The Student also showed improvement on a number of standardized tests that measure reading skills. The STAR reading test is a computer adaptive test that assesses vocabulary and reading comprehension skills. Tr. at 408, 636. When the Student took the STAR test on September 8, 2000, his grade equivalent ("GE") was a 3.4 or third grade, fourth month. Tr. at 363; S.D. Ex. 15. On November 7, 2000, the Student's GE increased to a 4.2. Tr. at 1311; IHO Decision at 9. Although the Student's GE declined to a 3.3 when he took the STAR test on January 23, 2001, shortly after the District's holiday break, his GE rose markedly to 4.8 when he took the test on April 6, 2001. S.D. Ex. 69; Tr. at 712, 1312; IHO Decision at 9. Both Dr. Richard Spicuzza ("Spicuzza"), Defendant's expert on educational assessments and evaluations, and Betsy Nordin, the Student's AOM reading teacher, testified that an increase from a GE of 3.4 to 4.8 over the course of the 2000-2001 school year showed improvement in the Student's reading ability. Tr. at 470, 638-40, 714.

The Gates-MacGintie reading tests ("Gates test") measures a student's vocabulary and reading comprehension skills. Tr. at 406, 645-46. The Student's GE improved on the Gates test from a 3.8 in September 2000 to a 4.9 in April 2001. Tr. at 364, 371-72, 645; S.D. Ex. 15 at 2, S.D. Ex. 70. Both Spicuzza and Holly Kleppe, the Student's Sixth Grade regular education teacher, testified these results demonstrated substantial growth in reading. Tr. at 646, 372-73. The Student also took the Woodcock Johnson-Revised ("WJ-R") Measure test and the results show his reading made comparable progress to that of his age peers. Tr. at 764-65. The Student obtained a standard score of 87 in Broad Reading on the WJ-R in fourth grade and a standard score of 89 in the sixth grade. Tr. at 766-67; S.D. Ex. 36 at 3-4, S.D. Ex. 10 at 2-3. Both of these scores are in the normative group. Tr. at 769-72.

The testimony of Plaintiff's own witnesses was equivocal as to whether the Student required one-to-one reading services to achieve a FAPE. Jennifer Brown ("Brown"), the owner of a private tutoring service used by the Student, testified she would change her opinion regarding whether the Student needs one-to-one reading instruction if he was making progress at school. Tr. at 1187-90. Brown admitted she was not aware if the Student was making progress at school but assumed he was not based on Sunderlin's representations. Tr. at 1187-89, 1255. Similarly, Arlene Sonday ("Sonday"), Plaintiff's expert on the Sonday System Learning to Read, testified she did not know whether the Student was making progress during the past school year but had been told by Sunderlin or Plaintiff's counsel that he was not. Tr. at 1591, 1600-02. Sonday had never evaluated, tutored or observed the Student and had only met him the morning of the hearing. Tr. at 1602-03.

After hearing all of the evidence, the IHO made a credibility decision that the Student did not require one-to-one reading instruction because he was making progress at school. The preponderance of the evidence supports the IHO's decision that the Student is obtaining a FAPE without one-to-one instruction. There is also evidence that one-to-one reading instruction would violate the IDEA's mandate that students receive special education services in the least restrictive environment ("LRE") permissible. See 20 U.S.C. § 1412(a)(5); 34 C.F.R. § 300.550; Minn. R. 3525.0400; S.D. Ex. 84 at 3. One-to-one instruction is clearly more restrictive than instruction in a resource room where other peers are present. Tr. at 257. Therefore, the IHO and the HRO did not err by finding the Student did not require one-to-one reading instruction.

Plaintiff also argues District administrators, in violation of the IDEA, predetermined the IEP team decision that Student did not require one-to-one reading instruction. Specifically,

Plaintiff claims Linda Gardner ("Gardner"), Special Education Consultant for the School District, told the IEP team at the March 20, 2001 meeting they could not provide one-to-one services. In Deal v. Hamilton, the Sixth Circuit held a District must consider a proposed program of education suggested by the parents and may not erroneously predetermine which services may be offered. 42 IDELR 109 (6th Cir. 2004).

The evidence does not support Plaintiff's assertion that the District erroneously predetermined the Student would be denied one-to-one reading instruction. IEP team members often invite Gardner to attend IEP meetings to provide knowledge about programming options and available alternatives. Tr. at 860-61, 925, 956. Before attending the March 20, 2001 IEP meeting, Gardner spoke to the Student's teachers and reviewed the January 2001 draft IEP and December 2000 evaluation report. Tr. at 860, 862. At the meeting, after the parents listed the Student's needs, Gardner interjected, "I'm not hearing any needs that [Student] has that we can't meet here . . . . And given the opportunity to provide reading services to him, I believe we can meet his needs." S.D. Ex. 54 at 9. When IEP team members were asked to offer their opinion, Plaintiff's counsel interjected, "the administrator has already said what is appropriate or what isn't appropriate or what the school will do." Id. Gardner responded, " I encourage anyone on the team to state what they really think is true and I'm seeking a team process and I have always encouraged this team to do that." S.D. Ex. 54 at 11; Tr. at 863. At the hearing, IEP team members testified they did not feel Gardner predetermined their decision or that they felt compelled to agree with her statement. Tr. at 132-33, 135, 231-32, 36-68, 490, 778. They further testified they were not intimidated by Gardner and felt comfortable expressing their own opinions and conclusions about the Student's needs. Tr. at 133, 231-32, 367, 490, 778.

The IEP team discussed a range of reading services and instruction for the Student at both the March 20, 2001 and May 1, 2001 IEP meetings, including: (1) a mainstream class with support; (2) an AOM class; (3) a resource room with higher level reading; (4) a resource room with lower level reading; (5) the computer-based Fast ForWord program; (6) the computer-based earobics program; (7) the targeted services program; and (8) one-to-one instruction. S.D. Exs. 54, 87. As Sunderlin admitted later at the hearing, she was unwilling to accept anything less than one-to-one reading instruction or consider any options that did not include one-to-one reading instruction at the March 20, 2001 IEP meeting,. Tr. at 1372-73.

The preponderance of the evidence in the Record indicates that the IEP team considered a spectrum of reading services and instruction before determining one-to-one reading instruction was not necessary for the Student. Given the IEP team members' consistent testimony that they did not feel compelled to agree with Gardner's assessment and felt comfortable reaching their own determination, the weight of the evidence indicates the District did not predetermine before hearing the Parent's concerns and team members' input that the Student would not receive one-to-one reading instruction.

**3. Need for an AT Assessment and AT Services**

Plaintiff argues the IHO and HRO erred by finding the Student was not entitled to an AT evaluation as well as certain AT. AT is defined as any item, piece of equipment, or product system, whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve functional capabilities of a child with a disability. 20 U.S.C. § 1410(1); 34 C.F.R. § 300.5. In developing a student's IEP, the IEP team must consider whether the child requires AT devices and services. 34 C.F.R. § 300.346(a)(2)(v).

Although the record reflects Sunderlin inquired about the use of certain AT in January 2001 and in a March 20, 2001 letter, she did not formally request an AT evaluation for the Student until May 18, 2001. S.D. Ex. 60, 90; Tr. at 891. Specifically, Plaintiff requested the Student be evaluated for a spell checker and a computer. At the May 1, 2001 IEP meeting, the IEP team considered the Student's need for AT and determined the Student required a spell checker and calculator. Tr. at 150, 793-94; S.D. Ex. 84 at 8. The team specifically concluded, due to the Student's progress during the 2000-2001 school year, the Student did not require a computer. Tr. at 150, 392-94, 895-96. As a result, on May 22, 2001, the District denied Sunderlin's request for an AT evaluation. S.D. Ex. 92; Tr. at 896. Plaintiff argues Independent School District No. 11 v. Pachl requires the District to provide the student with an AT evaluation. 2002 U.S. Dist. LEXIS 23205 (D. Minn. 2002). In Pachl, the court found the District did not meet its responsibility to conduct an AT evaluation of the student. Id. at *44-45.

Plaintiff's reliance on Pachl is misplaced. It is well established the District's "obligation to provide assistive technology is limited to assistive technology which is necessary to provide a FAPE." Zigich v. Independent School District No. 623, Civ. No. 99-1212 at 12 (D. Minn. 2000) (unpublished opinion); see, e.g., Letter to Hutcheson, 30 IDELR 708, 709 (OSEP 1998); Letter to Noan, 22 IDELR 888, 889 (OSEP 1995). As a result, a district is required to evaluate a student's need for assistive technology in situations where the student's particular circumstances indicate such technology might be necessary to obtain a FAPE. Zigich, Civ. No. 99-1212 at 12; see, e.g., Letter to Hutcheson, 30 IDELR at 709; Letter to Noan, 22 IDELR at 889; Letter to Goodman, 16 EHLR 1317 (OSEP 1990). As the Zigich court noted:

> It would make little sense to suggest that the District had an obligation to evaluate technology which they were then free to reject - regardless of the outcome. Given that

> [Student] was provided with FAPE without [the AT requested by parents], the District had no obligation to evaluate [Student's] "need" for these devices, and the District has no obligation to reimburse the [parents] for the private evaluation they obtained.

Id. at 12. The Record is replete with evidence indicating the Student was receiving "meaningful benefit" from his education. See Cedar Rapids Cmty Sch. Dist. v. Garret F., 526 U.S. 66, 73 (1999). As previously noted, the Student received "A" and "B" grades in reading and English and showed improvement on the Star test, Gates test and WJ-R test. Tr. at 363-64, 371-73, 382, 386, 470, 478-79, 485-86, 646, 714, 764-72, 1311; S.D. Exs. 10, 15, 36, 69, 70. He received "B" and "C" grades in math. Tr. at 381-82. His teachers repeated the Student showed increased interest in reading independently and improved in reading aloud. Tr. at 333, 453-62, 556-59. They also testified the Student had nice, neat penmanship. Tr. at 221-22, 377-78, 499, 580. The school psychologist evaluated the Student and found he was able to form letters quickly and legibly. Tr. at 261-64. The Student accomplished all of these results without the aid of AT.

Pachl held the District should have conducted an AT assessment based on the IHO's finding that the Student was "bereft of the ability to communicate" due to "her condition at the time of the hearing." Pachl, 2002 U.S. Dist LEXIS at * 44. Conversely, in Zigich, the district court held "both the IHO and HRO found, and the record supports the conclusion, that [Student] made progress with his speech and language goals using this low tech program." Zigich, Civ. No. 99-1212 at 11. Pachl relied on this exact distinction in holding Sarah Pachl was entitled to an AT assessment. Pachl, 2002 U.S. Dist LEXIS at *45.

In the instant case, both the IHO and the HRO found "the Student was making excellent progress without assistive technology, and that the District was providing the Student FAPE." HRO Decision at 8; see also IHO Decision at 17. This conclusion is supported by a

preponderance of the evidence in the Record. The Record also indicates the IEP team specifically considered, and rejected, Sunderlin's request that the Student receive a computer. Although the Student may benefit from the availability of a computer, the IDEA does not require the District maximize a student's potential or provide the best possible education. Fort Zumwalt Sch. Dist., 119 F.3d at 612. Plaintiff also contends the IHO impermissibly shifted the burden to the parent by finding "[t]he Parent presented no reliable evidence to support her claim that the Student needs AT in order to receive FAPE . . . ." See IHO Decision at 7. The IHO's statement reflects the finding, supported by the Record, that Plaintiff presented no reliable evidence to refute the conclusion that the Student was receiving a FAPE without AT. Therefore, the District was not required to conduct an assessment of the Student's AT needs or provide the Student with additional AT.

Finally, Plaintiff argues the decision to deny Sunderlin's request for an AT evaluation and for additional AT was made by District administrators rather than the IEP team and thus violated the IDEA. See 34 C.F.R. § 300.346(a)(2) and (b). Plaintiff argues the District administrator made the decision to deny the AT evaluation because Sunderlin's May 18, 2001 request for an AT evaluation was rejected in a May 22, 2001 letter from Gardner, a District administrator, and the IEP team had not met since May 1, 2001. However, the Record indicates Sunderlin had previously requested the IEP team consider AT in January and March 2001. At the May 1, 2001 IEP meeting, the IEP team discussed whether the Student needed AT and concluded a spell checker and calculator were sufficient. Tr. at 150, 392-94, 793-94, 895-96, 901; S.D. Ex. 84 at 8, S.D. Ex. 92. The team also determined a computer was unnecessary. Tr. at 150, 261-64, 392-94, 580. Gardner's letter communicated these findings to Sunderlin. S.D.

Ex. 92; Tr. 896. As a result, in compliance with the IDEA, the rejection of the AT evaluation and additional AT was made by the IEP team.

**4. Timeliness of the Assessment of Student's Need for Reading Instruction, ESY Services and AT**

Plaintiff claims the Student's needs were not timely evaluated in the areas of reading, AT and ESY. As a result, Plaintiff argues the Student failed to receive the special education services to which he was entitled. Plaintiff also contends the ESY services proposed in the Student's IEP for summer 2001 were inadequate and untimely.

As an initial matter, Plaintiff's briefs are vague as to when these assessments should have occurred, specifically how they are deficient or what evaluations are at issue. Because these issues are not properly before the Court, these ambiguities need not be resolved here. The IDEA contains a mandatory requirement that Plaintiff exhaust the administrative process before seeking judicial review. See 20 U.S.C. § 1415(i)(2) (stating that a party aggrieved by the due process hearing panel's decision has the right to bring a civil action "with respect to the complaint presented"). See also Blackmon, 198 F.3d at 656; Moubry v. Independent Sch. Dist. No. 696,
9 F. Supp.2d 1086, 1099-1100 (D. Minn. 1998). The exhaustion requirement allows agencies to "exercise discretion and apply their expertise, . . . allows complete development of the record before judicial review, . . . prevents parties from circumventing the procedures established by Congress, and . . . avoids unnecessary judicial decisions by giving [the district] the opportunity to correct its errors." Blackmon, 198 F.3d at 656 (citation omitted). At the time this suit was brought, the IDEA and corresponding state law required a parent seeking educational services for a child to participate in the IEP process, request conciliation or mediation, and complete a

two-tier administrative hearing process before requesting judicial review. See 20 U.S.C. § 1415; Minn. Stat. § 125A.09. As a result, any claims not presented at the administrative hearing level are not properly before this Court and must be dismissed.

The only evaluation completed between March 30, 2000 and March 30, 2001, the period at issue in the due process hearing, was an educational evaluation completed in December 2000. The Court finds the IHO correctly concluded that Plaintiff did not identify the appropriateness of the evaluation conducted by the District in the fall of 2000 as an issue for the hearing. Issues not pled with specificity are waived. Minn. Stat. § 125A.09, subd. 6; see S.D. Ex. 60. Any concerns regarding the evaluation of the Student prior to March 2000 are beyond the scope of the due process hearing. See IHO Decision at 1; HRO Decision at 5-6. Additionally, the HRO correctly found ESY services were not before the IHO and cannot be raised before this Court for the first time.

Plaintiff argues the ESY services claim is properly before this Court because any attempt to exhaust administrative remedies would have been futile. Plaintiff contends the District did not propose ESY services for the Student until late in the school year, effectively eliminating the Student's right to obtain any meaningful review.

Plaintiff's failure to exhaust should not be excused for futility. Plaintiff has never filed a request for a due process hearing to challenge the adequacy of ESY services. As detailed, infra, there is ample evidence that Plaintiff and Plaintiff's counsel were themselves responsible for significantly delaying the due process hearing. The administrative process is designed to achieve more varied goals than simply reaching a determination on the merits of the claim. Relaxing the exhaustion requirement would undermine reliance on the administrative process set forth by

Congress and the State of Minnesota. As a result, any claims that the Student did not receive a timely assessment of his need for reading, AT and ESY services, or that the proposed ESY services are inadequate, is not properly before this Court.

**D. Procedural Errors in the Due Process Hearing**

Plaintiff claims the IHO committed several procedural errors in structuring the due process hearing. Specifically, Plaintiff alleges the IHO erred by: (1) enforcing Minnesota's "plead with specificity" requirement; (2) finding Plaintiff did not oppose Defendant's Motion in Limine to impose the IDEA's one year statute of limitations on the scope of the due process hearing; (3) determining the credibility of the Student's testimony; (4) admitting the testimony of Defendant's expert, Dr. Spicuzza; and (5) not issuing a timely decision. Each of these issues will be discussed in turn.

**1. "Plead with Specificity" Requirement**

At the time of the due process hearing, Minnesota law required the party requesting a hearing to "plead with specificity as to what issues are in dispute and all issues not pleaded with specificity are deemed waived." Minn. Stat. § 125A.09, subd. 6 (repealed 2003). See also Independent Sch. Dist. No. 432, 8 F. Supp.2d at 1174 (explaining the law requires the parties to precisely frame the issues). Plaintiff claims the IHO erred by enforcing this provision because it is contrary to federal law. Plaintiff argues 34 C.F.R. § 300.507 does not require specificity. However, Plaintiff's argument fails because 34 C.F.R. § 300.507(c)(2) clearly states a parent's notice must include "a description of the nature of the problem of the child relating to the proposed or refused initiation or change, including facts relating to the problem . . . ." See also, [Student] v. ISD No. 11, MSDCFL Case No. 423-2, at

*6-7 (SEA 2001) (finding Minn. Stat. § 125A.09's specificity requirement did not conflict with 34 C.F.R. § 300.507). Consequently, the IHO did not err by finding Plaintiff waived any issues not pled with specificity.

**2. Opposition to Defendant's Motion in Limine**

Plaintiff contends the IHO erred by finding Sunderlin did not oppose the District's May 7, 2001 Motion in Limine seeking application of a one year statute of limitations and the exclusion of certain evidence at the hearing. The IHO's April 19, 2001 Pre-Hearing Order required "All motions must be filed on or before [May] 7, 2001. Responses to the motions must be filed on or before May 10, 2001." See Pre-Hearing Scheduling Order (Wilson Aff. II [Docket No. 148] Ex. E). On May 7, 2001, the District filed a Motion in Limine seeking to limit the evidence at hearing to "that which is relevant to the appropriateness of the Student's education during the one year preceding the Parent's March 30, 2001 request for a due process hearing." See Mem. of Law in Support of District's Mot. in Limine at 1. Plaintiff did not file a response by the May 10, 2001 deadline. On May 14, 2001, Plaintiff's counsel wrote a letter to the IHO stating "We do not oppose the motion in limine per se, but do ask that the IHO rule as a factual matter with respect to the beginning of the time frame." The letter continued, "We do not oppose the motion in limine as far as the outside date of March 30, 2001, so long as no evidence past that date is accepted from either party." See IHO Procedural Record: 5/14/01 Letter from Kerr to Udoibok (Wilson Aff. II Ex. G).

Plaintiff now argues the parents did oppose the motion of limine:

> Rather than spend excessive attorney time and funds to address the motion, believing the issue to be clearly already resolved by numerous hearing decisions in Minnesota, the parents' counsel simply referred the IHO to those decisions and asked for a ruling as to the length of time at issue.

Pl's. Mem. in Supp. of Mot. for J. on the Admin. R. at 16-17.

As the HRO noted, "[e]ven if the letter could somehow be construed to oppose District's motion, it was not timely filed." HRO Decision at 6. The IHO correctly concluded Plaintiff did not oppose the District's Motion in Limine. In addition, Plaintiff did not contest the IHO's decision that a one year statute of limitations applied in the second step of the two-tiered review process. Consequently, Plaintiff waived the right to raise the statute of limitations issue at this time. See Moubry, 9 F. Supp.2d at 1099-1100.

**3. Credibility of the Student's Testimony**

Plaintiff asserts, in reaching their decisions, the IHO and HRO ignored the Student's testimony. Neither the IHO nor the HRO explicitly rejected the Student's testimony. In responding to Plaintiff's concern that the IHO ignored the Student's responses, the HRO merely states:

> The IHO heard the evidence and was in the best position to determine credibility and decide the proper weight to give the evidence. . . . [T]he IHO's Findings as set forth in his decision are amply supported by the preponderance of the evidence and will not be disturbed.

HRO Decision at 9. The Record reflects the Student, who was 13 years old at the time of the hearing, did testify that he had a good experience working with Stephanie, his private tutor, and wanted to continue with her. Tr. at 1663. He also stated his reading improved with Stephanie's help and he found his reading class "kind of boring . . . because I mostly know a lot in there." Tr. at 1667-68. The Student also acknowledged he reads aloud in school, that he believes his reading improved from the beginning of the 2000-2001 school year and that he made good progress. Tr. at 1668-70. Twelve other witnesses testified at the hearing. See IHO Decision at 2. The IHO was entitled to weigh the credibility of each witness and weigh the cumulative

testimony in reaching his decision. As a result, Plaintiff's assertion that the IHO and HRO ignored the Student's testimony is unsupported by the Record.

**4. Admission of Dr. Spicuzza's Testimony**

Plaintiff argues the IHO erred by admitting the testimony of Dr. Spicuzza, Defendant's expert witness, because Dr. Spicuzza neither met nor evaluated the Student. Without citing to any authority, Plaintiff argues "the IEP process envisioned by the IDEA supposed that any experts who testify about the student will have some knowledge of the student." Pl's. Mem. in Supp. of Mot. for J. on the Admin. R. at 23.

Dr. Spicuzza's testimony addressed the meaning and appropriateness of the evaluations used to measure the Student's reading ability and whether those evaluations indicated improvement. See IHO Decision at 2. Plaintiff offers no precedent requiring exclusion of expert testimony based solely on a records review. In fact, Minnesota hearing officers generally admit the opinion of experts who have never met the student and then decide what weight to give such testimony. See, e.g., [Student] v. Independent Sch. Dist. No. 11, MDCFL Case No. 390, at 29-30 (LEA 2000); [Student] v. SSD No. 1, MDCFL Case No. 248 (1997).[4] The IHO did not err by admitting Dr. Spicuzza's testimony.

**5. Timeliness of Decision**

Plaintiff argues the IHO's decision was untimely and should be set aside. Specifically, Plaintiff notes the due process hearing was requested in March 2001 and completed on July 23,

---

[4] The Record indicates the IHO admitted the testimony of Arlene Sonday ("Sonday"), Plaintiff's expert witness, who had never evaluated, tested or tutored the Student. Tr. at 1602-03. Sonday met the Student for the first time on the day she testified at the hearing. Id. Plaintiff does not contest the admission of this testimony.

2001, after seven days of hearings, but no decision was issued until September 17, 2001. Plaintiff argues several extensions benefitted the District at the expense of the Student. In particular, Plaintiff claims the IHO's refusal to extend the hearing prevented Plaintiff from calling the Student's tutor as an expert witness because she was giving birth. Conversely, the IHO granted the request of the District for post-hearing briefing and subsequently granted the District a 10-day extension to the briefing schedule due to District counsel's vacation. Finally, Plaintiff argues the IHO, sua sponte and without good cause, extended the decision date by ten days. Plaintiff contends the cumulative delay of these extensions is impermissible and the decision should be vacated.

Under 34 C.F.R. § 300.511, a hearing officer shall issue a final decision not more than 45 days after receipt of the request for a due process hearing; however, the hearing officer may grant extensions at the request of either party upon good cause shown. 34 C.F.R. § 300.511(a), (c), see also Letter to Kerr, 22 IDELR 364 (OSEP 1994).

A review of the Record indicates Plaintiff's counsel shares at least half the blame for the protracted time between the hearing request and the rendering of judgment. At the scheduling conference, Plaintiff's counsel objected to any hearing before June 10, 2001 (the date the school year ended) due to a temporary disability.[5] See IHO Procedural Record: 4/16/01 Letter from Waldspurger to Kerr. Prehearing Conf. Tr. at 20-21, 32; IHO Decision at 1. The District requested the hearing commence before the end of the school year. Id. at 6-10, 16-17, 20. The IHO scheduled the hearing to begin on May 30, 2001 and continue June 7, 8, 14, and 15, 2001

---

[5] At the Prehearing Conference, Plaintiff's counsel stated "My clients don't prefer that we have to delay things. On the other hand, they prefer my expertise. So, you know, that's the choice they're making." Prehearing Conf. Tr. at 15.

while post-hearing briefs were initially due on June 29, 2001. See Pre-Hearing Scheduling Order.

Once the hearing began, there is evidence the hearing was delayed or hearing sessions were abbreviated due to the unavailability of Plaintiff's witnesses as well as conflicts with the Parent's daycare arrangements and Plaintiff's counsel's work schedule. Tr. at 1009. In particular, the hearing was delayed over one month to accommodate Plaintiff's expert witness, Sonday, who was on vacation. Tr. at 1634-35; see IHO Procedural Record: 8/7/01 Letter from Waldspurger to Udoibok. The District objected to these delays. Tr. at 1012-13. When the parties discussed the date on which the IHO's decision would be issued, Plaintiff's counsel told the IHO, "You need to give yourself more time. I don't have any problem with that." Tr. at 1685.

The IHO subsequently granted District counsel's request for a four-day extension of the deadline for submitting post-hearing briefs because District counsel had overlooked a long-standing vacation. See IHO Procedural Record: 8/7/01 Letter from Waldspurger to Udoibok; 8/7/01 Order. On September 6, 2001, the IHO wrote to the parties requesting, due to the volume and complexity of the case, an extension of time to issue his decision. IHO Procedural Record: 9/6/01 Letter from Udoibok to Kerr and Waldspurger. The following day, based on the 100 exhibits, almost 1700 pages of transcript and numerous legal issues involved, the District moved, for good cause, to extend the decision date from September 7, 2001 to September 17, 2001. See IHO Procedural Record: 9/7/01 Letter from Waldspurger to Udoibok; 9/7/01 Order.

A review of the record shows the IHO granted significant extensions over the objection of the District due to Plaintiff's counsel's medical status and the unavailability of Plaintiff's

expert witness. The IHO also granted a short extension due to the vacation of Defendant's counsel. Due to the complexity of the case, the IHO then requested additional time to complete his decision and the District moved for an extension. Given the five months between the hearing request and the extension of the decision date, the additional ten days for the IHO to render a decision does not represent a significant delay. Given the extensions granted to Plaintiff, it is disingenuous for Plaintiff's counsel to argue those ten days significantly affected her client's rights. There is no indication the extension of the decision date "compromised the pupil's right to an appropriate education, seriously hampered the parent['s] opportunity to participate in the formulation process, or caused a deprivation of educational benefits." Indep. Sch. Dist. No. 283, 88 F.3d at 562.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Judgment on the Pleadings and Administrative Record [Docket No. 143] is **DENIED**;

2. Defendant's Motion for Judgment on the Record/Summary Judgment [Docket No. 138] is **GRANTED;**

3. Plaintiff's claims, to the extent they are incorporated in the Reinholdson Complaint [Docket No. 1], are **DISMISSED WITH PREJUDICE**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 30, 2005.